UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

BARFLY VENTURES, LLC, *et al*,

Debtors.

Chapter 11
Case No. 20-01947-jwb
Hon. James W. Boyd

_____/

**RESPONSE OF INNOVO DEVELOPMENT GROUP, LLC TO DEBTORS' MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (I) REJECT CERTAIN UNEXPIRED LEASES PURUSANT TO 11 U.S.C. §365, (II) ABANDON ANY REMAINING PERSONAL PROPERTY LOCATED AT THE LEASED PREMISES PURUSANT TO 11 U.S.C. §554; AND (III) FIX A BAR DATE FOR CLAIMS OF COUNTERPARTIES**

NOW COMES Innovo Development Group, LLC (hereinafter "Innovo"), by and through its attorney of record, Wardrop & Wardrop, P.C., and in response to Debtors' Motion for the Entry of an Order Authorizing the Debtors to (I) Reject Certain Unexpired Leases Pursuant to 11 U.S.C. §365, (II) Abandon any Remaining Personal Property Located at the Leased Premises Pursuant to 11 U.S.C. §554; and (III) Fix a Bar Date for Claims of Counterparties (the "Motion"), states as follows:

**BASIC FACTS**

1. Three of the Debtors (the "Tenant-Debtors") lease property from Innovo. The leased properties and Tenant-Debtors are:

    - Port St. Lucie, Florida: HopCat – St. Lucie, LLC.
    - University City, Missouri: HopCat – St. Louis, LLC.
    - Royal Oak, Michigan: HopCat – Royal Oak, LLC.

2. Prior to the filing of the bankruptcy, each of the Tenant-Debtors were involved in litigation with Innovo in which Innovo sought to evict the Tenant-Debtors on the basis of failure to timely pay rent and other grounds. The Tenant-Debtors had fought eviction on grounds that Innovo believes had no legal or factual basis.

3. Two of the members of Innovo are investors in, and were formerly members

of the Board of Directors of, Barfly Ventures, LLC.

4. Relationships between the Tenant-Debtors, the Debtors and Innovo were extremely strained at the time of the bankruptcy filing.

5. At the time of filing, the Tenant-Debtors were many months behind in payment of rentals obligations due and owing and there were other violations of the leases outstanding.

6. Relationships between the Tenant-Debtors and Innovo were so bad that police had been involved in the dispute between the Tenant-Debtor and Innovo at the Royal Oak property.

7. Just prior to filing, without notice to Innovo, the Tenant-Debtors quickly removed all of Debtors' personal property from each of the sites, causing significant damage to each of the sites. Removal of the personal property was not done in a professional manner.

8. The Tenant-Debtors left the leased sites in extremely poor condition, leaving behind trash and rubble, and not in the condition required by the terms of the leases. Significant physical damage to each of the properties resulted from the Tenant-Debtors' actions.

9. An estimate of the termination damages that can be asserted by Innovo, (one year's basic rent) for each of the properties is:

- Port St. Lucie - $462,257.47
- Royal Oak - $472,249.86
- St. Louis - $617,681.00

10. The numbers above do not include CAM or additional charges that may be allowable, nor do they take into account the alternative termination damages calculation that is available to Innovo in the Bankruptcy Code.

11. In addition to the lease rejection claims, Innovo has additional claims for damages to the properties.

## POSITION OF INNOVO

12. This bankruptcy was filed on Wednesday, June 3, 2020. Debtors did not give notice of the filings to Innovo directly – Innovo had to learn of the filings through media reports.

13. Innovo was able to secure bankruptcy counsel after 6:00 p.m. on Wednesday, with first day hearings to be held only two full business days later.

14. Counsel for Innovo has not had a full opportunity to review each of the leases, meet with its client and review the prior litigation between the Tenant-Debtors and Innovo so as to be fully up to speed and prepared for this Motion.

15. As the Court would expect, Innovo does not object to the Debtors' (and Tenant-Debtors') Motion with respect to the act of rejection. To the extent it has not done so already, Innovo is prepared to assume control of the properties and begin to lease the properties again, and wishes to do so as promptly as possible.

16. Innovo does, however, have certain reservations with respect to the Motion and the specific relief requested by the Debtors.

## OBJECTION NUMBER 1
## ROYAL OAK LEASE AND INNOVO'S SECURITY INTEREST IN THE ASSOCIATED LIQUOR LICENSE

17. The Royal Oak lease is not totally executory. Included in the Royal Oak lease is a grant of a security interest by the Tenant-Debtor to Innovo in the liquor license associated with the property.

18. Attached hereto as Exhibit A is Paragraph 4.3 of the Royal Oak lease which grants Innovo a security interest in the liquor license associated with the Royal Oak property.

19. Innovo perfected its security interest in the liquor license by filing a UCC-1 Financing Statement with the State of Michigan. A copy of the Financing Statement is attached hereto as Exhibit B.

20. The concern of Innovo is that the Order proposed by the Debtor does not recognize that there is at least one non-executory provision in the Royal Oak lease (and possible non-executory provisions in the other leases).

21. Innovo is concerned that if the current proposed Order is entered that somehow the Order will be read to affect or negate Innovo's security interest in the Royal Oak liquor license and adversely affect any other non-executory provisions in the three leases at issue.

Relief Requested: that the proposed Order be amended to recognize Innovo's claims of a security interest in the Royal Oak liquor license and that the Order clearly state that nothing in the Order affects Innovo's claim to a security interest in the liquor license, and that the Order applies only to the executory provisions of each of the leases.

## OBJECTION NUMBER 2
## CLAIMS BAR DATE

22. The Motion requests that the Court set an expedited bar date for lease termination claims.

23. Nowhere in the Motion do the Debtors give a reason why these specific creditors should be given a shorter time period than other creditors to file their claims in this case.

24. The Debtors do not indicate that they intend to file an immediate Plan of Reorganization. The Debtors have not filed a motion to set a claims bar date for other creditors.

25. There appears to be no viable reason why these specific creditors should have an expedited claims bar date.

Relief Requested: that the Debtors' request for an expedited bar date be denied.

## OBJECTION NUMBER 3
## OBJECTIONS IN GENERAL TO THE ORDER

26. Like most bankruptcy Orders prepared by Debtors, the Order goes out of its

way to protect the rights and interests of the Debtors but not the rights and interests of what is identified as a "Counterparty" in Debtors' proposed Order. With respect to the specific provisions of the Order, Innovo would request the following:

- With respect to Paragraph 5, that it provide that Innovo's Proof of Claim need only to be filed on or before the general bar date established by subsequent order of the Court;
- Paragraph 6 be expanded to provide that the Counterparties reserve any and all rights they have against the Debtor and any other party of interest, except as specifically provided in Paragraph 3.
- That the Counterparties do not waive any other claims they may have against the Debtors, expect as specifically provided in Paragraph 3 and the applicable provisions of the Bankruptcy Court.

WHEREFORE, Innovo prays that the Court deny the specific relief requested by the Debtors, that the Court grant relief to the Debtors only consistent with the Relief Requested by Innovo in this Response to the Motion, and that the Court grant such other relief as is just and equitable.

Respectfully submitted,

WARDROP & WARDROP, P.C.

Dated: June 5, 2020

By: _____
Robert F. Wardrop II (P31639)
Business Address:
300 Ottawa Avenue, NW, Suite 150
Grand Rapids, MI 49503
(616) 459-1225
bkfilings@wardroplaw.com

483201060420.Response

Tenant if Tenant shall fail to re-open the Premises within the 30-day period, in which case neither Landlord or Tenant shall have any further liability to the other except as expressly survives the expiration of this Lease.

4.3. **Liquor License; Security Interest**

Tenant's Permitted Use includes Tenant being able to serve alcoholic beverages. Landlord will reasonably cooperate with Tenant, at Tenant's sole cost except as otherwise provided for the payment of the Liquor License Allowance, to obtain all necessary approvals for Tenant's Permitted Use including the transfer to Tenant of the State of Michigan Liquor Control Commission Class C Resort Liquor License #142721, BID#164133 to serve alcoholic beverages at the Premises (the "**Liquor License**"); provided that this shall not be deemed to require Landlord to make any amendments to this Lease that affect the Landlord's rights or duties under the Lease. Tenant's ability or inability to obtain necessary approvals, licenses or permits to operate its business at the Premises, including without limit the Liquor License, shall be a contingency or a condition to the effectiveness of this Lease and Tenant's obligations under this Lease only to the extent expressly provided in Section 21.22 below. Provided that Landlord paid the Liquor License Allowance, upon Tenant's receipt of the Liquor License, Tenant shall grant Landlord an exclusive security interest in the Liquor License that is superior to all other lien holders but subject to any rights held by the Michigan Liquor Control Commission or as otherwise provided by Applicable Laws. Provided Landlord paid the Liquor License Allowance, then upon termination of the Lease, Tenant shall cooperate with Landlord in assigning the Liquor License from Tenant to Landlord without Landlord paying any charge, fee or other consideration to Tenant for such transfer (and the parties acknowledge that by each of them entering into this Lease that constitutes adequate, sufficient and good consideration for such Liquor License transfer). Tenant and Landlord each agrees to act in good faith and with all due diligence, to use all commercially reasonable efforts, and to cooperate with one another to effectuate as quickly as possible such security interest in and such transfer of the Liquor License. Landlord and Tenant each agrees to execute all documents which are necessary to effectuate such transfer. Landlord and Tenant acknowledge and agree that the Liquor License is not transferable from, and may only be used at, the Premises.

4.4. **Prohibited Uses**

Landlord represents and warrants that:

(a) There are no exclusive uses in any existing leases that restrict Tenant's Permitted Use of the Premises.

(b) It and its Affiliates shall not violate the Exclusive established for Tenant's benefit in Section 1.1(u) above. Landlord acknowledges that one of Tenant's primary considerations in investing Alterations into the Premises and entering into this Lease with Landlord is Landlord's agreement to honor the Exclusive. In the event that Landlord or its Affiliates shall violate this provision, Tenant shall give Landlord thirty (30) days' notice and opportunity for Landlord to cure the violation. If the violation is not cured within such period, Minimum Rent payable shall immediately be reduced by fifty percent (50%) and the other rental charges shall be abated until the violation is cured. Any reduction in the amount of rent payable by Tenant under this provision shall be retroactive to the date on which such reduction was first permitted. Tenant shall also have the right to pursue all remedies available by law or in equity including the right to damages. Notwithstanding the foregoing, in the event of any default by Tenant under this Lease beyond any applicable cure period not caused by Landlord's violation of this Lease, any such

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Bodman Nancy Willson**

B. E-MAIL CONTACT AT FILER (optional)
**nwillson@bodmanlaw.com**

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)
**Bodman Nancy Willson**
**201 W. Big Beaver Road**
**Suite 500**
**Troy, MI 48084 USA**

Michigan Department of State - Uniform Commercial Code

**Filing Number: 20170123000994-4**

Filing Date and Time: 01/23/2017 04:07 PM

Total Number of Pages: 1

(This document was filed electronically)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME
**HOPCAT-ROYAL OAK, LLC**

OR
1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

1c. MAILING ADDRESS: **35 Oakes Street #400** | CITY: **Grand Rapids** | STATE: **MI** | POSTAL CODE: **49503** | COUNTRY: **USA**

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR
2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY). Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
**INNOVO DEVELOPMENT GROUP, LLC**

OR
3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

3c. MAILING ADDRESS: **1321 South Westnedge Avenue** | CITY: **Kalamazoo** | STATE: **MI** | POSTAL CODE: **49008** | COUNTRY: **USA**

4. COLLATERAL: This financing statement covers the following collateral:
State of Michigan Liquor Control Commission Class C Resort Liquor License issued or to be issued to Debtor (under BID#244499 or such other BID number, being the request to transfer Class C Resort Liquor License #142721 issued under BID#164133) to serve alcoholic beverages at the premises commonly known as 206 or 208 West Fifth Avenue, Royal Oak, Michigan, and any successive or replacement licenses or renewals or reclassifications thereof, issued by the State of Michigan Liquor Control Commission (or any successor agency or authority).

5. Check only if applicable and check only one box. Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box.
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**11372-4 GMZ/nw**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)