# Exhibit 1 to Bidding Procedures Order

## Bidding Procedures

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re: | Chapter 11 |
| BARFLY VENTURES, LLC, *et al.* | Case No. 20-01947-jwb |
| Debtors.[1] | Jointly Administered |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed in connection with the proposed sale of certain tangible and intangible assets (the "**Purchased Assets**") of the above-captioned debtors and debtors in possession (collectively, the "**Sellers**" or the "**Debtors**") that relate to each of the restaurant locations owned or operated by the Debtors in connection with the Debtors' jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the Western District of Michigan (the "**Court**"), lead case number 20-01947.

As set forth in the *Motion of Debtors for Entry of (I) an Order (A) Approving Bidding Procedures and Scheduling Sale Hearing, (B) Approving the Form of the Asset Purchase Agreement, Including the Bid Protections, and (C) Granting Related Relief; and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "**Motion**"), the Sellers are seeking to sell substantially all of their assets related to their restaurants, subject to competitive bidding as set forth herein. A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

## I.     ASSETS TO BE SOLD

The Sellers seek to consummate a sale of the Purchased Assets (the "**Sale**"). The sale of the Purchased Assets is on an "as is, where is" and "with all faults" basis and without representations, warranties, or guarantees, express, implied, or statutory, written or oral, of any kind, nature or description by the Sellers, their affiliates, or any of their respective representatives, agents, or estates, except to the extent set forth in the purchase agreement of the Successful Bidder (as defined herein) as approved by the Court.  Except as otherwise provided in such approved purchase agreement, all of the Sellers' right, title, and interest in

---

[1] The Debtors and the last four digits of their federal employment identification number are: Barfly Ventures, LLC (8379); 9 Volt, LLC (d/b/a HopCat) (1129); 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684); GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130); E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334); HopCat-Ann Arbor, LLC (5229); HopCat-Chicago, LLC (7552); HopCat-Concessions, LLC (2597); HopCat-Detroit, LLC (8519); HopCat-GR Beltline, LLC (9149); HopCat-Holland, LLC (7132); HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970); HopCat-Kalamazoo, LLC (8992); HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242); HopCat-Lexington, LLC (6748); HopCat-Lincoln, LLC (2999); HopCat-Louisville, LLC (0252); HopCat-Madison, LLC (9108); HopCat-Minneapolis, LLC (8622); HopCat-Port St. Lucie, LLC (0616); HopCat-Royal Oak, LLC (1935); HopCat-St. Louis, LLC (6994); Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).

and to each Purchased Asset to be acquired shall be sold free and clear of all liens, claims, interests, and encumbrances (collectively, the "**Encumbrances**"), with such Encumbrances to attach solely to the net proceeds of the Sale.

## II.    THE STALKING HORSE AGREEMENT AND BREAK-UP FEE

The Sellers have entered into that certain *Asset Purchase Agreement* dated July 9, 2020 (the "**Stalking Horse Agreement**") with Project BarFly LLC (a "**Stalking Horse Bidder**"), an affiliate of the Prepetition Secured Lender, for the Purchased Assets. The Stalking Horse Agreement is subject to higher or otherwise better offers and the Sellers intend to continue to solicit offers from possible bidders. Pursuant to the terms of the Stalking Horse Agreement, the Stalking Horse Bidder has agreed, among other things, to credit bid $17,500,000 for the Purchased Assets (the "**Credit Bid**").

In recognition of the expenditure of time, energy, and resources by the Stalking Horse Bidder, if the Stalking Horse Bidder is not the Successful Bidder, the Sellers will pay the Stalking Horse Bidder an aggregate break-up fee not to exceed $525,000 (the "**Break-Up Fee**").[2]

## III.    THE BIDDING PROCEDURES

In order to ensure that the Sellers receive the maximum value for the Purchased Assets, a Stalking Horse Agreement shall be subject to higher or better offers as provided in these Bidding Procedures.

### A.    Provisions Governing Qualifications of Bidders

Unless otherwise ordered by the Court, in order to participate in the bidding process, prior to the Bid Deadline (defined below), each person who wishes to participate in the bidding process (a "**Potential Bidder**") must deliver the following to the Notice Parties (as defined below):

    (i)    a written disclosure of the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid; and

    (ii)    information satisfactory to the Sellers that the Potential Bidder has the financial wherewithal to consummate the proposed Sale, including payment of any cure amount and the provision of adequate assurance of future performance with respect to any contract that may be assigned; and

    (iii)    an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Sellers and their advisors.

---

[2]    For the avoidance of doubt, no bidder other than the Stalking Horse Bidder shall be granted a break-up fee or otherlike compensation at any time in connection with the Debtors' sale process or Bidding Procedures.

A Potential Bidder that delivers the documents and information described above or that the Sellers determine, in consultation with the Consultation Parties (as defined below), is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale, will be deemed a "**Qualified Bidder**."

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, in consultation with the Consultation Parties (as defined below), and will notify the Potential Bidder if such Potential Bidder is a Qualified Bidder.

Upon a Potential Bidder being notified that such Potential Bidder is a Qualified Bidder, the Sellers will provide the Stalking Horse Agreement for the Qualified Bidder to use in connection with preparing its bid.

### B.    Due Diligence

The Sellers will provide any Potential Bidder such due diligence access or additional information as the Sellers deem appropriate, which may include differentiations between the diligence provided to strategic and financial bidders, as appropriate, and contractual obligations to limit access to certain proprietary information. The Sellers reserve the right to withhold any diligence materials that the Sellers determine are business-sensitive or otherwise not appropriate for disclosure to a competitor of the Sellers.  The due diligence period will extend through and include the Bid Deadline. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed reasonably appropriate by the Sellers. All due diligence requests must be directed to Robert Hersch, Senior Managing Director of Mastodon Ventures, Inc., via email at rhersch@mastodonventures.com.

### C.    Provisions Governing Qualified Bids

A bid will be considered a "**Qualified Bid**" only if the bid is submitted by a Qualified Bidder and the Sellers determine, in consultation with (i) the Administrative Agent and (ii) the Committee (together with the Administrative Agent, the "**Consultation Parties**"), that such bid complies with all of the following:

> (i)    it states that the applicable Qualified Bidder offers to purchase, in cash or, if applicable, through a credit bid, or any combination of the two, all or a portion of the Purchased Assets upon the terms and conditions that the Sellers, in consultation with the Consultation Parties, reasonably determine are no less favorable to the Sellers than those set forth in the Stalking Horse Agreement;

> (ii)   it offers to purchase all or substantially all of the Purchased Assets or only a portion of the Purchased Assets; provided, however, a bid that offers to purchase only a portion of the Purchased Assets may only be a Qualified Bid to the extent that the value of such bid, in combination with the value of other Bids for other Purchased Assets, exceeds the amount set forth in paragraph (vii) below;

(iii)  it includes a signed writing stating that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder or the Back-Up Bidder (each, as defined below) its offer shall remain irrevocable until the later of (i) the closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (ii) the date that is twenty (20) calendar days after the Sale Hearing;

(iv)  it includes confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the submission of the bid;

(v)  it includes a duly authorized and executed copy of an asset purchase agreement, including the purchase price for the Purchased Assets expressed in U.S. Dollars (the "**Purchase Price**"), together with all exhibits and schedules thereto (an "**Asset Purchase Agreement**"), and, copies marked to show any amendments and modifications to the Stalking Horse Agreement;

(vi)  it includes financial statements or other written evidence, including (if applicable) a firm commitment for financing, establishing the ability of the Qualified Bidder to consummate the proposed Sale and pay the Purchase Price, including payment of any cure amount with respect to any contract that may be assigned, in cash, such as will allow the Sellers to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Asset Purchase Agreement;

(vii)  the bid has a value to the Sellers, determined in the Sellers' reasonable business judgment after consultation with the Consultation Parties, that is greater than or equal to the sum of the value offered under the Stalking Horse Agreement, plus (i) the Break-Up Fee, plus (ii) $100,000 (the "**Minimum Initial Overbid Amount**"); provided, for the avoidance of doubt, this requirement may be satisfied by the aggregation of bids for portions of the Purchased Assets under the proviso in the foregoing clause (ii);

(viii)  it identifies with particularity which Contracts the Qualified Bidder wishes to assume and provides details of the Qualified Bidder's proposal for the treatment of related cure costs and the provision of adequate assurance of future performance to the counterparties to such Contracts; provided, a landlord submitting a bid for its own real property lease(s) under which it is the landlord and no other Purchased Assets (a "**Landlord Bid**") shall not be required to detail its proposal for providing adequate assurance of

future performance;

(ix)    it includes an acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Asset Purchase Agreement; and (iv) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

(x)    it includes evidence, in form and substance reasonably satisfactory to the Sellers, in consultation with the Consultation Parties, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Asset Purchase Agreement;

(xi)    it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Sellers), certified check or such other form acceptable to the Sellers, in consultation with the Consultation Parties, payable to the order of the Sellers (or such other party as the Sellers may determine) in an amount equal to 10% of the Purchase Price (a "**<u>Good Faith Deposit</u>**"); *provided, however*, none of the Prepetition Secured Lender, Administrative Agent, or Stalking Horse Bidder shall have to provide a Good Faith Deposit to the extent of any credit bid, the Credit Bid, or the Stalking Horse Agreement, as applicable;

(xii)    it contains a detailed description of how the Qualified Bidder intends to treat current employees of the Sellers;

(xiii)    it is received prior to the Bid Deadline (as defined below).

The Stalking Horse Bidder shall be deemed a Qualified Bidder, and the Stalking Horse Agreement will be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale without compliance with the above enumerated requirements.

The Sellers reserve the right to negotiate with any Qualified Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid.

No later than two (2) business days prior to the Auction, the Sellers shall notify the Stalking Horse Bidder (if any), the Committee, the Administrative Agent, and all Potential Bidders in writing as to whether or not any bids constitute Qualified Bids, and will notify each Qualified Bidder that has submitted a bid whether such Qualified Bidder's bid constitutes a Qualified Bid promptly after such determination has been made.

Each Potential Bidder shall comply with all reasonable requests for additional information by the Sellers or their advisors regarding such Potential Bidder's financial wherewithal to consummate the Sale. Failure by the Potential Bidder to comply with such requests may be a basis for the Sellers to determine that a Potential Bidder is not a Qualified Bidder and that bid made by a Potential Bidder or a Qualified Bidder is not a Qualified Bid.

### D.    **Bid Deadline**

A Qualified Bidder that desires to make a bid will deliver written copies via email of its bid to the following parties (collectively, the "**Notice Parties**"): (i) the Debtors (Mark A. Sellers, III at mark@barflyventures.com and Ned Lidvall at nlidvall@barflyventures.com); (ii) counsel to the Debtors (John Lucas at jlucas@pszjlaw.com and Jason Rosell at jrosell@pszjlaw.com); (iii) the investment banker to the Debtors (Robert Hersch at rhersch@mastodonventures.com); (iv) counsel to the Committee (Michael Brandess at mbrandess@sfgh.com); and (v) counsel to the Administrative Agent (Nathan Gimpel at nathangimpel@paulhastings.com) so as to be received by the foregoing parties no later than **August 21, 2020 at 4:00 p.m. (Eastern Time)** (the "**Bid Deadline**"). The Bid Deadline may be extended by the Sellers in consultation with the Consultation Parties.

### E.    **Evaluation of Competing Bids**

A Qualified Bid will be valued based upon several factors including, without limitation, (1) the amount of the Purchase Price provided by such bid, (2) the risks and timing associated with consummating such bid, any proposed revisions to the Stalking Horse Agreement and/or the proposed sale order, (3) the number of employees being retained, (4) the value of assumed liabilities, (5) cash component to pay, or assumption of, all cure costs, and (6) any other factors deemed relevant by the Sellers, in consultation with the Consultation Parties. The Prepetition Secured Lender, Administrative Agent, or the Stalking Horse Bidder, as applicable, shall have the right to credit bid up to a maximum of $20 million of the obligations owed by the Sellers under that certain *Credit Agreement* dated as of August 31, 2015.

### F.    **No Qualified Bids**

If the Sellers do not receive any Qualified Bids other than the Stalking Horse Agreement, no Auction (as defined below) will be held and the Stalking Horse Bidder will be named the Successful Bidder upon the expiration of the Bid Deadline.

## IV.    THE AUCTION PROCESS

### A.    The Auction

If the Sellers receive more than one Qualified Bid (including a Stalking Horse Agreement), the Sellers will conduct an auction of the Purchased Assets (the "**Auction**"), which shall take place on **August 24, 2020 at 10:00 a.m. (Eastern Time)**, at the offices of Warner Norcross + Judd LLP, 1500 Warner Building, 150 Ottawa Avenue, NW, Grand Rapids, Michigan 49503, or such other date, time, and location (including by video conference) as shall be timely communicated to all entities entitled to attend the Auction.  The Auction, which shall be recorded and transcribed and shall run in accordance with the following procedures:

> (i)    only Qualified Bidders (including the Stalking Horse Bidder, if any) who have timely submitted Qualified Bids will be entitled to make any subsequent bids at the Auction;

> (ii)    the Stalking Horse Bidder will be entitled to make subsequent bids for all or substantially all or any combination of the Purchased Assets comprised of further credit bids, cash, additional or different consideration of any type, or any combination of the foregoing;

> (iii)    each Qualified Bidder shall be required to confirm that it has not engaged in any collusion, within the meaning of section 363(n) of the Bankruptcy Code with respect to any Bids submitted or not submitted in connection with the Sale;

> (iv)    at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to attend the Auction <u>and</u> all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person; <u>provided</u> that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the selection of the Successful Bidder and Back-Up Bidder at the conclusion of the Auction. At least one (1) business day prior to the Auction, the Sellers will provide copies of the Qualified Bid, or combination of Qualified Bids, which the Sellers believe, after consultation with the Consultation Parties, is the highest or otherwise best offer for all or any portion of the Purchased Assets (the "**Starting Bid**") to the Stalking Horse Bidder and all other Qualified Bidders who have timely submitted Qualified Bids. For the avoidance of doubt, the Starting Bid may comprise multiple Qualified Bids if bids are submitted for less than all of the Purchased Assets, so long as the aggregate consideration paid in connection with such multiple

Qualified Bids, taken together, represents the highest or otherwise best offer for the Purchased Assets;

(v) all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction, and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

(vi) the Sellers, after consultation with the Consultation Parties, may modify, employ, and announce at the Auction additional or amended procedural rules that are reasonable under the circumstances for conducting the Auction, <u>provided</u> that such rules (i) are not inconsistent with the Bidding Procedures, the Bankruptcy Code, or any order of the Court entered in connection herewith; and (ii) are disclosed to each Qualified Bidder attending the Auction;

(vii) bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each, a "**Subsequent Bid**") providing a net value to the Sellers' estates of at least $100,000 above the prior bid. After the first round of bidding and between each subsequent round of bidding, the Sellers, after consultation with the Consultation Parties, shall announce the bid (and the value of such bid) that they believe to be the highest or otherwise best bid (each, the "**Leading Bid**");

(viii) a round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid;

(ix) except as specifically set forth herein, for the purpose of evaluating the value of the Purchase Price provided by each Subsequent Bid (including any Subsequent Bid by a Stalking Horse Bidder), the Sellers shall consider the Break-Up Fee, if applicable, as well as any additional liabilities to be assumed by a Qualified Bidder, and any additional costs which may be imposed on the Sellers; and

(x) the Sellers may accept bids for any portion of the Purchased Assets, as well as bids for substantially all of the Purchased Assets; <u>provided</u>, <u>however</u>, that a Qualified Bid that offers to purchase only a portion of the Purchased Assets may only be part of the Successful Bid to the extent that the value of such Qualified Bid, in combination with the value of other Qualified Bids for other Purchased Assets, exceeds the value of any then-pending Qualified Bid for all or substantially all the Purchased Assets.

**B.      <u>Selection of Successful Bid</u>**

Prior to the conclusion of the Auction, the Sellers, in consultation with the Consultation Parties, will review and evaluate each Qualified Bid submitted at the Auction in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer (one or more such bids, collectively the "**Successful Bid**" and the bidder(s) making such bid(s), collectively, the "**Successful Bidder**"), and communicate to the Auction participants the identity of the Successful Bidder and the details of the Successful Bid. The determination of the Successful Bid by the Sellers at the conclusion of the Auction shall be final, subject to approval by the Court, provided that if the Successful Bidder has not been consented to by the Administrative Agent then the rights of the Administrative Agent to object to such Sale on any grounds are expressly reserved. In determining whether a bid is a Successful Bid, in the exercise of their reasonable, good-faith business judgment, and in the exercise of their fiduciary duties, the Sellers shall, in good faith, consider, *inter alia*, the following factors:

> (i)     The total expected consideration to be received by the Sellers;

> (ii)    The likelihood of the bidder's ability to close a transaction and the timing thereof; and

> (iii)   The expected net benefit to the Debtors' estates.

The Qualified Bidder with the next highest or otherwise best Qualified Bid, as determined by the Sellers in consultation with the Consultation Parties, will be required to serve as the back-up bidder ("**Back-Up Bidder**") and its bid open and irrevocable until the later to occur of twenty (20) days after the Sale Hearing and closing on the Successful Bid with the Successful Bidder. If the Successful Bidder fails to consummate the Sale, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Sellers will be authorized and directed to consummate the Sale with the Back-Up Bidder without further order of the Court.

Within two (2) business days after conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents necessary to consummate the Successful Bid. Within one (1) business day after conclusion of the Auction, the Sellers shall file a notice with the Court setting forth the results of the Auction, which shall (a) identify the Successful Bidder and the Back-Up Bidder; (b) include a copy of the Successful Bid and the Back-Up Bid or a summary of all material terms of such bids, including any assumption and assignment of Contracts contemplated thereby; and (c) set forth the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Notice Parties of the outcome of the Auction. The Sellers will sell the Purchased Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Court at the Sale Hearing.

C.    **Return of Deposits**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid. If the Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained by, the Sellers in accordance with the applicable Asset Purchase Agreement. All Good Faith Deposits shall be returned to each bidder not selected by the Seller as the Successful Bidder or the Back-Up Bidder no later than seven (7) calendar days following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder no later than seven (7) calendar days following the closing of the Sale to the Successful Bidder.

## V.    SALE HEARING

The Sellers will seek entry of an order from the Court at a hearing (the "**Sale Hearing**") to begin on or about **August 27, 2020 at 10:00 a.m. (Eastern Time)**, subject to the availability of the Court, to approve and authorize the Sale to the Successful Bidder on the terms and conditions memorialized in the Successful Bid and in accordance with the Bidding Procedures. The hearing will be conducted by videoconferencing using the Zoom Cloud Meeting Program/App. Any party or attorney who wishes to appear at the hearing must register by no later than **August 26, 2020 at 1:00 p.m**. Eastern time. Information about registration is available on the Court's website under Covid-19 Notices, https://www.miwb.uscourts.gov/covid-19-notices.

# Exhibit 2 to Bidding Procedures Order

## Notice of Auction and Sale Hearing

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re: | Chapter 11 |
| BARFLY VENTURES, LLC, *et al.* | Case No. 20-01947-jwb |
| Debtors. ¹ | Jointly Administered |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE THAT:**

1.      On July 9, 2020, the above-captioned debtors and debtors-in-possession (the "Debtors") filed a motion (the "Motion")² [Docket No. 127] for *Entry of (I) an Order (A) Approving Bidding Procedures and Scheduling Sale Hearing, (B) Approving the Form of the Asset Purchase Agreement, Including the Bid Protections, and (C) Granting Related Relief; and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief.*

2.      The Debtors are seeking to sell the Assets to the Successful Bidder(s) or Back-Up Bidder(s). Approval of the sale of the Assets to either the Successful Bidder(s) or Back-Up Bidder(s) may result in, among other things, the assumption, assignment and/or transfer by the Debtors of certain executory contracts and unexpired leases. If you are a party to an executory contract or lease with one or more of the Debtors, you will receive a separate notice that contains relevant dates and other information that may impact you as a party to any such executory contract or lease.

3.      On **July 22, 2020**, the United States Bankruptcy Court for the Western District of Michigan entered the Bidding Procedures Order. Pursuant to the Bidding Procedures Order, if the Debtors receive more than one Qualified Bid (as defined in the Bidding Procedures), an auction for any or all of the Assets shall take place on **August 24, 2020, at 10:00 a.m. (Eastern Time)**, at the offices of Warner Norcross + Judd LLP, 1500 Warner Building, 150 Ottawa Avenue, NW, Grand Rapids, Michigan 49503, or at such other place, time, and location (including by video conference) as the Debtors shall notify all Qualified Bidders and other invitees and creditors. Only parties that have

---

¹ The Debtors and the last four digits of their federal employment identification number are: Barfly Ventures, LLC (8379); 9 Volt, LLC (d/b/a HopCat) (1129); 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684); GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130); E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334); HopCat-Ann Arbor, LLC (5229); HopCat-Chicago, LLC (7552); HopCat-Concessions, LLC (2597); HopCat-Detroit, LLC (8519); HopCat-GR Beltline, LLC (9149); HopCat-Holland, LLC (7132); HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970); HopCat-Kalamazoo, LLC (8992); HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242); HopCat-Lexington, LLC (6748); HopCat-Lincoln, LLC (2999); HopCat-Louisville, LLC (0252); HopCat-Madison, LLC (9108); HopCat-Minneapolis, LLC (8622); HopCat-Port St. Lucie, LLC (0616); HopCat-Royal Oak, LLC (1935); HopCat-St. Louis, LLC (6994); Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).

² A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, by no later than **August 21, 2020 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline"), may participate at the Auction.  If, however, one or no Qualified Bids are received by the Bid Deadline, then the Auction will not be held.  Any party that wishes to take part in this process and submit a bid for the Assets must submit its bid prior to the Bid Deadline and in accordance with the Bidding Procedures. Notwithstanding the foregoing, the Auction shall be conducted openly, and all creditors, their counsel and any necessary advisors shall be permitted to attend the Auction so long as they provide counsel for the Debtors no less than two (2) business days' written notice of their intent to attend the Auction so that the Debtors can make appropriate arrangements.

4.      The Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) or Back-Up Bidder(s) free and clear of all liens, claims and encumbrances (the "Sale") will be held before the Honorable Judge Boyd in the United States Bankruptcy Court for the Western District of Michigan on **August 27, 2020, at 10:00 a.m. (Eastern Time)** or at such other time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing. The hearing will be conducted by videoconferencing using the Zoom Cloud Meeting Program/App. Any party or attorney who wishes to appear at the hearing must register by no later than **August 26, 2020 at 1:00 p.m** Eastern time.  Information about registration is available on the Court's website under Covid-19 Notices, https://www.miwb.uscourts.gov/covid-19-notices.

5.      Objections, if any, to the Sale or other relief requested in the Motion (other than with respect to (i) cure amounts (which are subject to a separate notice)); or (ii) the conduct of the Auction or adequate assurance of future performance (which are subject to paragraph 6 below)) must: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the clerk of the Bankruptcy Court for the Western District of Michigan on or before **August 25, 2020 at 5:00 p.m. Eastern Time)** (the "Sale Objection Deadline") and be served upon: (i) counsel to the Debtors (John Lucas at jlucas@pszjlaw.com and Jason Rosell at jrosell@pszjlaw.com); (ii) counsel to the Committee (Michael Brandess at mbrandess@sfgh.com); and (iii) counsel to the Administrative Agent (Nathan Gimpel at nathangimpel@paulhastings.com).

6.      Objections, if any, to the conduct of the Auction, or adequate assurance of future performance by the Successful Bidder may be raised at the Sale Hearing.

7.      Unless an objection is timely served and filed in accordance with this notice, it may not be considered by the bankruptcy court and the bankruptcy court may grant the relief requested in the motion without further hearing and notice.

8.      This Notice and the Sale Hearing is subject to the complete terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Assets or in obtaining a copy of any related document, subject to any necessary confidentiality agreement, may make a written request to counsel for the Debtors by emailing John Lucas at jlucas@pszjlaw.com and Jason Rosell at jrosell@pszjlaw.com.

Dated: _____          Respectfully submitted,

                            WARNER NORCROSS + JUDD LLP

                            /s/ DRAFT_____
                            Rozanne M. Giunta (P29969)
                            Stephen B. Grow (P39622)
                            Elisabeth M. Von Eitzen (P70183)
                            1500 Warner Building
                            150 Ottawa Avenue, NW
                            Grand Rapids, Michigan 49503
                            Telephone: (616) 752-2000
                            Counsel for Debtor

                            PACHULSKI STANG ZIEHL & JONES LLP

                            John W. Lucas
                            Jason Rosell
                            Steven W. Golden
                            150 California Street, 15th Floor
                            San Francisco, California 94111
                            Telephone: (415) 263-7000

                            *Proposed Counsel to the Debtors*

**Exhibit 3 to Bidding Procedures Order**

**Notice of Assumption and Assignment**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re: | Chapter 11 |
| BARFLY VENTURES, LLC, *et al.* | Case No. 20-01947-jwb |
| Debtors. [1] | Jointly Administered |

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     On July 21, 2020, the United States Bankruptcy Court for the Western District of Michigan (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"),[2] pursuant to sections 105(a), 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure, in the chapter 11 cases of the above-captioned debtors and debtors in possession (the "Debtors") approving, among other things, the fixing of cure amounts (the "Cure Amounts") related to the Debtors' potential assumption and assignment of certain executory contracts and unexpired leases (the "Executory Contracts and Unexpired Leases") listed on Exhibit A annexed hereto in connection with the sale (the "Sale") of substantially all of the Debtor's assets (the "Assets"). The Debtors may assume and assign the Executory Contracts and Unexpired Leases to the Successful Bidder or Back-Up Bidder for the Assets under the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court and attached to the Bidding Procedures Order as Exhibit 1. A hearing to consider approval of the Sale of the Assets to a Successful Bidder or Back-Up Bidder free and clear of all liens, claims and encumbrances will be held before the Honorable Judge Boyd in the United States Bankruptcy Court for the Western District of Michigan on **August 27, 2020, at 10:00 a.m. (Eastern Time)**, or at such other time thereafter as counsel may be heard (the "Sale Hearing").

2.     The Debtors have identified the Executory Contract(s) or Unexpired Lease(s) to which you are a party listed on Exhibit A. In the event that a determination is made by the Debtors

---

[1] The Debtors and the last four digits of their federal employment identification number are: Barfly Ventures, LLC (8379); 9 Volt, LLC (d/b/a HopCat) (1129); 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684); GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130); E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334); HopCat-Ann Arbor, LLC (5229); HopCat-Chicago, LLC (7552); HopCat-Concessions, LLC (2597); HopCat-Detroit, LLC (8519); HopCat-GR Beltline, LLC (9149); HopCat-Holland, LLC (7132); HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970); HopCat-Kalamazoo, LLC (8992); HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242); HopCat-Lexington, LLC (6748); HopCat-Lincoln, LLC (2999); HopCat-Louisville, LLC (0252); HopCat-Madison, LLC (9108); HopCat-Minneapolis, LLC (8622); HopCat-Port St. Lucie, LLC (0616); HopCat-Royal Oak, LLC (1935); HopCat-St. Louis, LLC (6994); Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Bidding Procedures Order.

and the Successful Bidder(s) or Back-Up Bidder(s) to seek assumption and assignment of such Executory Contract(s) or Unexpired Lease(s) in connection with the Sale, the Debtors believe that any and all defaults (other than the filing of these Chapter 11 Cases) and actual pecuniary losses under the Executory Contracts and Unexpired Leases can be cured by the payment of the Cure Amounts listed on <u>Exhibit A</u> annexed hereto. If no amount is listed on the Notice of Assumption and Assignment with respect to an Executory Contract or Unexpired Lease, the Debtors believe that there is no Cure Amount applicable to such Executory Contract or Unexpired Lease.

3.      Any objections to the amount asserted as the Cure Amount (each, a "<u>Cure Objection</u>"), must be in writing and shall set forth the cure amount being claimed by the objecting party and the dates and corresponding amounts of the alleged defaults by the Debtors. If a Cure Objection is timely filed, the Debtors, with the approval of the Successful Bidder, may resolve any Cure Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court. In the event that the Debtors, the Successful Bidder and any objecting party are unable to consensually resolve any Cure Objection prior to the Sale Hearing, the Debtors shall request that the Court resolve such Cure Objection at the Sale Hearing.

4.      To be considered a timely Cure Objection, the Cure Objection must be filed with the Bankruptcy Court and served upon the following parties **by no later than August , 2020 at 4:00 p.m. (Eastern Time)**: (i) counsel to the Debtors (John Lucas at jlucas@pszjlaw.com and Jason Rosell at jrosell@pszjlaw.com); (ii) counsel to the Committee (Michael Brandess at mbrandess@sfgh.com); and (iii) counsel to the Administrative Agent (Nathan Gimpel at nathangimpel@paulhastings.com) (collectively, the "**<u>Objection Notice Parties</u>**").

5.      Any objections to the assumption and assignment of an Executory Contract or Unexpired Lease (other than a Cure Objection), including the proposed form of adequate assurance of future performance with respect to an Executory Contract or Unexpired Lease (each, an "<u>Adequate Assurance Objection</u>"), must be in writing and shall state with specificity the legal and factual basis for objection to assumption and assignment of an Executory Contract or Unexpired Lease and include all supporting documentation. If an Adequate Assurance Objection is timely filed, the Debtors, with the approval of the Successful Bidder, may resolve any Adequate Assurance Objection without further order of the Court. In the event that the Debtors, the Successful Bidder, and any objecting party are unable to consensually resolve any Adequate Assurance Objection prior to the Sale Hearing, the Debtors shall request that the Court resolve such Adequate Assurance Objection at the Sale Hearing.

6.      To be considered a timely Adequate Assurance Objection, the Adequate Assurance Objection must be filed with the Bankruptcy Court and served upon the Objection Notice Parties **by no later than August 26, 2020 at 4:00 p.m. (Eastern Time)**.

7.      Unless a Cure Objection or Adequate Assurance Objection is timely filed and served, the assumption and assignment of the applicable Executory Contracts and Unexpired Leases will proceed without further notice at the Sale Hearing.

8.      Parties that fail to file and serve timely a Cure Objection and/or Adequate Assurance Objection, as applicable, shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount listed on <u>Exhibit A</u>; and (ii) subject to the procedures for objecting to adequate assurance of future performance as set forth herein and in the Bidding Procedures Order, be deemed to have consented to the assumption and assignment of such Executory Contract or Unexpired Lease to the Successful Bidder or Back-Up Bidder and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder or Back-Up Bidder, in relation to this sale, that any additional amounts are due or defaults exist, or additional conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.

9.      If no Cure Amounts are due under an Executory Contract or Unexpired Lease, or if the non-Debtor party agrees to the Cure Amounts listed on <u>Exhibit A</u> hereto, and the non-Debtor party to the Executory Contract or Unexpired Lease does not otherwise object to the Debtors' assumption and assignment of the Executory Contract or Unexpired Lease, no further action needs to be taken on the part of that non-Debtor party.

10.      The Successful Bidder(s) or the Back-Up Bidder(s), as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Executory Contracts and Unexpired Leases proposed to be assumed and assigned under the applicable asset purchase agreement through the closing of the Sale; *provided*, *however*, the non-Debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice by electronic mail within two (2) business days of such determination and the Debtors will file a notice of such determination with the Court.

11.      The Debtors' decision to sell and assign to the Successful Bidder(s) or Back-Up Bidder(s) the Executory Contracts and Unexpired Leases is subject to Bankruptcy Court approval and the closing of the Sale. Accordingly, absent such closing, the Executory Contracts and Unexpired Leases shall not be deemed to be sold and assigned, and shall in all respects be subject to further administration under the Bankruptcy Code. The inclusion of any document on the list of Executory Contracts and Unexpired Leases shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved). Nor shall the inclusion of any document constitute an admission of liability by the Debtors or their estates.

Dated: _____                    Respectfully submitted,

                                       WARNER NORCROSS + JUDD LLP

                                       /s/ DRAFT
                                       _____
                                       Rozanne M. Giunta (P29969)
                                       Stephen B. Grow (P39622)
                                       Elisabeth M. Von Eitzen (P70183)

1500 Warner Building
150 Ottawa Avenue, NW
Grand Rapids, Michigan 49503
Telephone: (616) 752-2000
Counsel for Debtor

PACHULSKI STANG ZIEHL & JONES LLP

John W. Lucas
Jason Rosell
Steven W. Golden
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 263-7000

*Proposed Counsel to the Debtors*