## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARFLY VENTURES, LLC, et al.,[1] | ) | Case No. 20-01947-jwb |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

### OBJECTION TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE
### PROVIDED BY STALKING HORSE BIDDER

Now comes Gordon Food Service, Inc. ("GFS") and hereby files this objection (the "Objection") to the adequate assurance of future performance offered by the Stalking Horse Bidder[2] in connection with the Debtors' sale motion (DN 127, the "Motion") as required by the Court's Order (A) Approving Bidding Procedures and Scheduling Sale Hearing, (B) Approving the Form of the Asset Purchase Agreement, Including the Bid Protections, and (C) Granting Related Relief (DN 184, the "Bid Procedures Order"). In support of its Objection, GFS states as follows:

1.     On July 24, 2020, the Debtors filed their Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases (DN 198, the "Notice") pursuant to the Bid Procedures Order. The Notice lists a "[f]ood distribution" agreement between Gordon Food

---

[1] The Debtors and the last four digits of their federal employment identification number are: Barfly Ventures, LLC (8379); 9 Volt, LLC (d/b/a HopCat) (1129); 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684); GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130); E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334); HopCat-Ann Arbor, LLC (5229); HopCatChicago, LLC (7552); HopCat-Concessions, LLC (2597); HopCat-Detroit, LLC (8519); HopCatGR Beltline, LLC (9149); HopCat-Holland, LLC (7132); HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970); HopCat-Kalamazoo, LLC (8992); HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242); HopCat-Lexington, LLC (6748); HopCat-Lincoln, LLC (2999); HopCat-Louisville, LLC (0252); HopCat-Madison, LLC (9108); HopCatMinneapolis, LLC (8622); HopCat-Port St. Lucie, LLC (0616); HopCat-Royal Oak, LLC (1935); HopCat-St. Louis, LLC (6994); Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).
[2] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Motion.

Service and certain of the Debtors (the "MDA Debtor Parties")[3] as one that will potentially be assumed and assigned.

2.     GFS and the MDA Debtor Parties are party to that certain Distribution Agreement dated April 23, 2018 (the "Agreement").  GFS provided prepetition, and continues to provide postpetition, goods to the Debtors pursuant to the Agreement (both to the MDA Debtor Parties and other of the Debtors that are authorized to order from GFS pursuant to the Agreement).

3.     A contract is only assignable if it has been assumed in accordance with section 365(b)(1) and the counterparty has been provided "adequate assurance of future performance by the assignee of such contract. . . ."  11 U.S.C. § 365(f)(2).  In assessing adequate assurance of future performance, "the test is not one of guaranty, but simply whether it appears that the [payment] and other obligations [will be] met."  *In re Embers 86th Street, Inc.*, 184 B.R. 892, 902 (Bankr. S.D.N.Y. 1995); *see also In re Natco Industries, Inc.*, 54 B.R. 436, 440–441 (Bankr. S.D.N.Y. 1985) (adequate assurance intended to give contract parties a "measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy").  The party moving to assume a contract has the ultimate burden to show that all requirements for assumption have been met.  *In re Service Merchandise Co., Inc.*, 297 B.R. 675, 682 (Bankr. M.D. Tenn. 2002).

4.     On August 21, 2020, counsel for the Stalking Horse Bidder provided counsel for GFS with an adequate assurance letter (the "Adequate Assurance Letter"), which is attached hereto as **Exhibit A**.

5.     The Adequate Assurance Letter indicates that the Stalking Horse Bidder is a new entity formed by the Debtors' prepetition lenders, Congruent Credit Opportunities Fund III, LP

---

[3] The Notice lists the following counterparties to the agreement with GFS:  Barfly Ventures, LLC, 50 Amp Fuse, LLC, GRBC Holdings, LLC, 9 Volt, LLC, Hopcat Ann Arbor, LLC, Hopcat Detroit, LLC, EL Brewpub, LLC, Hopcat Lexington, LLC, Hopcat Indianapolis, Hopcat Kansas City, Hopcat Lincoln, and Hopcat Madison.

("Congruent"), Main Street Capital Corporation ("Main Street"), and HMS Income Fund, Inc. ("HMS, and collectively with Congruent and Main Street, the "Secured Lenders").

6.       While the Adequate Assurance Letter states that the Secured Lenders collectively have billions of assets under management, it does not specifically indicate whether the Stalking Horse Bidder itself has ability to perform future obligations.   On this point, the Adequate Assurance Letter states:

> The Buyer will be capitalized by a revolving credit facility to fund the working-capital and growth-capital needs of the business comprising the assets acquired through the Acquisition. Given this post-sale financing, there is expected to be more than adequate funding for the Buyer to satisfy all obligations that arise in the ordinary course of business for the foreseeable future. The proven track record and financial wherewithal of the Secured Lenders provide further assurance of the Buyer's ability to operate the business as a going concern.

7.       The Adequate Assurance Letter does not include important information that contract counterparties would typically expect to see in an adequate assurance package, including the amount of capital the Stalking Horse Bidder will have at closing, the size of the credit facility the Stalking Horse Bidder will have access to, and the means by which the Stalking Horse Bidder expects to pay contract counterparties and service its debt.  Given that the Debtors' ultimately were unable to service their debt and perform under their contracts, this information is necessary for contract counterparties to have.

8.       Indeed, the fact that Congruent, Main Street and HMS have $220 million, $4.0 billion, and $133.3 billion of invested capital under their management, respectively, is of no consequence to GFS and, by itself, does not constitute adequate assurance of future performance. The Adequate Assurance Letter does not state whether all of that investment capital is already actively invested in other assets or whether the investment funds themselves have cash available to satisfy current expenses of the Stalking Horse Bidder on a going forward basis.  For example,

if the Stalking Horse Bidder purchases the Debtors' assets and itself becomes unable to pay current operating expenses (such as for food supplied by GFS), the Adequate Assurance Letter provides no assurance whatsoever that the investment firms have available capital to invest in the Stalking Horse Bidder to cover current operating losses and to reasonably assure GFS and other vendors of payment. The Adequate Assurance Letter only refers vaguely to "a revolving credit facility [that will be used] to fund the working-capital and growth-capital needs of the business comprising the assets acquired through the Acquisition" and that "there is expected to be more than adequate funding for the Buyer to satisfy all obligations that arise in the ordinary course of business for the foreseeable future." This alone is insufficient because, at a minimum, it does not state: (i) the amount of the revolving credit facility, (ii) the expenses the Stalking Horse Bidder expects to incur that will be paid from the revolving credit facility (i.e., to demonstrate that the revolving credit facility is sufficient), (iii) the term of the revolving credit facility, and (iv) the current status of obtaining the revolving credit facility.

9.     The Adequate Assurance Letter also refers to the "proven track record" of the Secured Lenders without any support or explanation of what the "proven track record" is. Adequate assurance packages typically would—and should—include detail regarding the buyer's operational track record. Without knowing that the buyer has successful operating experience, GFS cannot reasonably be assured that the Stalking Horse Bidder will be able to perform.

10.     Further, adequate assurance rests not only on an assignee's capitalization, but its business plan and ability to generate future revenue. The Adequate Assurance Letter provides no information as to specific business and operational details of the Stalking Horse Bidder, such as who will manage operations and whether operations will continue as usual or change following assignment. This is especially important given that the Stalking Horse Bidder is a financial

buyer with no known restaurant experience.  Critical missing details in this category include not only who will manage the business post-closing, but also the nature of the arrangement with the operator and the status of entry into such arrangement.  For example, if the Stalking Horse Bidder intends to enter into a management agreement with an operator, GFS should be informed of the operator's experience and the length and scope of responsibilities for the operator in the management agreement.  If the agreement being considered is short-term, then even if the proposed operator has good experience managing similar restaurant operations, there will only be adequate assurance of performance for the short duration of that agreement.  GFS has no way of knowing how the Stalking Horse Bidder plans to operate the business once the proposed short-term operator's management agreement expires.  In addition, the Adequate Assurance Letter does not state the current status of an agreement with an operator.  Having an actual, signed management agreement (subject only to the Stalking Horse Bidder becoming the buyer and closing the transaction) provides a far different level of adequate assurance than if the Stalking Horse Bidder is merely at the stage of trying to negotiate a deal with an operator, which creates much greater uncertainly to vendors such as GFS.  More detail is needed to understand whether the company can be operating successfully for a reasonable period of time post-closing.

11.     To be clear, GFS does not oppose the sale to the Stalking Horse Bidder as contemplated by the Motion, and in fact is in favor of a going concern sale.  The purpose of this Objection is only to ensure that GFS receives the information the Debtors and the Stalking Horse Bidder are required to provide under section 365 so that it can understand the risks associated with assumption and assignment of the Agreement with GFS.

Accordingly, GFS requests that the Court require the Stalking Horse Bidder to submit further adequate assurance information prior to approval of the sale contemplated by the Motion.

GFS reserves the right to supplement or amend this Objection and expressly reserves the right to evaluate any additional information it receives from the Stalking Horse Bidder and further object to adequate assurance of future performance if necessary.

Respectfully submitted,

**ICE MILLER LLP**

*/s/ John C. Cannizzaro*
John C. Cannizzaro
250 West Street, Suite 700
Columbus, OH 43215
Telephone: (614) 462-1070
Facsimile: (614) 232-6923
Email: John.Cannizzaro@icemiller.com

Jason M. Torf
200 W. Madison Street, Suite 3500
Chicago, IL 60606-3417
Telephone:  (312) 726-6244
Facsimile:  (312) 726-6214
Email:  Jason.Torf@icemiller.com

*Counsel for Gordon Food Service, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 26, 2020, I filed the foregoing with the Clerk of the Court using

the ECF system which will send notification of such filing to the following:

- Erika R. Barnes    ebarnes@stites.com, cbeatty@stites.com;docketclerk@stites.com
- David E. Bevins    ECF-Deb@rhoadesmckee.com, ecf@rhoadesmckee.com
- Michael Aaron Brandess    mbrandess@sfgh.com, bkdocket@sfgh.com
- Shannon L. Deeby    sdeeby@clarkhill.com
- Rozanne M. Giunta    rgiunta@wnj.com, scardinal@wnj.com;giuntarr81911@notify.bestcase.com
- Ronald E. Gold    rgold@fbtlaw.com, awebb@fbtlaw.com;eseverini@fbtlaw.com;sbryant@fbtlaw.com
- Stephen B. Grow    sgrow@wnj.com, bpowers@wnj.com
- Paul R. Hage    phage@jaffelaw.com, gshaw@jaffelaw.com
- Anthony J. Kochis    akochis@wolfsonbolton.com, stravis@wolfsonbolton.com
- Michael V. Maggio    michael.v.maggio@usdoj.gov
- Michael M. Malinowski    ecf@malinowskilaw.com
- Judith Greenstone Miller    jmiller@jaffelaw.com, dgoldberg@jaffelaw.com
- Michael E. Moore    moore@millercanfield.com, laitila@millercanfield.com
- Jeff A. Moyer    jeff@thebankruptcygrp.com, crissy@thebankruptcygrp.com;heather@thebankruptcygrp.com
- Anh P. Nguyen    nguyen@slollp.com
- Timothy F. Nixon    tnixon@gklaw.com, kboucher@gklaw.com;ekulpinski@gklaw.com
- John T. Piggins    ecfpigginsj@millerjohnson.com, 8473902420@filings.docketbird.com;Docket@millerjohnson.com
- Steven L. Rayman    courtmail@raymanknight.com
- Dean E. Rietberg    Dean.E.Rietberg@usdoj.gov
- Howard S. Sher    howard@jacobweingarten.com
- Jason M. Torf    jason.torf@icemiller.com
- Denise D. Twinney    bkfilings@wardroplaw.com
- Elizabeth B. Vandesteeg    evandesteeg@sfgh.com, bkdocket@sfgh.com
- Elisabeth M. Von Eitzen    evoneitzen@wnj.com, jnikodemski@wnj.com
- Robert F. Wardrop    bkfilings@wardroplaw.com, bkrfilings@wardroplaw.com;bkwalfilings@wardroplaw.com
- Norman C. Witte    ncwitte@wittelaw.com, mmallswede@wittelaw.com
- Scott A. Wolfson    swolfson@wolfsonbolton.com, stravis@wolfsonbolton.com

CO\6509862.2

I further certify that on August 26, 2020, I served same on (i) counsel to the Debtors (John Lucas at jlucas@pszjlaw.com and Jason Rosell at jrosell@pszjlaw.com); (ii) counsel to the Committee (Michael Brandess at mbrandess@sfgh.com); and (iii) counsel to the Administrative Agent (Nathan Gimpel at nathangimpel@paulhastings.com) via email as required by the Notice.

*/s/ John C. Cannizzaro*
John C. Cannizzaro