UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

    Barfly Ventures, LLC, et al,[1]       Case No. BG20-01947
                                                                Chapter 11
                                                                Honorable James W. Boyd

                                                                Jointly Administered

                         Debtors./

UNITED STATES TRUSTEE'S OBJECTION
TO THE APPROVAL OF THE PROPOSED SALE

Andrew R. Vara, United States Trustee for Regions 3 and 9 (the "United States Trustee"), pursuant to his authority under 11 U.S.C. Section 307 and 28 U.S.C. Section 586(a)(3), files this objection to the proposed approval of the sale to the stalking horse bidder (DN 127), for the following reasons:

---

[1] The Debtors are: Barfly Ventures, LLC, (8379), Barfly Management, LLC (6274), 9 Volt, LLC (d/b/a HopCat)(1129), 50 Amp Fuse, LLC (d/b/a Stella's Lounge)(3684), GRBC Holdings, LLC, (d/b/a Grand Rapids Brewing Company)(2130), E L Brewpub, LLC (d/b/a HopCat East Lansing)(5334), HopCat-Ann Arbor, LLC (5229), HopCat-Chicago LLC (7552), HopCat-Concessions, LLC (2597), HopCat-Detroit, LLC (8519), HopCat-GR Beltline, LLC (9149), HopCat-Holland, LLC (7132), HopCat Indianapolis, LLC (d/b/a HopCat-Broad Ripple)(7970), HopCat-Kalamazoo, LLC (8992), HopCat-Kansas City, LLC (d/b/a HopCat-KC, LLC and TikiCat)(6242), HopCat Lexington, LLC (6748), HopCat-Lincoln, LLC (2999), HopCat-Louisville, LLC (0252), HopCat-Madison, LLC (9108), HopCat- Minneapolis, LLC (8622), HopCat-Port St. Lucie, LLC (0616), HopCat-Royal Oak, LLC (1935), HopCat-St. Louis, LLC (6994), Luck of the Irish, LLC (d/b/a The Waldron Public House LLC and McFadden's Restaurant Saloon)(4255).

1.      Pursuant to 28 U.S.C. § 586, the United States Trustee is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code.[2]

2.      The debtors filed their petitions for relief under Chapter 11 on June 3, 2020.

3.      The debtors have filed a motion asking for the Court's approval of a sale of substantially all the debtors' business operations and related assets [DN 127]. The debtors have obtained a stalking horse bid from an affiliate of their pre-petition lender.

4.      In response to the motion, on July 17, 2020, the United States Trustee expressed, among other things, concern that the sale terms may not be beneficial to the estates or the creditors [DN 172].

5.      Upon information and belief, no competing bids were filed, and therefore, no auction was held. Upon information and belief, the debtors intend to proceed with the stalking horse bid.

6.      The United States Trustee objects to the proposed sale for the following reasons: the final sale agreement has not yet been filed; the final sale agreement may

---

[2] This duty is part of the United States Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See, United States Trustee v. Columbia Gas Sys., Inc., (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-6 (3d Cir. 1994)(noting that the United States Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc., (In re Revco D.S., Inc.),* 898 F.2d 498, 500 (6th Cir. 1990)(describing the United States Trustee as a "watchdog"). *See also,* H.R. Rep. No. 95-595, at 4, 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5966, 6049*; see also, e.g.*, *In re South Beach Secs.*, 606 F.3d 366, 370, 371 (7th Cir. 2010); *Curry v. Castillo (In re Castillo),* 297 F.3d 940, 951 (9th Cir. 2002); *In re Charges of Unprofessional Conduct 99-37 v. Stuart*, 249 F.3d 821, 824 (8th Cir. 2001); *A-1 Trash Pickup v. United States Trustee (In re A-1 Trash Pickup)*, 802 F.2d 774, 776 (4th Cir. 1986).

not have been noticed out properly; the debtors have not filed all of the required monthly operating reports; the proposed sale as filed has no carve out or other provision for the payment in full of all administrative expenses; the proposed sale as filed has no carve out or other provision for ensuring that the proceeds of the sale will allow a distribution of sale proceeds to the unsecured creditors pursuant to a confirmed plan of reorganization in Chapter 11; and some of the terms of the proposed sale may be disadvantageous to the estates and their creditors.

### *The Final Sale Agreement Has Not Yet Been Filed*

7.     Upon information and belief, the reason the sale has been adjourned is because the debtors are still "negotiating" over the terms of the sale with the stalking horse bidder. This raises two related problems. The first is that no one can be expected to know what the final agreement says because, as of yet, no final version of the definitive sale documentation has been filed, and one may not yet exist. The United States Trustee cannot be expected to give a complete statement of objections to the sale terms if no final version of the sale has been filed.

8.     The second problem is one of notice. Since the debtor and the stalking horse are apparently still negotiating the terms of the sale, it seems self-evident that the final version of the sale agreement must differ from the version that originally was noticed out to creditors. If there are material differences between the version that was noticed out and the final version that eventually is put before the Court, then

creditors have not received adequate notice of the terms of the sale, and the Court must require that the new sale agreement be noticed out for a rescheduled sale hearing.

***The Debtors Have Not Filed Current, Accurate Operating Reports***

9.      The United States Trustee objects to the sale because the debtors have not filed accurate, current monthly operating reports. The debtors' reports for June, 2020 were due July 20, 2020. Those reports were filed, but they had errors. The United States Trustee notified the debtors that their June reports were inaccurate, and identified the errors for the debtors. The debtors eventually filed corrected June reports on September 16, 2020.

10.     The July 2020 financial reports were due August 20, 2020, and the August monthly financial report was due as of September 20, 2020. As of this date, none of the debtors have filed their July 2020 monthly financial reports. The August reports were filed on September 23, 2020, the date of this filing, and therefore, the United States Trustee has not yet assessed the completeness or accuracy of those reports. For these reasons, the Court, the United States Trustee and the creditors do not know how much the debtors currently have in unpaid Chapter 11 administrative expenses.

11. The debtors' failure to file current, accurate financial reports is not only a hindrance to the approval of the sale but also a failure by the debtors to fulfill their fiduciary duty to the Court and the creditors as fiduciaries for the estates.

***The Proposed Sale Does Not Provide the Court With a Firm Commitment That Administrative Expenses Will Be Paid In Full***

12. Upon information and belief, the stalking horse bid currently on file makes no provision assuring that the administrative expenses, whatever they may currently be, will be paid in full. The Court should reject any bid that does not assure the payment in full of all administrative expenses. *In re Family Christian, LLC,* 533 B.R. 600, 631 (W.D. Mich. 2015).(The Court said it was unable to approve a bid that failed to provide the Court with "any firm commitment regarding the payment in full of administrative expenses.")

13. Without current, accurate monthly financial reports, no one can know what the total administrative expenses are, and therefore, no one can provide the Court with a firm commitment that the sale will pay all the administrative expenses in full.

14. It is true that the sale motion mentions a "wind-down budget" and that the sale motion would require the purchaser to fund the "wind-down budget" if the sale proceeds are insufficient to fund the "wind-down budget" in full. The "wind-down budget" is defined at DN 127, page 54 by a reference Section 2.1(a) of the agreement.

Section 2.1(a) refers to the "wind-down budget" as found in Schedule 2.1(a). As indicated above, the definitive sale documentation, including schedules and exhibits, has not been filed yet, including the wind-down budget apparently in Schedule 2.1(a). Indeed, this was another issue raised in the United States Trustee's July 17, 2020 filing in response to the sale motion [DN 127 ¶ 6].

15. It must also be noted that without an assurance that the administrative expenses will be paid in full, there also can be no assurance that the debtors will be able to pay their United States Trustee quarterly fees in full. The sale may cause additional fees to accrue, and provision must be made for the payment of those fees in full.

16. Approving a sale that does not guarantee that the Chapter 11 administrative expenses will be paid in full may result in a secondary insolvency.

***The Proposed Sale Provides No Assurance That The Estates Will Make a Distribution to the Unsecured Creditors***

17. The sale agreement currently on file also provides no assurance that the sale proceeds will be sufficient to fund a confirmable, feasible Chapter 11 plan that will make a distribution to the unsecured creditors.

18. Indeed, upon information and belief, the debtors had $6.3 million in money on deposit as of June 30, 2020. Upon information and belief, all or most of this money results from a PPP loan that the debtor obtained under the CARES Act.

19. During the status conference on September 15, 2020, however, the debtors reported to the Court that all the PPP loan proceeds would be expended on approved uses and exhausted before the sale closed, or at least before a plan was confirmed. If the undersigned's recollection of the debtors' status report is correct, it appears that there will be no PPP funds available to fund any plan, and if this sale is approved, there may be no funds of any kind available to fund any plan of reorganization.

20. If the debtor does spend all of the PPP loan proceeds by the closing of the sale, that means that the debtors will have spent $6.3 million without filing complete financial reports that would account for the expenditure of such a significant sum.

### *Some of the Proposed Sales Terms Do Not Appear to Benefit the Estates*

21. The United States Trustee has expressed concerns before about some of the proposed sale terms. The template APA defines assets that are excluded from the sale. Those excluded assets do not appear to include unencumbered cash or Chapter 5 recoveries. These assets should be excluded from the sale and retained by the estates for the benefit of the estates and the unsecured creditors.

22. The proposed sale includes waivers of certain causes of action. The estates should not waive their rights to collect accounts receivable from their account debtors, including those owed to the debtors by employees or insiders. The estates

should not waive their rights to surcharge secured creditors under Section 506(c), particularly in a case like this in which the only beneficiaries of the sale appear to be the secured creditors and the sale apparently will not create any sale proceeds for the estates or the unsecured creditors. The proposed sale also should not include third party waivers or exculpation provisions.

23. These funds, potential recoveries, rights and actions may be the only source of any money to distribute to the creditors, since the stalking horse bid, as presently understood, is a credit bid with no cash component that would allow for the finding of a plan or a plan distribution.

24. As the sale motion correctly notes, authority for the proposed sale is found in the Sixth Circuit's opinion in *Stephens Industries, Inc., v. McClung,* 789 F,2d 386 (6th Cir. 1980), in which the Sixth Circuit adopted the Second Circuit's test from *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2nd Cir. 1983). *Lionel* set forth a non-exclusive list of factors for a bankruptcy judge to consider when reviewing a motion to sell all or a substantial portion of the estate's assets. When considering such a sale motion the Second and Sixth Circuits have instructed bankruptcy judges to consider, among other factors, the effect of the disposition of the assets on a future plan of reorganization, and the likelihood that a plan of reorganization will be proposed and confirmed in the near future. Granted, it is difficult to apply the *Lionel* standard to a sale motion when the final sale agreement has not been filed with the Court. However, at this time, it appears that the proposed sale may leave the estate with no businesses

to operate, no income, no assets, and no cash. The proposed sale, at this moment, does not appear to make the filing of a plan of reorganization or the confirmation of such a plan more likely; indeed, approving this proposed sale may make a dismissal or a conversion to Chapter 7 more likely than a reorganization in Chapter 11.

25. Lastly, Mastodon should be paid according to the rate structure set forth in its appointment order, and the order approving the sale should not change that rate structure or vary from it.

For all the above reasons, the United States Trustee asks that the Court not approve the proposed sale, or that the Court grant such other relief as the Court may deem just.

                                                Respectfully submitted,
                                                ANDREW R. VARA
                                                United States Trustee
                                                Regions 3 and 9

Date:_____                   By:_____
                                                By: */s/ Michael V. Maggio*
                                                Michael V. Maggio
                                                Trial Attorney
                                                Office of the United States Trustee
                                                United States Department of Justice
                                                The Ledyard Building, Second Floor
                                                125 Ottawa Avenue NW, Suite 200R
                                                Grand Rapids, Michigan 49503
                                                Tel: (616) 456-2002, ext. 14