## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re:<br><br>BARFLY VENTURES, LLC, *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-01947-jwb<br><br>Jointly Administered |

### DECLARATION OF NED LIDVALL IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

I, Ned Lidvall, declare and state as follows

1. I am the duly appointed independent manager and interim chief executive officer of the above-captioned debtors (collectively, the "Debtors") and am authorized to submit this declaration in support of the *Motion of Debtors for Entry of an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 127] (the "Sale Motion").[2]

2. In May 2020, I was appointed as an independent manager to the boards of managers of the Debtors and was also appointed as interim chief executive officer of the

---

[1] The Debtors and the last four digits of their federal employment identification number are: Barfly Ventures, LLC (8379); 9 Volt, LLC (d/b/a HopCat) (1129); 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684); GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130); E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334); HopCat-Ann Arbor, LLC (5229); HopCat-Chicago, LLC (7552); HopCat-Concessions, LLC (2597); HopCat-Detroit, LLC (8519); HopCat-GR Beltline, LLC (9149); HopCat-Holland, LLC (7132); HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970); HopCat-Kalamazoo, LLC (8992); HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242); HopCat-Lexington, LLC (6748); HopCat-Lincoln, LLC (2999); HopCat-Louisville, LLC (0252); HopCat-Madison, LLC (9108); HopCat-Minneapolis, LLC (8622); HopCat-Port St. Lucie, LLC (0616); HopCat-Royal Oak, LLC (1935); HopCat-St. Louis, LLC (6994); Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Sale Motion.

Debtors. In my capacity as an independent manager and interim chief executive officer, my responsibilities include overseeing the sale efforts of the Debtors.

3.  The Debtors filed these chapter 11 cases with the goal of pursuing a going concern sale of their assets to maximize the value of their assets for the benefit of creditors. The primary value of their assets is in the Debtors' continued operations. I believe that the best available means of maximizing the value of the Assets is through the sale process described in the Sale Motion. In furtherance thereof, the Debtors engaged Mastodon, an investment banker with extensive experience in selling restaurant assets in a restructuring, to assist with soliciting bidders and potential parties in interest to create a competitive auction process as contemplated by the Bidding Procedures.

4.  In January 2020, the Debtors retained Mastodon as investment banker to review and analyze the Debtors' business and financial condition, to recommend alternatives, and ultimately to conduct a marketing effort for the Debtors' assets.

5.  In June 2020, under my supervision, the Debtors and Mastodon worked collaboratively to develop a confidential information memorandum ("CIM") and a list of potential transaction partners. I am informed that beginning in July 2020, Mastodon prepared and began to distribute a transaction teaser, confidentiality agreement, and CIM to potential transaction partners. I am further informed that Mastodon contacted 192 potential targets, of which approximately 154 responded. Of the approximately 154 potential purchasers that responded, 37 parties executed a confidentiality agreement and received the CIM and access to the data room established by Mastodon. In addition, the due diligence activities of these parties selectively included telephonic meetings with the Debtors' management.

6. Despite the Debtors' and Mastodon's robust marketing efforts, no Qualified Bids were submitted by the Bid Deadline.  Four offers were received, but the Debtors, in consultation with the Consultation Parties, determined that such offers did not meet, among other things, the Minimum Initial Overbid Amount as required by the Bidding Procedures. Accordingly, the Stalking Horse Bidder was the only party to submit a Qualified Bid and no Auction was held.

7. In the Debtors' business judgment, the proposal of the Stalking Horse Bidder, as reflected in the Stalking Horse Agreement, represents the highest and best offer for the specified assets of the Debtors currently available to these estates.  The Stalking Horse Agreement is the result of extensive arm's length negotiations between the Debtors and the Stalking Horse Bidder.

8. Under the circumstances of these chapter 11 cases, and in the Debtors' business judgment, the consummation of the Sale pursuant to the terms of the Stalking Horse Agreement will maximize the value of these estates, will provide a greater recovery to the Debtors' estates than any other available alternative, and represents a fair and reasonable offer to purchase the Assets.

9. Based upon the foregoing, the Debtors believe that consummation of a sale of the Assets to the Stalking Horse Bidder is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

*[Remainder of page intentionally left blank]*

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 24, 2020

_____
Ned Lidvall