UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re:<br><br>BARFLY VENTURES, LLC, *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-01947-jwb<br><br>Jointly Administered |

**DECLARATION OF ROBERT S. HERSCH IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

I, Robert S. Hersch, declare and state as follows

1. I am a Senior Managing Director of Mastodon Ventures, Inc. ("Mastodon") and I submit this declaration in support of the *Motion of Debtors for Entry of an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 127] (the "Sale Motion").[2]

2. Mastodon is a national strategic advisory firm, based in Austin, Texas, focused on the restaurant industry. Mastodon advises restaurant companies offering investment banking,

---

[1] The Debtors and the last four digits of their federal employment identification number are: Barfly Ventures, LLC (8379); 9 Volt, LLC (d/b/a HopCat) (1129); 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684); GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130); E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334); HopCat-Ann Arbor, LLC (5229); HopCat-Chicago, LLC (7552); HopCat-Concessions, LLC (2597); HopCat-Detroit, LLC (8519); HopCat-GR Beltline, LLC (9149); HopCat-Holland, LLC (7132); HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970); HopCat-Kalamazoo, LLC (8992); HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242); HopCat-Lexington, LLC (6748); HopCat-Lincoln, LLC (2999); HopCat-Louisville, LLC (0252); HopCat-Madison, LLC (9108); HopCat-Minneapolis, LLC (8622); HopCat-Port St. Lucie, LLC (0616); HopCat-Royal Oak, LLC (1935); HopCat-St. Louis, LLC (6994); Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Sale Motion.

strategic, financial, and restructuring advisory services. In addition, Mastodon provides significant transaction execution capacities to its restaurant clients including buy-side and sell-side transaction support. Mastodon is a leading advisor and investment banker to distressed restaurants. Mastodon has ten professionals whom participate in providing restructuring and investment banking services and support to its clients.

3. Mastodon is one of the leading advisors and investment bankers for troubled restaurants. Its professionals have significant experience in providing mergers and acquisitions, restructuring, and other financial advisory services and have advised on over thirty transactions valued in excess of $1.0 billion over the past ten years. Mastodon specializes in assisting distressed restaurant operations, both during and outside of bankruptcy cases, and has served as investment bankers and strategic advisors for debtors in chapter 11 cases.

4. I have over 20 years of investment banking and financial advisory experience and I regularly advise companies, debtors, creditors , and potential purchasers/sponsors across a wide variety of mergers and acquisitions, restructuring, and capital raising transactions. I have been employed by Mastodon since 2000. In my experience representing parties in merger and acquisition and restructuring transactions, I have designed and run sale processes and negotiated deal terms with a wide variety of strategic and financial buyers and investors.

5. I have thorough knowledge of nearly all aspects of restructuring transactions through Mastodon's extensive firm expertise and directly through my personal restructuring transaction experience, which includes the following seller-side investment banking engagements: (i) RMH Franchise Holdings, LLC (an Applebee's franchisee); (ii) AppleIllinois, L.C.C. (an Applebee's franchisee); (iii) Duke and King Acquisition Corp. (a Burger King franchisee); (iv) Z'Tejas Scottsdale, LLC (an owner/operator of Tex-Mex restaurants); (v) QSL

of Medina, Inc. (an owner/operator and franchisor of casual dining restaurants); (vi) J & B Partners Management, LLC (a Friendly's franchisee); (vii) S.B. Restaurant Co. (d/b/a Elephant Bar Restaurant) (an owner/operator of casual dining restaurants); and (viii) Tajay Restaurants, Inc.

6. As noted in the *Declaration of Mark A. Sellers, III in Support of First Day Motions* [Docket No. 4], the Debtors filed these chapter 11 cases with the goal of pursuing a going concern sale of their assets to maximize the value of their assets for the benefit of creditors. The primary value of the Assets is in their continued operations. I am further informed that the Debtors believe that the best available means of maximizing the value of the Assets is through the sale process described in the Sale Motion. In furtherance thereof, the Debtors engaged Mastodon, an investment banker with extensive experience in selling restaurant assets in a restructuring, to assist with soliciting bidders and potential parties in interest to create a competitive auction process as contemplated by the Bidding Procedures.

7. In January 2020, the Debtors retained Mastodon as investment banker to review and analyze the Debtors' business and financial condition, to recommend alternatives, and ultimately to conduct a marketing effort for the Debtors' assets.

8. In June 2020, the Debtors and Mastodon worked collaboratively to develop a confidential information memorandum ("CIM") and a list of potential transaction partners. Beginning in July 2020, Mastodon prepared and began to distribute a transaction teaser, confidentiality agreement, and CIM to potential transaction partners. Mastodon contacted 192 potential targets, of which approximately 154 responded. Of the approximately 154 potential purchasers that responded, 37 parties executed the confidentiality agreement and received the confidential information memorandum and access to the data room established by Mastodon. In

addition, the due diligence activities of these parties selectively included telephonic meetings with the Debtors' management.

9. Despite Mastodon's and the Debtors' robust marketing efforts, no Qualified Bids were submitted by the Bid Deadline. Four offers were received, but the Debtors, in consultation with the Consultation Parties, determined that such offers did not meet, among other things, the Minimum Initial Overbid Amount as required by the Bidding Procedures. Accordingly, the Stalking Horse Bidder was the only party to submit a Qualified Bid and no Auction was held.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 24, 2020

_____
Robert S. Hersch