**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

In re:

BARFLY VENTURES, LLC, *et al,* [1]

Debtors.

_____/

Chapter 11
Case No. 20-01947-jwb
Hon. James W. Boyd

*Jointly Administered*

**NOTICE OF FILING OF REVISED PROPOSED SALE ORDER**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On July 9, 2020, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed their *Motion for Entry of (I) an Order (A) Approving Bidding Procedures and Scheduling Sale Hearing, (B) Approving the Form of the Asset Purchase Agreement, Including the Bid Protections, and (C) Granting Related Relief; and (II) an Order (A) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 127] (the "Sale Motion").[2]

---

[1]    The Debtors are: Barfly Ventures, LLC (8379), Barfly Management, LLC (6274), 9 Volt, LLC (d/b/a HopCat)(1129), 50 Amp Fuse, LLC (d/b/a Stella's Lounge)(3684), GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company)(2130), E L Brewpub, LLC (d/b/a HopCat East Lansing)(5334), HopCat-Ann Arbor, LLC (5229), HopCat-Chicago, LLC (7552), HopCat-Concessions, LLC (2597), HopCat-Detroit, LLC (8519), HopCat-GR Beltline, LLC (9149), HopCat-Holland, LLC (7132), HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple)(7970), HopCat-Kalamazoo, LLC (8992), HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat)(6242), HopCat-Lexington, LLC (6748), HopCat-Lincoln, LLC (2999), HopCat-Louisville, LLC (0252), HopCat-Madison, LLC (9108), HopCat-Minneapolis, LLC (8622), HopCat-Port St. Lucie, LLC (0616), HopCat-Royal Oak, LLC (1935), HopCat-St. Louis, LLC (6994), Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon)(4255).

[2]    A capitalized term used but not defined herein has the meaning set forth in the Sale Motion.

2.     Only July 22, 2020, the United States Bankruptcy Court for the Western District of Michigan (the "Bankruptcy Court") entered its *Order (A) Approving Bidding Procedures and Scheduling Sale Hearing, (B) Approving the Form of the Asset Purchase Agreement, Including the Bid Protections, and (C) Granting Relied Relief* (the "Bidding Procedures Order").

3.     Pursuant to the Bidding Procedures Order and the Bidding Procedures, the deadline to submit offers to purchase the Assets was August 21, 2020 at 4:00 p.m. (Eastern Time). The Stalking Horse Bidder was the only party to submit a Qualified Bid. No other bids were received. Accordingly, on September 16, 2020, the Debtors filed their *Notice of (I) Cancellation of Auction, (II) Selection of Successful Bidder, and (III) Rescheduled Sale Hearing* [Docket No. 314].

4.     On September 24, 2020, Debtors filed their *Notice of Filing of (I) Proposed Sale Order, (II) Wind-Down Budget, and (II) Amended Stalking Horse Agreement* [Docket No. 334] (the "Initial Notice").

5.     The Court held a hearing on the Sale Motion on September 25, 2020. Following the hearing on the Sale Motion, the Debtors, the Stalking Horse Bidder, and the Official Committee of Unsecured Creditors (the "Settling Parties") engaged in mediation. On October 2, 2020, the Court held a telephonic hearing whereby the Settling Parties placed their settlement on the record. The Settling Parties thereafter worked together to amend the proposed sale order. The Court adjourned the Sale Hearing until October 13, 2020.

6.     Attached hereto as **Exhibit A** is the revised proposed order (the "Proposed Sale Order") to approve the sale of substantially all of the Debtors' assets to Project BarFly LLC, the Stalking Horse Bidder. Annexed to the Proposed Sale Order as Exhibit A are the final proposed

Cure Amounts for the Assumed Contracts.  Annexed as <u>Exhibit C</u> to the Proposed Sale Order are the Purchased Actions.

7.      Attached hereto as **Exhibit B** is a comparison of the Proposed Sale Order to the original proposed sale order that was filed in the Initial Notice.

8.      Attached hereto as **Exhibit  C** is a spreadsheet comparing the cure amounts provided for in the cure spreadsheet attached to the *Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases* and the cure amounts since agreed to by the Counterparties and incorporated as Exhibit A to the Proposed Sale Order.

9.      The Debtors will present the Proposed Sale Order at the sale hearing scheduled in these chapter 11 cases for **October 13, 2020 at 9:00 a.m. (Eastern Time)** (the "<u>Sale Hearing</u>") before the Honorable James W. Boyd, United States Bankruptcy Judge for the United States Bankruptcy Court for the Western District of Michigan.  The Sale Hearing will be conducted by videoconferencing using the Zoom Cloud Meeting Program/App.

Dated:  October 12, 2020          **WARNER NORCROSS + JUDD LLP**

/s/ *Elisabeth M. Von Eitzen*
Rozanne M. Giunta (P29969)
Stephen B. Grow (P39622)
Elisabeth M. Von Eitzen (P70183)
1500 Warner Building
150 Ottawa Avenue, NW
Grand Rapids, Michigan 49503
Telephone: (616) 752-2000

**PACHULSKI STANG ZIEHL & JONES LLP**

John W. Lucas (admitted *pro hac vice*)
Jason Rosell (admitted *pro hac vice*)
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 263-7000
*Counsel to the Debtors and Debtors in Possession*

20795091-2

# EXHIBIT A

**Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

|  |  |  |
|---|---|---|
| | x | |
| In re | : | Chapter 11 |
| | : | |
| BARFLY VENTURES, LLC, *et al.*,[1] | : | Case No. 20-01947-jwb |
| | : | |
| Debtors. | : | Jointly Administered |
| | x | |

**ORDER (I) AUTHORIZING THE SALE**
**OF SUBSTANTIALLY ALL OF THE DEBTORS'**
**ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,**
**ENCUMBRANCES, AND OTHER INTERESTS, (II) AUTHORIZING**
**THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 127] (the "Motion") of BarFly Ventures, LLC and

its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order

(this "Order") pursuant to sections 105(a), 363, and 365 of Title 11 of the United States Code

(the "Bankruptcy Code") and rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") (i) approving the sale of the Debtors' assets free and clear of

liens, claims, interests and encumbrances, (ii) authorizing assumption and assignment of certain

executory contracts and unexpired leases; and (iii) granting related relief; and the Court having

entered a prior order, dated July 22, 2020 [Docket No. 184] (the "Bid Procedures Order"),

approving bidding procedures for the Debtors' assets (the "Bid Procedures") and granting certain

---

[1]   The Debtors and the last four digits of their federal employment identification number are: Barfly Ventures,
LLC (8379); 9 Volt, LLC (d/b/a HopCat) (1129); 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684); GRBC
Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130); E L Brewpub, LLC (d/b/a HopCat East
Lansing) (5334); HopCat-Ann Arbor, LLC (5229); HopCat-Chicago, LLC (7552); HopCat-Concessions, LLC
(2597); HopCat-Detroit, LLC (8519); HopCat-GR Beltline, LLC (9149); HopCat-Holland, LLC (7132);
HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970); HopCat-Kalamazoo, LLC (8992);
HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242); HopCat-Lexington, LLC (6748);
HopCat-Lincoln, LLC (2999); HopCat-Louisville, LLC (0252); HopCat-Madison, LLC (9108);
HopCat-Minneapolis, LLC (8622); HopCat-Port St. Lucie, LLC (0616); HopCat-Royal Oak, LLC (1935);
HopCat-St. Louis, LLC (6994); Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and
McFadden's Restaurant Saloon) (4255).

related relief; and Project BarFly LLC (together with its permitted successors, designees, and assigns, "Buyer") having submitted a bid, which bid was the Successful Bid for substantially all of the Debtors' assets; and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and venue of these chapter 11 cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and any objections (if any) to the Motion having been withdrawn or overruled on the merits; and a hearing on the Motion (the "Sale Hearing") having been held to consider the relief requested in the Motion and to review and consider (i) the Motion and the exhibits thereto, (ii) the Asset Purchase Agreement, dated as of July 9, 2020, by and among the Debtors and Buyer, a copy of which is attached hereto as **Exhibit B** (together with any schedules and exhibits thereto, and as amended, restated, supplemented, or otherwise modified from time to time, the "Purchase Agreement")[2] whereby the Debtors have agreed, among other things, to sell the Purchased Assets (as defined in the Asset Purchase Agreement as modified herein) to Buyer on the terms and conditions set forth in the Purchase Agreement (collectively, the "Sale Transaction"), (iii) the *Response of CIP Administrative, LLC, In Its Capacity as Administrative Agent for the Prepetition Lenders, to Objections to Sale Motion* [Docket No. 333], and (iv) the declarations of Robert S. Hersch and Ned Lidvall in support of the Motion, and upon the record of the Sale Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their

---

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Purchase Agreement or, if not defined in the Purchase Agreement, the meanings ascribed to them in the Motion.

- 2 -

estates, their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the full record of the Sale Hearing and other pleadings and proceedings in these chapter 11 cases, including the Motion; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS, DETERMINES, AND CONCLUDES THAT:**

A. <u>Fed. R. Bankr. P. 7052</u>. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to rule 9014 of the Bankruptcy Rules, and shall take immediate effect upon execution hereof. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by this Court during or at the conclusion of the Sale Hearing.

B. <u>Jurisdiction and Venue</u>. The Court has jurisdiction to consider and decide the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Final Order</u>. This Order constitutes a final and appealable order as set forth in 28 U.S.C. § 158(a). The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Purchase Agreement. In the absence of a stay pending appeal, Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code and entitled to its protections, may close the sale contemplated by the Purchase Agreement at any time after the entry of this Order and shall not be subject to the stay provided by rules 6004(h) or 6006(d) of the Bankruptcy Rules.

- 3 -

D.      Statutory and Rule Predicates.  The statutory and other legal predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and rules 2002, 6004, and 6006 of the Bankruptcy Rules.

E.      Opportunity to Object.  A fair and reasonable opportunity to object or be heard regarding the relief granted by this Order, including but not limited to, the assumption and assignment of the Assumed Contracts and the Cure Costs (each as defined below), has been afforded to all interested persons and entities, including, but not limited to, the Notice Parties (as defined in the Motion).

F.      Sound Business Purpose.  The Debtors have demonstrated that their entry into the Purchase Agreement and related or ancillary agreements thereto or contemplated thereby (collectively, the "Ancillary Agreements") is supported by good, sufficient, and sound business reasons.  A sale of the Purchased Assets and assumption of the Assumed Liabilities will maximize the value of the Debtors' estates, is fair and equitable, and represents a reasonable exercise of the Debtors' sound business judgment.  The Debtors determined that the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets and pursuant to the terms and conditions of the Purchase Agreement, the Debtors have agreed to transfer to Buyer all of the Debtors' right, title, and interest in and to, and Buyer has agreed to assume certain specified Assumed Liabilities that are not Excluded Liabilities related to, the Purchased Assets free and clear of all Liens (as defined below) and, if and to the extent requested by Buyer, to assume and assign the Assumed Contracts (collectively, the "Assumed Contracts") to Buyer subject to the terms and conditions of the Purchase Agreement and this Order, and such determination is a valid and sound exercise of the Debtors' business judgment.

- 4 -

G. <u>Compliance with Bid Procedures</u>. The Bid Procedures (as approved by the Bid Procedures Order) were substantively and procedurally fair to all parties, were the result of arm's length negotiations, and provided a full, fair, and reasonable opportunity for any party to make an offer to purchase the Purchased Assets. The Debtors, Buyer, and their respective counsel and other advisors have complied with the Bid Procedures Order and the Bid Procedures in all respects except as properly waived by the Debtors in the exercise of their fiduciary duties in accordance with the Bid Procedures. Buyer submitted a Qualified Bid pursuant to the Bid Procedures approved by the Court and was the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures Order and the Bid Procedures.

H. <u>Marketing Process</u>. The Debtors and their advisors thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in a fair and open manner, soliciting offers to acquire the Purchased Assets from a wide variety of parties. The sale process and the Bid Procedures were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any person or entity that expressed an interest in acquiring the Purchased Assets, or who the Debtors believed may have an interest in acquiring, and be permitted and able to acquire, the Purchased Assets, to conduct due diligence, make an offer to purchase the Debtors' assets, including, without limitation, the Purchased Assets, and submit higher and otherwise better offers for the Purchased Assets than Buyer's Successful Bid. The Debtors and Buyer have negotiated and undertaken their roles leading to the Sale Transaction and entry into the Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner. The sale process conducted by the Debtors pursuant to the Bid Procedures Order and the Bid Procedures resulted in the highest or otherwise best offer for the Purchased Assets for the Debtors and their estates, was in the best interests of the Debtors, their

- 5 -

creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result. There is no legal or equitable reason to delay consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction.

    I.  No Other Qualified Bids/Cancellation of Auction. The Debtors did not receive any other Qualified Bids pursuant to the Bid Procedures and, consequently, in accordance with Article III.F of the Bid Procedures, no Auction was held and the Buyer was named the Successful Bidder upon the expiration of the Bid Deadline.

    J.  Good Faith. Buyer is not an "insider" or "affiliate" of any of the Debtors as those terms are defined in section 101 of the Bankruptcy Code. The Purchase Agreement and the Ancillary Agreements, and each of the transactions contemplated therein, were negotiated, proposed, and entered into by the Debtors and Buyer without collusion or fraud, in good faith, and from arm's-length bargaining positions and are substantively and procedurally fair to all parties. Neither the Debtors nor Buyer has engaged in any conduct that would cause or permit any part of the Purchase Agreement or the Ancillary Agreements to be avoidable under section 363(n) of the Bankruptcy Code. Buyer is purchasing the Purchased Assets, in accordance with the Purchase Agreement, in good faith and is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. In particular, (i) Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) Buyer in no way induced or caused the chapter 11 filing by the Debtors; (iii) Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, managers, officers, or controlling stockholders exists between Buyer, on the one hand, and any of the Debtors, on the

other hand; (v) Buyer complied with the Bid Procedures and all provisions of the Bid Procedures Order; and (vi) all payments to be made, and all other material agreements or arrangements entered into or to be entered into by Buyer in connection with the Sale Transaction, including the Ancillary Agreements, have been disclosed.  The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, or possession, or the District of Columbia.

K.    Fair Consideration/Reasonably Equivalent Value.    The aggregate consideration from Buyer for the Purchased Assets as set forth in the Purchase Agreement: (i) as such consideration relates to the Purchased Assets, constitutes fair consideration and fair value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and other similar laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction; (ii) is the highest or otherwise best value obtainable for the Purchased Assets; (iii) will provide a greater recovery to creditors than would be provided by any other available alternative; and (iv) as such consideration relates to the Purchased Assets, constitutes reasonably equivalent value (as that term is defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transaction Act, and section 548 of the Bankruptcy Code).  Neither the Debtors nor Buyer entered into or has agreed to enter into the Purchase Agreement or the Ancillary Agreements with any fraudulent or otherwise improper purpose, including, without limitation, the purpose of hindering, delaying, or defrauding any creditors of the Debtors.

L.    No Successor or Other Derivative Liability.  Except as otherwise set forth herein or in the Purchase Agreement, upon Closing, and to the greatest extent permitted by applicable law, Buyer shall not have any liability (including, but not limited to, any successor

- 7 -

liability) or other obligation of any of the Debtors arising under or related to the sale and transfer of the Purchased Assets to Buyer or with respect to the Excluded Liabilities, provided that, upon Closing, Buyer shall remain liable for the Assumed Liabilities. Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Purchase Agreement, Buyer shall not be liable for any claims against the Debtors or any of their predecessors, affiliates employees, agents, or advisors, and Buyer shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transfer liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of Closing, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, environmental liabilities, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing. For the avoidance of doubt, the Debtors are deemed to release and forever discharge Buyer and any of its affiliates, successors, and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs, and expenses of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, relating to the Sale Transaction or operation of the Purchased Assets prior to Closing, except for the Assumed Liabilities. Buyer is not, and the consummation of the Sale Transaction will not render Buyer, a mere continuation, and Buyer is not holding itself out as a mere continuation, of any of the Debtors or their respective estates, enterprise, or operations, and there is no continuity or common identity between Buyer and the Debtors. Accordingly, the Sale Transaction does not amount to a

- 8 -

consolidation, merger, or de facto merger of Buyer with or into any of the Debtors or their estates and Buyer is not, and shall not be deemed to be, a successor to any of the Debtors or their estates as a result of the consummation of the Sale Transaction. Buyer would not have entered into the Purchase Agreement if the transfer of the Purchased Assets were not made free and clear of any successor liability to Buyer.

M.     Sale Notice. As shown by the certificates of service filed with the Court and the representations or proffers made on the record at the Sale Hearing, (i) the Debtors have provided proper, timely, adequate, and sufficient notice of and sufficient opportunity to object to the Motion and the relief requested therein (including the Debtors' requested findings with respect to successor liability), the bidding process (including, without limitation, the deadline for submitting Qualified Bids), the Sale Hearing, the Sale Transaction, and the proposed entry of this Order in compliance with all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, (ii) such notice was adequate and sufficient under the circumstances of these chapter 11 cases and complied with the Bid Procedures Order and other orders of the Court, and (iii) no other or further notice is required.

N.     Title to Assets. The Purchased Assets constitute property of the Debtors' estates and title or rights thereto is currently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

O.     Satisfaction of Section 363(f) Standards. The conditions of section 363(f) of the Bankruptcy Code, including 363(f)(2), have been satisfied in full. Upon entry of this Order, the Debtors are authorized to transfer all of their right, title, and interest in and to the Purchased Assets free and clear of any and all claims (as such term is defined by section 101(5) of the Bankruptcy Code), liabilities (including any liability that results from, relates to, or arises

- 9 -

out of tort or any other product liability claim), interests, and matters of any kind and nature whatsoever, including, without limitation, hypothecations, mortgages, security deeds, deeds of trust, debts, levies, indentures, restrictions (whether on voting, sale, transfer, disposition, or otherwise), leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts and other title retention agreements and other similar impositions, options, judgments, offsets, rights of recovery, rights of preemption, rights of setoff, profit sharing interest, other third party rights, other impositions, or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, substantial continuation claims, withdrawal liability claims, environmental claims, claims under or relating to any employee benefit plan, ERISA affiliate plan, or ERISA (including any pension or retirement plan) or any claims under state or other laws of similar effect, tax claims (including claims for any and all foreign, federal, state, and local taxes, including, but not limited to, sales, income, use, or any other type of tax), escheatment claims, reclamation claims, obligations, liabilities, demands, and guaranties, and other encumbrances relating to, accruing, or arising any time prior to the Closing Date, duties, responsibilities, obligations, demands, commitments, assessments, costs, expense, losses, expenditures, charges, fees, penalties, fines, contributions, premiums, encumbrances, guaranties, pledges, consensual or nonconsensual liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code), statutory liens, real or personal property liens, mechanics' liens, materialman's liens, warehouseman's liens, tax liens, security interests, charges, options (including in favor of third parties), rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds,

- 10 -

escheat obligations, rights of first refusal, rights and restrictions of any kind or nature whatsoever against the Debtors or the Purchased Assets, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims, or claims for taxes of or against the Debtors, and any derivative, vicarious, transferee, or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule, or regulation of the United States, any state, territory, or possession, or the District of Columbia), whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability, or substantial continuation liability, including, without limitation, that the Buyer is in any way a successor, successor-in-interest, continuation, or substantial continuation of the Debtors or their business, arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Purchased Assets, the operation of the Debtors' respective businesses at or before the effective time of the Closing pursuant to the Purchase Agreement, or the transfer of the Debtors' interests in the Purchased Assets to Buyer, and all Excluded Liabilities (collectively, excluding any Assumed Liabilities and Permitted Liens, "Liens"), as provided for in the Purchase Agreement because in each case one or more of

- 11 -

the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Except as otherwise expressly provided in the Purchase Agreement or this Order, such Liens shall attach to the proceeds allocated to the Debtors in the order of their priority, with the same validity, force and effect which they have against the Purchased Assets immediately prior to the Closing, subject to any claims and defenses the Debtors may possess with respect to such Liens. Those holders of Liens against the Purchased Assets who did not object or who withdrew their objections to the Purchase Agreement or the Motion are deemed to be bound by the terms of this Order as the transactions contemplated by the Purchase Agreement pursuant to section 363(f)(2). In addition, one or more of the other subsections of sections 363(f) of the Bankruptcy Code apply and, therefore, holders of Liens with an interest in the Purchased Assets owned by the Debtors are found to be adequately protected by having their Liens that constitute interests in such Purchased Assets attach solely to the proceeds of the Sale Transaction in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale Transaction and by providing for the distributions provided for herein.  All persons having Liens of any kind or nature whatsoever against the Debtors or the Purchased Assets owned by the Debtors shall be forever barred from pursuing or asserting such Liens against Buyer or any of their respective assets, property, affiliates, successors, assigns, or the Purchased Assets.

P.      Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and creditors, if (i) the transfer of the Purchased Assets was not free and clear of all Liens and other interests, including, without limitation, any rights or Liens based on any successor or transferee liability, as set forth in the Purchase Agreement and this Order, or (ii) the Buyer would, or in the future could, be liable for any such Liens, including, without limitation,

- 12 -

any rights or Liens based on any successor or transferee liability.  Buyer will not consummate the Sale Transaction unless this Court expressly orders that none of Buyer, its affiliates, their present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens and other interests, including rights or claims based on any successor or transferee liability, other than expressly provided herein or in the Purchase Agreement.  The total consideration to be provided under the Purchase Agreement reflects Buyer's reliance on this Order to provide, pursuant to sections 105(a) and 363(f) and (m) of the Bankruptcy Code, that, upon the Closing, Buyer has title to, interest in, and possession of the Purchased Assets free and clear of all Liens.  A sale of the Purchased Assets, other than one free and clear of all Liens, would yield substantially less value for the Debtors' estates.

Q.   Assumption and Assignment of the Assumed Contracts.  The assumption and assignment of the Assumed Contracts are integral to the Purchase Agreement, are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtors' sound business judgment.   Specifically, the assumption and assignment of the Assumed Contracts (i) are necessary to sell the Purchased Assets to Buyer, (ii) allow the Debtors to sell their business to Buyer as a going concern, (iii) allow the Debtors to maximize the value of the Purchased Assets, including the Assumed Contracts, (iv) limit the losses suffered by the counterparties to the Assumed Contracts, and (v) maximize the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assumed Contracts.

- 13 -

R.     With respect to each of the Assumed Contracts, the Debtors and Buyer have met all requirements of section 365(b) of the Bankruptcy Code.  Further, in compliance with the requirements of sections 365(b) and 365(f) of the Bankruptcy Code, Buyer has provided adequate assurance of future performance under the Assumed Contracts to the extent that any such assurance is required and not waived by the counterparties to such Assumed Contracts.  Accordingly, the Assumed Contracts may be assumed by the Debtors and assigned to Buyer as provided for in the Purchase Agreement and this Order.

S.     The authority hereunder for the Debtors to assume and assign any Assumed Contract to Buyer includes the authority to assume and assign an Assumed Contract, as amended (including amendments entered into by the Debtors in accordance with paragraph 25 of this Order).

T.     The assignments by the applicable Debtors of each of the Assumed Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

U.     Cure Notice; Adequate Assurance of Future Performance.  As shown by the certificates of service filed with the Court, the Debtors have served upon each non-Debtor counterparty to certain executory contracts and unexpired leases (each, a "Counterparty"), prior to the Sale Hearing, a notice, dated July 24, 2020 [Docket No. 198] (the "Notice of Potential Assignment"), (i) that Debtors may wish to assume and assign the contracts or leases identified on the Notice of Potential Assignment (the "Contracts and Leases") to the Buyer pursuant to section 365 of the Bankruptcy Code and (ii) of the related proposed cure costs due under section 365(b) of the Bankruptcy Code (the "Cure Costs") with respect to the Contracts and Leases.  In accordance with the Bidding Procedures Order, if the Debtors or Buyer identify additional executory contracts or unexpired leases that might be assumed by the Debtors and

assigned to the Buyer or that were not set forth in the original Notice of Assumption and Assignment, the Debtors will promptly file with the Court and send a Supplemental Notice of Assumption and Assignment to the applicable Counterparties to such additional executory contracts and unexpired leases.  The service of the Notice of Potential Assignment was good, sufficient, and appropriate under the circumstances of these chapter 11 cases and complied with the Bid Procedures Order and other orders of the Court, and no other or further notice is required with respect to the Cure Costs for the assumption and assignment of the Contracts and Leases, including without limitation Buyer's provision of adequate assurance of future performance.  All Counterparties to the Contracts and Leases have had a reasonable opportunity to object to the Cure Costs listed on the Notice of Potential Assignment in accordance with the Bid Procedures Order and to the assumption and assignment of such Assumed Contract to Buyer in accordance with the Bid Procedures Order.  Accordingly, all Counterparties to Contracts and Leases who did not object or who withdrew their objections to the Cure Costs listed on the Notice of Potential Assignment prior to the Sale Hearing are deemed to have consented to such Cure Costs, and all Counterparties to Assumed Contracts who did not file an objection to the assumption by the Debtors of such Assumed Contracts and the assignment thereof to Buyer prior to the Sale Hearing are deemed to have consented to the assumption of such Assumed Contract and the assignment thereof to Buyer.

V.     All Counterparties to the Assumed Contracts have had a reasonable opportunity to object to Buyer's ability to provide adequate assurance of future performance as contemplated under sections 365(b)(l)(C) and 365(f)(1) of the Bankruptcy Code, in accordance with the Bid Procedures Order.  Accordingly, all Counterparties to Assumed Contracts who did not object or who withdrew their objections to Buyer's ability to provide adequate assurance of

- 15 -

future performance under the Assumed Contracts are bound by the terms of this Order as to the assumption of such Assumed Contract and the assignment thereof to Buyer. The filed objections at [Docket Nos. 216, 217, 220, 223, 225, 227, 228, 259, 268, 288, 290, and 300] relating to the Assumed Contracts were adjourned or resolved as set forth on the record at the Sale Hearing.

        W.     Liquor Licenses. Alcohol sales are currently conducted in connection with the Purchased Assets pursuant to the Liquor Licenses. The sale of alcohol is an important component of the Debtors' business and the continued sale of alcohol in connection with the Purchased Assets is essential to the Buyer's consummation of the Sale Transaction. It is in the best interests of the estates and all other parties in interest for such alcohol sales to continue uninterrupted during the transition of ownership from the Debtors to the Buyer after the Closing.

        X.     Record Retention. Pursuant to the terms of and subject to the limitations and conditions in the Purchase Agreement, following the Closing the Debtors, their successors and assigns, and any trustee in bankruptcy will have reasonable access to the Debtors' books and records for any reasonable business purpose or compliance with any obligation, including administration of these chapter 11 cases. To the extent that the Debtors maintain books and records electronically, an electronic copy of such books and records shall remain with the Debtors after the Closing.

        Y.     Corporate Power and Authority. The Debtors and their applicable affiliates have (i) full corporate or similar power and authority to execute and deliver the Purchase Agreement, the Ancillary Agreements, and all other documents contemplated thereby, (ii) all corporate or similar authority necessary to consummate the transactions contemplated by the Purchase Agreement and the Ancillary Agreements, and (iii) taken all corporate actions necessary to authorize and approve the Purchase Agreement, the Ancillary Agreements, and the

consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtors to execute the Purchase Agreement or consummate the transactions contemplated thereby.

Z. Valid and Binding Contract; Validity of Transfer. The Purchase Agreement is a valid and binding contract between the Debtors and Buyer and shall be enforceable pursuant to its terms. The Purchase Agreement, the Ancillary Agreements, and the Sale Transaction itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 11 trustee appointed in these chapter 11 cases, or in the event these chapter 11 cases are converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person. The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

AA. No *Sub Rosa* Plan. The Sale Transaction, the Purchase Agreement, and the other transactions contemplated thereby do not constitute a *sub rosa* chapter 11 plan. The Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating chapter 11 plan for the Debtors.

BB. Waiver of Bankruptcy Rules 6004(h) and 6006(d). The Debtors have demonstrated (i) good, sufficient, and sound business purposes and justifications for approving the Purchase Agreement and the Sale Transaction and (ii) compelling circumstances for the immediate approval and consummation of the transactions contemplated by the Purchase

- 17 -

Agreement and all other Ancillary Agreements for the Sale Transaction outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, and (b) a chapter 11 plan, in that, among other things, the immediate consummation of the Sale Transaction to the Buyer and all transactions contemplated thereby are necessary and appropriate to maximize the value of the Debtors' estates. Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transactions contemplated by this Order. To maximize the value of the Purchased Assets and preserve the viability of the Business, it is essential that the Sale Transaction occur within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the Sale Transaction. Given all of the circumstances of the chapter 11 cases and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale Transaction constitutes a reasonable and sound exercise of the Debtors' business judgment that should be, and hereby is, approved.

CC.     <u>Personally Identifiable Information</u>.     The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Motion.

DD.     <u>Legal and Factual Bases</u>.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest.

**IT IS HEREBY ORDERED THAT:**

1.     To the extent not already approved pursuant to the Bid Procedures Order, the Motion is GRANTED as set forth herein.

2.     <u>Objections</u>.     All objections, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the Purchase Agreement, all other

- 18 -

Ancillary Agreements, the Sale Transaction, the entry of this Order, or the relief granted herein, including, without limitation, any objections to Cure Costs or relating to the cure of any defaults under any of the Assumed Contracts or the assumption and assignment of any of the Assumed Contracts to the Buyer by the Debtors, including with respect to Buyer's ability to provide adequate assurance of future performance under the Assumed Contracts, solely as it relates to the relief granted by this Order that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits with prejudice, except as otherwise set forth herein.  All persons and entities that failed to object timely to the Motion are deemed to have consented to the relief granted herein for all purposes.

3.      Notice.  Notice of the Motion, the Sale Hearing, the Purchase Agreement, the assumption and assignment of the Assumed Contracts, and the relief granted in this Order was fair, sufficient, proper, and equitable under the circumstances, and complied in all respects with sections 102(1), 363, and 365 of the Bankruptcy Code, rules 2002, 6004, and 6006 of the Bankruptcy Rules, the Bid Procedures Order, and other orders of the Court.

4.      Fair Purchase Price.  The consideration to be provided by Buyer under the Purchase Agreement is fair and reasonable and constitutes (a) reasonably equivalent value under the Bankruptcy Code, the Uniform Voidable Transactions Act, and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, and (d) valid and valuable consideration for the release of any potential Liens pursuant to this Order, which release shall be deemed to have been given in favor of Buyer by all holders of Liens of

- 19 -

any kind whatsoever against all of the Debtors and all of the Purchased Assets, other than as otherwise expressly set forth in this Order.

5.      Approval of the Purchase Agreement.  The Purchase Agreement and the Sale Transaction, including, without limitation, all transactions contemplated therein or in connection therewith (including the Ancillary Agreements) and all of the terms and conditions thereof, are hereby approved in their entirety, subject to the terms and conditions of this Order. The failure specifically to include or make reference to any particular provisions of the Purchase Agreement in this Order shall not impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement, the Sale Transaction, and the transactions contemplated therein or in connection therewith (including the Ancillary Agreements) are authorized and approved in their entirety.

6.      Consumption of Sale Transaction.   Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under and comply with the terms of the Purchase Agreement and the Ancillary Agreements, pursuant to and in accordance with the terms and conditions of the Purchase Agreement, the Ancillary Agreements, and this Order.  The Debtors, as well as their affiliates, officers, employees, and agents, are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, the Ancillary Agreements, and the Sale Transaction, including the Ancillary Agreements, and to take all further actions and execute such other documents as may be (a) necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement, including, without limitation, making any regulatory

filings necessary or advisable in connection with such transfer, and (b) as may be requested by Buyer to implement the Purchase Agreement and the Sale Transaction, in accordance with the terms thereof, without further order of the Court.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Agreement, Ancillary Agreements, or any other Sale Transaction-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order; provided, however, that the Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

7.     Direction to Government Agencies.   To the greatest extent allowable under applicable Law, each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other Governmental Entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction and the other transactions contemplated by the Purchase Agreement and the Ancillary Agreements and approved by this Order.

8.     Transfer of Assets Free and Clear and Injunction.   Upon the Closing, pursuant to sections 105(a), 363(b), 365(b), and 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets to Buyer shall (a) constitute a legal, valid, and effective transfer of all of Debtors' right, title, and interest in and to such Purchased Assets subject to and in accordance with the Purchase Agreement, (b) vest Buyer with all of the Debtors' right, title, and interest in and to such Purchased Assets, and (c) be free and clear of all Liens against the Debtors and the Purchased Assets (including Liens of any Governmental Entity), with such Liens attaching to the

proceeds allocated to the Debtors in the order of their priority, with the same validity, force, and effect that they had against such Purchased Assets immediately prior to the Closing.  All persons or entities that are presently, or on or after the Closing may be, in possession of some or all of the Purchased Assets, are hereby directed to surrender possession of the Purchased Assets to Buyer or its respective designees on the Closing Date or at such time thereafter as Buyer may request.

9.     Notwithstanding anything contained herein or in any other document, in accordance with the Purchase Agreement, all fee interests, rights-of-way, easements, real property interests, real rights, licenses, servitudes, permits, privileges, and leases (surface and subsurface) owned or held by the Debtors, or hereinafter acquired by the Debtors prior to the Closing, in each case, in connection with the Purchased Assets, constitute real property or a real property interest, and together with the rights, tenements, appurtenant rights and privileges related thereto (collectively, the "Real Property Interests"), shall, in accordance with the Purchase Agreement, be transferred to Buyer, directly or indirectly, at the Closing notwithstanding any consent rights, anti-assignment provisions, or any other provisions purporting to prohibit or condition the transfer or assignment of such Real Property Interests contained in such Real Property Interests, or in any other document, and all such rights, provisions, prohibitions, and conditions shall be void and of no force and effect with respect to the Sale Transaction.

10.    To the extent provided for in the Purchase Agreement, any and all of the Debtors' security deposits, or other security held by landlords, lessors, and other counterparties to the Assumed Contracts are being transferred and assigned to, and shall be the property of, the Buyer from and after the Closing, which transfer and assignment of security deposits, other deposits, or security shall satisfy in full the requirements of section 365(l) of the Bankruptcy

- 22 -

Code for all contracts, leases, and licenses assumed and assigned pursuant to this Order or the Purchase Agreement.

11.     Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Purchased Assets to Buyer in accordance with the terms of the Purchase Agreement, the Ancillary Agreements, and this Order and (b) with the ability of the Buyer to acquire, take possession of, use, and operate the Purchased Assets in accordance with the terms of the Purchase Agreement, the Ancillary Agreements, and this Order.   Notwithstanding the foregoing, nothing in this Order or the Purchase Agreement shall prohibit any party from seeking to enforce or collect any of the Assumed Liabilities against the Buyer.

12.     Except as otherwise provided in the Purchase Agreement or herein, all Persons (and their respective successors and assigns) including, without limitation, the Debtors, the Debtors' estates, all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Liens (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated) against the Debtors or the Purchased Assets owned by the Debtors arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Purchased Assets by the Debtors prior to the Closing, or the Sale Transaction, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such Liens against Buyer, its affiliates, successors, assigns, its property, or the Purchased Assets, including, without limitation, taking any of the following

- 23 -

actions with respect to any Liens: (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (c) creating, perfecting, or enforcing any Lien against Buyer, its affiliates, any of their respective successors, assigns, assets (including the Purchased Assets), or properties; (d) asserting a Lien as a setoff, right of subrogation, or recoupment of any kind against any obligation due against Buyer, its affiliates, or any of their respective successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof.  No such Person shall assert or pursue against Buyer or its affiliates, successors, or assigns any such Lien.

13.     Licenses and Permits; Liquor Licenses.  To the greatest extent allowable under applicable Law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, approval, grant, certificate of occupancy, state food service license, local occupational license, certificate of need, authorization, accreditation, operating permit, health inspection permit, registration, plan, or any similar governmental authorization or approval of the Debtors with respect to the Purchased Assets, including the Liquor Licenses (collectively, the "Permits"), (b) all such Permits are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date, and (c) each Governmental Entity that has issued or granted a Permit to, or for the benefit of, the Sellers shall be deemed to have consented to the transfer of such Permit to the Buyer as of the Closing Date.  To the maximum extent provided by

- 24 -

section 525 of the Bankruptcy Code, no Governmental Entity may revoke or suspend any Permit sold, transferred, assigned, or conveyed, or deemed to be sold, transferred, assigned, or conveyed, to the Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction. Notwithstanding the foregoing or anything to the contrary contained in this Order, the Purchase Agreement, or the Ancillary Agreements, the Debtors and Buyer are not entering into a transition agreement with respect to the Liquor Licenses (or otherwise) and as of the Closing Date the purchase and sale of alcohol shall be undertaken solely by the Buyer who will be solely responsible for the purchase and sale of alcohol related to the Continuing Restaurants.

14.     To the extent any Permit necessary for the operation of the Business at the Continuing Restaurants is not an assumable and assignable executory contract, the Buyer shall make reasonable efforts to apply for and obtain any such Permit promptly after the Closing Date. To the greatest extent allowable under applicable law, all existing Permits applicable to the Continuing Restaurants, including but not limited to the Liquor Licenses, shall remain in place for the Buyer's benefit until either new Permits are obtained or existing Permits are transferred in accordance with applicable administrative procedures and to the extent any of the Continuing Restaurants are operated under any such Permits after the Closing Date, the Buyer shall fully indemnify the Debtors, or any successor in interest to the Debtors, including a chapter 11 trustee or chapter 7 trustee, for any and all costs and liabilities arising thereunder without limitation.

15.     With regard to the sale of alcohol at the Continuing Restaurants, pursuant to the Purchase Agreement, the Debtors and all other parties in interest shall cooperate fully with and support the Buyer in executing such applications and furnishing such documents as are necessary for the Buyer to obtain Liquor License Approvals at the Buyer's sole expense. For the

avoidance of doubt, the Debtors shall have no post-Closing Date obligations to purchase or sell alcohol under the Liquor Licenses and all such sales shall be conducted by the Buyer, under existing Liquor Licenses to the greatest extent allowable under applicable law.  Moreover, except for violations of Law unrelated to the transfer of ownership of the Purchased Assets occurring pursuant to the Purchase Agreement and this Sale Order, and to the greatest extent allowable under applicable law, including, but not limited to, section 525 of the Bankruptcy Code, all law enforcement and regulatory agencies shall not interrupt the Business conducted at the Continuing Restaurants, including the sale of alcohol by the Buyer either on its own behalf, or on behalf of one or more of the Debtors, without first obtaining relief from this Court.  To the greatest extent allowable under applicable law, the Buyer may continue to operate at the Continuing Restaurants under existing Liquor Licenses and other Permits needed to operate at the Continuing Restaurants, with no interruption of the business conducted at the premises, until the Liquor License Approvals have been obtained and other Permits have been transferred or issued to the Buyer; provided, however, to the extent such operation by the Buyer under the existing Liquor Licenses gives rise to any liability against the Debtors the Buyer shall fully indemnify the Debtors, or any successor in interest to the Debtors, including a chapter 11 trustee or chapter 7 trustee,  for any and all costs and liabilities arising therefrom.

16.     Possession of any and all alcohol Inventory shall be surrendered to the Buyer at the earliest of (a) immediately following Closing where allowed by applicable Law; (b) receipt by the Buyer of authorization from the applicable Governmental Entity where required by applicable Law; or (c) receipt by the Buyer of the applicable Liquor License or Liquor License Approval and the Debtors shall not purchase or sell alcohol Inventory after the Closing for the Buyers or any other party; *provided* that, notwithstanding the foregoing, legal

possession of such Inventory shall not be surrendered to the Buyer if doing so would violate applicable law in each applicable jurisdiction..

17.     If, and only if, the real estate lease, dated as of June 10, 2014, between Liberty Maynard, L.L.C. and HopCat Ann Arbor, LLC, is not assumed and assigned to the Buyer or its designee in accordance with the Purchase Agreement on the Closing Date, the Michigan Class C Liquor License associated with such lease shall not be a Purchased Asset under the Purchase Agreement and shall be abandoned to Liberty Maynard, L.L.C. and HopCat Ann Arbor, LLC on the Closing Date.

18.     No Successor or Other Derivative Liability.  Upon the Closing, all Persons are permanently and forever prohibited from asserting against Buyer or the Purchased Assets any Lien arising under any theory of successor or transferee liability, de facto merger, or continuity liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated, or unliquidated.

19.     This Order shall be effective as a determination that, upon the Closing, all Liens as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated to the fullest extent permitted by applicable Law, and that the conveyances described herein have been effected.  In connection with the Closing, a certified copy of this Order may be filed and/or recorded with the appropriate filing agents, filing officers, administrative agencies or units, governmental departments, secretaries of state, federal, state, and local officials, and all other persons, institutions, agencies, and entities who may be required by operation of law, the duties of their office, or contract evidencing the release, cancelation, and termination provided herein of any Liens of record on the Purchased Assets prior to the date of this Order.

20.     Following the Closing, no holder of any Lien shall interfere with Buyer's title to or use or enjoyment of the Purchased Assets based on or related to any Lien or based on any actions or omissions by the Debtors, including any actions or omissions the Debtors may take in these chapter 11 cases.

21.     If any Person that has filed statements or other evidence of Liens in respect of the Purchased Assets shall not have delivered to the Debtors before the Closing after due demand therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of such interests that such Person has or may assert with respect to the Purchased Assets, the Debtors or Buyer are authorized to execute and file such statements, instruments, releases, and other documents on behalf of such Person with respect to such Purchased Assets without any further Order of the Court.

22.     Except as expressly set forth in the Purchase Agreement, the Ancillary Agreements or this Order, and except with respect to the Assumed Contracts, Buyer and each of its affiliates, successors, assigns, members, partners, officers, directors, principals, and shareholders shall have no liability whatsoever for any Liens, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether liquidated or unliquidated, whether asserted derivatively or vicariously, whether asserted based on Buyer's status as a transferee, successor, or otherwise, of any kind, nature, or character whatsoever, including Liens based on, relating to, or arising under, without limitation: (a) any employment or labor agreement; (b) any pension, welfare, compensation, or other Employee Benefit Plan, agreements, practices, and programs, including, without limitation, any pension or Employee

- 28 -

Benefit Plan of or related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former employees of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, any claims, rights, or causes of action that might arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the Worker Adjustment and Retraining Notification Act of 1988, (vi) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (vii) the Americans with Disabilities Act of 1990, (viii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (ix) state and local discrimination laws, (x) state and local unemployment compensation laws or any other similar state and local laws, (xi) state workers' compensation laws, or (xii) any other state, local, or federal employee benefit laws, regulations, or rules or other state, local, or federal laws, regulations or rules relating to, wages, benefits, employment, or termination of employment with any or all Debtors or any of their predecessors; (f) any antitrust laws; (g) any product liability or similar laws, whether state, federal, or otherwise; (h) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (i) any bulk sales or similar laws; (j) any federal, state, or local tax statutes, rules, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (k) any common law doctrine of de facto merger, successor, transferee, or vicarious liability, substantial continuity liability, successor-in-interest liability theory, or any other theory of or related to successor liability.

23.     Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets transferring good and marketable, indefeasible title to and interest in all of the Purchased Assets to Buyer pursuant to the terms of the Purchase Agreement.

24.     Assumption and Assignment of the Assumed Contracts. Subject to and conditioned upon the Closing, the Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Contracts to Buyer free and clear of all Liens, and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Buyer as provided in the Purchase Agreement. In accordance with the Bid Procedures Order and the terms of this Order, following the Closing, Buyer shall be fully and irrevocably vested with all of the Debtors' right, title, and interest in and under the Assumed Contracts, free and clear of any Liens, and each Assumed Contract shall be fully enforceable by Buyer in accordance with its respective terms and conditions, except as limited by this Order. For the avoidance of doubt, nothing in this paragraph affects Buyer's right to re-designate an Assumed Contract for rejection in accordance with Section 2.6(b) of the Purchase Agreement.

25.     In connection with the assumption and assignment of the Assumed Contracts to Buyer in accordance with the terms of this Order and Section 2.6 of the Purchase Agreement, the Debtors are authorized, upon the written consent of Buyer, to enter into any amendment, modification, or similar agreement with a Counterparty to an Assumed Contract to modify the terms of such Assumed Contract prior to the effective date of assignment of such Assumed Contract to Buyer.

DOCS_SF:104202.11

26.     <u>Adequate Assurance of Future Performance</u>.  All of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code, including without limitation, the demonstration of adequate assurance of future performance, have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Buyer, solely with respect to the Assumed Contracts.  Buyer has satisfied its adequate assurance of future performance requirements with respect to the Assumed Contracts and has demonstrated it is sufficiently capitalized or otherwise able to comply with the necessary obligations under the Assumed Contracts.

27.     <u>Cure Costs</u>.  The Cure Costs set forth on **Exhibit A** annexed hereto (the "<u>Final Cure Schedule</u>") are the sole amounts, if any, necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code, except as otherwise agreed to in writing by the Buyer and the applicable Counterparty with respect to such Cure Cost, to cure all defaults and pay all actual losses under the Assumed Contracts.  To the extent a Counterparty to an Assumed Contract failed to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined as set forth on the Final Cure Schedule, and any such Counterparty shall be barred, and forever prohibited from: (i) challenging, objecting to, or denying the validity and finality of the Cure Cost as of the Closing Date, and (ii) asserting against the Debtors, their estates, Buyer, and their respective successors and assigns, any pecuniary loss resulting from a default allegedly arising or occurring under the Assumed Contracts before the Closing Date.

28.     <u>Payment of Cure Costs</u>.  Except as otherwise specifically provided for by order of the Court, or as otherwise agreed to in writing between the Debtor and the Counterparty, all defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing Date or required to be paid pursuant to section 365 of the Bankruptcy Code

in connection with the assumption and assignment of the Assumed Contracts (in each case, without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be promptly cured pursuant to the terms of the Purchase Agreement and this Order by the Debtors' payment of the applicable Cure Cost in accordance with the Purchase Agreement and as set forth on the Final Cure Schedule.  The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of such Assumed Contract.

29.     <u>Buyer's Standing; Debtors' Standing</u>.  The Buyer shall have standing to object to the allowance of claims (as such term is defined in section 101(5) of the Bankruptcy Code) asserted against the Debtors or their estates including, without limitation, any unresolved or disputed Assumed Liabilities or otherwise, that constitute obligations assumed by the Buyer pursuant to the terms of the Purchase Agreement.  Nothing in this Order shall divest the Debtors of their standing or duty as debtors-in-possession under the Bankruptcy Code from reconciling claims asserted against the Debtors or their estates and objecting to any such claims that should be reduced, reclassified, or otherwise disallowed.

30.     *Ipso Facto* <u>Clauses Ineffective</u>.  With respect to the Assumed Contracts, in connection with the Sale Transaction: (a) the Debtors may assume each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtors may assign each Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose

- 32 -

any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each Assumed Contract have been satisfied; and (d) effective upon the Closing Date or any later applicable effective date with respect to a particular Assumed Contract, the Assumed Contracts shall be transferred and assigned to, and from and following the Closing or such later applicable effective date shall remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any Assumed Contract (including those of the type described in sections 365(b)(2) and (e) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assumed Contract and the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assumption by the Debtors and assignment to the Buyer, except as otherwise provided in the Purchase Agreement. To the extent any provision in any Assumed Contract assumed and assigned pursuant to this Order (x) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment (including, without limitation, any "change of control" provision), or (y) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (i) the commencement of the chapter 11 cases, (ii) the insolvency or financial condition of any of the Debtors at any time before the closing of the chapter 11 cases, (iii) the Debtors' assumption and assignment of such Assumed Contract, (iv) a change of control or similar occurrence; or (v) the consummation of the Sale Transaction, then such provision shall be deemed modified in connection with the Sale

- 33 -

Transaction so as not to entitle the Counterparty to prohibit, restrict, or condition such assumption and assignment, to modify, terminate, or declare a breach or default under such Assumed Contract, or to exercise any other default-related rights or remedies with respect thereto, including without limitation, any such provision that purports to allow the Counterparty to terminate or recapture such Assumed Contract, impose any penalty, additional payments, damages, or other financial accommodations in favor of the Counterparty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.  All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect in connection with the Sale pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

31.     Use of PPP Cash.  From the date hereof through and including the Closing Date, the Sellers shall use the PPP Cash to (a) pay the Cure Amounts related to any Assumed Contract for Leased Real Property, and, to the extent there is any PPP Cash remaining, (b) use the remaining PPP Cash to pay the payroll (and any Taxes related thereto) of the Transferred Employees until no PPP Cash remains; provided, however, if (x) the Closing Date is after 12:01 a.m. (Eastern Time) on October 19, 2020 and (y) no PPP Cash remains, then the Buyer shall reimburse the Debtors' estates for each dollar of non-PPP Cash used for authorized PPP expenses (*e.g.*, rent, payroll, utilities, etc.) after 12:01 a.m. (Eastern Time) on October 19, 2020. Notwithstanding anything in the Purchase Agreement or this Order to the contrary, and for the avoidance of doubt, to the extent this paragraph 31 conflicts with any other terms of the Purchase Agreement (including but not limited to Sections 2.1(a) 2.3(a), 2.3(d), and 5.9), the terms of this paragraph 31 shall prevail.

- 34 -

32.     The Debtors shall use commercially reasonable efforts to provide the Committee and any liquidating or chapter 7 trustee, as applicable, with all documentation necessary to seek forgiveness of any amounts outstanding under any loan received by the Debtors under the Coronavirus Aid, Relief and Economic Security Act's Paycheck Protection Program.  The Debtors shall reasonably cooperate with the Committee and any liquidating or chapter 7 trustee, as applicable, in pursuing any application requirements for such forgiveness.

33.     <u>Wind-Down Budget</u>.[3]  Upon the entry of an order (a) dismissing these chapter 11 cases or (b) converting these chapter 11 cases to cases under chapter 7, to the extent there are any funds remaining in the Wind-Down Budget, such remaining funds shall be turned over to the Prepetition Secured Lenders.  The Wind-Down Budget shall account for the aggregate allowed fees and expenses payable and/or reimbursable by the Debtors to the Committee's professionals, Sugar Felsenthal Grais & Helsinger, LLP, Jaffe Raitt Heuer & Weiss, P.C., and Amherst Partners, in an amount not greater than $299,297.00.  The aggregate allowed fees payable and expenses reimbursable by the Debtors to their retained professionals Pachulski Stang Ziehl & Jones LLP, Warner Norcross + Judd LLP, and Rock Creek Advisors, LLC, shall not be greater than 107.5 percent of the sum of total amounts budgeted to such professionals as set forth in the Wind-Down Budget.[4]  Additionally, Buyer shall assume all liabilities related to: (a) any Cure Costs associated with the assumption of the lease agreement between Ionia Ventures, LLC and debtor GRBC Holdings, LLC and (b) any credit card

---

[3]     For the avoidance of doubt, the Wind-Down Budget is predicated on the closing of the Sale Transaction occurring on or before October 19, 2020.  The Debtors, the Buyer and the Committee shall work in good faith to prepare a revised Wind-Down Budget in the event that the Sale Transaction fails to close on or before October 19, 2020.

[4]     For the avoidance of doubt, the fees payable and expenses reimbursable by the Debtors to Mastodon Ventures, Inc., shall not be subject to such permitted variance but shall, instead, be subject to the amounts approved by the *Order (I) Authorizing the Retention and Employment of Mastodon Ventures, Inc. as Investment Banker to the Debtors, Nunc Pro Tunc to the Petition Date, (II) Waiving the Information*

DOCS_SF:104202.11

interchange fees and real estate property taxes in excess of the amounts set forth in the Wind-Down Budget.

34. Good Faith; Statutory Mootness. Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. The Sale Transaction contemplated by the Purchase Agreement and the Ancillary Agreements is undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein shall neither affect the validity of the Sale Transaction (including the assumption and assignment of the Assumed Contracts) nor the transfer of the Purchased Assets to Buyer, free and clear of all Liens pursuant to the Purchase Agreement. The Debtors and Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Order.

35. No Avoidance of Purchase Agreement. Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Purchase Agreement and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement or the Sale Transaction.

36. Modification of Purchase Agreement. Subject to the terms of the Purchase Agreement and the Ancillary Agreements, as applicable, the Purchase Agreement, the Ancillary

*Requirements of Local Rule 2016-2(d), and (III) Granting Related Relief* [Docket No. 274], as reflected in the Wind-Down Budget.

DOCS_SF:104202.11

Agreements, and any related agreements, documents, or other instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof and this Order without further order of the Court; provided that; (a) notwithstanding any such modification, amendment, or supplement, the sale of the Purchased Assets to Buyer will still comply with the requirements of section 363 of the Bankruptcy Code; and (b) such modifications, amendment, or supplement is not inconsistent with this Order.

37.     Record Retention.   Following the Closing, the Debtors, their successors and assigns, and any trustee in bankruptcy will have access to the Debtors' books and records for the specified purposes set forth in, and subject to the terms and limitations contained in, the Purchase Agreement. To the extent that the Debtors maintain books and records electronically, an electronic copy of such books and records shall remain with the Debtors after the Closing.

38.     Standing.   The Purchase Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

39.     Bulk Sales; Taxes.   No bulk sales law, bulk transfer law, or any similar law of any state or other jurisdiction shall apply to the Debtors' conveyance of the Purchased Assets or this Order.

40.     Reservation of Rights.   Nothing in this Order shall be deemed to waive, release, extinguish, or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including any right of recoupment), claim, cause of action, defense, offset, or counterclaim in respect of any asset that is not a Purchased Asset.  All of the provisions of this Order are non-severable and mutually dependent.  To the extent that this Order is inconsistent

- 37 -

with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall control.

41.  Conflicts.  In the event there is a conflict between this Order and the Purchase Agreement (including any Ancillary Agreements executed in connection therewith), this Order shall control and govern.

42.  Waiver of Bankruptcy Rules 6004(h) and 6006(d).  Notwithstanding the provisions of rules 6004(h) and 6006(d) of the Bankruptcy Rules or any applicable provisions of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Western District of Michigan, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen-day stay provided in rules 6004(h) and 6006(d) of the Bankruptcy Rules is hereby expressly waived and shall not apply, and the Debtors and Buyer are authorized and empowered to close the Sale Transaction immediately upon entry of this Order.

43.  Personally Identifiable Information.  After giving due consideration to the facts, circumstances, and conditions of the Purchase Agreement, the Sale Transaction is consistent with the Debtors' privacy policies concerning personally identifiable information and no showing was made that the sale of any personally identifiable information contemplated in the Purchase Agreement, subject to the terms of this Order, would violate applicable non bankruptcy law.

44.  Binding Effect of this Order.  This Order and the Purchase Agreement shall be binding in all respects upon, and shall inure to the benefit of, Buyer, the Debtors' estates, the Debtors, their affiliates, any trustee appointed in the Debtors' chapter 11 cases, all creditors (whether known or unknown) of any Debtor, all holders of interests in the Purchased Assets, all

interested parties, and their successors and assigns. Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized to (a) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Purchase Agreement and the Ancillary Agreements and (b) perform under the Purchase Agreement and the Ancillary Agreements without the need for further order of this Court.

45.     Subsequent Plan Provisions.  Nothing contained in any chapter 11 plan confirmed in the Debtors' chapter 11 cases, any order confirming any such plan, or in any other order in these chapter 11 cases (including any order entered after any conversion of any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order shall alter, conflict with, or derogate from the provisions of the Purchase Agreement or this Order.

46.     Retention of Jurisdiction.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the Purchase Agreement (and such other related agreements, documents, or other instruments) and to interpret, implement, and enforce the terms of this Order

47.     Prepetition Secured Lenders' Deficiency Claim.     Notwithstanding anything to the contrary contained in this Order or the Purchase Agreement, effective as of the Closing (but only if the Closing actually occurs), the Prepetition Lenders shall waive, and receive no distribution on account of, any and all unsecured deficiency claims with respect to the Prepetition Obligations.

48.     Additional Cash Consideration for Purchased Assets.  Notwithstanding anything to the contrary contained in this Order or the Purchase Agreement, as additional

consideration for the sale and transfer of the Purchased Assets, the Purchase Price shall include $225,000 in cash, payable by the Buyer to the Debtors on the Closing Date (but only if the Closing actually occurs), to be held in escrow until confirmation of a chapter 11 plan or conversion of these cases, and to be used exclusively by any chapter 11 trustee or chapter 7 trustee, acting on behalf of the Debtors' estates, as applicable, at his or her discretion, with any remainder to be distributed to creditors pursuant to the Bankruptcy Code.

49.     Debtors' Claims and Causes of Action.   Notwithstanding anything to the contrary contained in this Order or the Purchase Agreement, all Purchased Actions shall comprise Excluded Assets and shall not comprise Purchased Assets, except for any claims or causes of action against a trade vendor and/or service provider that the Buyer reasonably expects to provide goods and/or services to the Buyer upon and/or after the Closing Date, identified on **Exhibit C** attached hereto (each entity identified therein, an "Ongoing Business Party"), which claims and causes of action shall remain Purchased Assets under the Purchase Agreement; *provided* that Excluded Assets shall further include any claims and causes of action against a non-Debtor transferee of assets, including but not limited to any Ongoing Business Party, that received such assets from or at the direction of any director or officer (including, but not limited to, Mark Sellers) for the primary benefit of such director or officer individually.

50.     Releases.   Effective as of the Closing Date (but only if the Closing actually occurs), the Prepetition Secured Lenders, Administrative Agent, Buyer, Debtors, Committee, and members of the Committee (solely in their roles as Committee members and not as individual creditors) and their respective professionals (collectively, the "Release Parties") will be deemed released and discharged by each and all of the other Release Parties and the Debtors' estates from any and all claims, obligations, rights, suits, damages, causes of action,

remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Release Parties or the Debtors' estates, as applicable, whether known or unknown, foreseen or unforeseen, existing in law, equity, or otherwise, that the Release Parties or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Debtors or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors' bankruptcy cases, the Debtors' sale of assets to the Buyer in accordance with this Order and the Purchase Agreement, the Bid Procedures, Credit Bid, or any Sale Transaction or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Purchase Agreement, Ancillary Agreements, or this Order, including but not limited to any claims under section 506(c) of the Bankruptcy Code; *provided* that any right to enforce this Order and any right of estate professionals to seek allowance and payment of professional fees is not so released by this paragraph.

51.     Insurance Claims.  Nothing in the Purchase Agreement or this Order shall be construed to waive, release or otherwise impact any claims that the Buyer may have to pursue or receive the proceeds from claims under the Insurance Policies pursuant to Section 6.7 of the Purchase Agreement (excluding any directors' and officers' liability Insurance Policies). Nothing in the Purchase Agreement or this Order shall be construed to waive, release or otherwise impact any claims that a chapter 11 or chapter 7 trustee may pursue on behalf of the Debtors' estates with respect to the Debtors' directors and officers or their directors and officers Insurance Policies.

52.     U.S. Trustee Fees.  The U.S. Trustee shall not assess, claim, or seek to charge any of the Debtors, their estates, the Buyer, the Administrative Agent, or the Prepetition

Secured Lenders for any fees or charges related to or arising from any Sale Transaction approved

by this Order.

Dated: _____, 2020
     Grand Rapids, Michigan

        The Honorable James W. Boyd
        United States Bankruptcy Judge

# EXHIBIT A

**Cure Costs**

## EXECUTORY CONTRACTS*

| Debtor | Counter Party | Contract Description | Agreed Upon Cure for Sale Order |
|---|---|---|---|
| Barfly Ventures, LLC | Accident Fund Insurance Company of Am | Workers Compensation Insurance | $0.00 |
| Barfly Ventures, LLC | Admiral Insurance Company | Excessive Liability Insurance | $0.00 |
| Hopcat Beltline | ArrowWaste Inc. | Trash and recycling services | $0.00 |
| GRBC Holdings, LLC | ArrowWaste Inc. | Trash and recycling services | $0.00 |
| 50 Amp Fuse, LLC | ArrowWaste Inc. | Trash and recycling services | $0.00 |
| Hopcat Grand Rapids | ArrowWaste Inc. | Trash and recycling services | $0.00 |
| Barfly Ventures, LLC | AvidXchange Inc. | Payment network services | $0.00 |
| Barfly Ventures, LLC | Blackhawk Network | Gift cards | $0.00 |
| Hopcat Holland | Coverall of Western Michigan | Janitorial services | $0.00 |
| Barfly Ventures, LLC | DoorDash, Inc. | delivery services | $0.00 |
| Hopcat Broad Ripple | DVCLEANINDY, LLC | Cleaning services | $0.00 |
| Barfly Ventures, LLC | ECOLAB | warehousing, housekeeping, laundry, and other cleaning and santizing chemical products | $16,929.29 |
| Barfly Ventures, LLC | eFileCabinet | document management software services | $0.00 |
| Barfly Ventures, LLC | Egencia LLC | Travel services/assisted booking | $0.00 |
| EL Brewpub | Enviro - Master of West Michigan | Janitorial | $0.00 |
| Hopcat Beltline | Enviro - Master of West Michigan | Janitorial | $0.00 |
| Hopcat Kalamazoo | Enviro - Master of West Michigan | Janitorial | $0.00 |
| GRBC Holdings | Enviro - Master of West Michigan | Janitorial | $0.00 |
| Hopcat Grand Rapids | Enviro - Master of West Michigan | Janitorial | $0.00 |
| Stellas | Enviro - Master of West Michigan | Janitorial | $0.00 |

| Barfly Ventures, LLC<br>50 Amp Fuse, LLC<br>GRBC Holdings, LLC<br>9 Volt, LLC<br>Hopcat Ann Arbor, LLC<br>Hopcat Detroit, LLC<br>EL Brewpub, LLC<br>Hopcat Lexington, LLC<br>Hopcat Indianapolis<br>Hopcat Kansas City<br>Hopcat Lincoln<br>Hopcat Madison | Gordon Food Service | Food distribution | $750,000 ($250,000 at Closing to be paid by Debtor and $500,000 promissory note to be paid by the Buyer and subject to final documentation) |
|---|---|---|---|
| Barfly Ventures, LLC | HotSchedules.com, Inc | scheduling software | $16,968.00 |
| Hopcat Lincoln | Huskers IMG Sports Marketing | marketing and sponsorship | $0.00 |
| Barfly Ventures, LLC | Indian Harbor Insurance Company | Umbrella Insurance | $0.00 |
| EL Brewpub LLC | My Green Michigan LLC | Composting services | $0.00 |
| Barfly Ventures, LLC | NCR Corporation | IT software | $0.00 |
| Barfly Ventures, LLC | NCR Corporation | cloud applications | $0.00 |
| Barfly Ventures, LLC | NCR Corporation | CMC software | $0.00 |
| Barfly Ventures, LLC | NCR Corporation | remove loyalty | $0.00 |
| Barfly Ventures, LLC | Nexonia Technologies Inc. | expense management software | $0.00 |
| Barfly Ventures, LLC | OLO | delivery application | $0.00 |
| Barfly Ventures, LLC | Paytronix Systems, Inc. | IT software services | $17,535.93 |
| Barfly Ventures, LLC | Pepsi Beverages Company | Pepsi beverages exclusively | $0.00 |
| GRBC Holdings, LLC | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |
| Hopcat Ann Arbor | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |
| Hopcat Beltline | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |

| | | | |
|---|---|---|---|
| Hopcat Broad Ripple | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |
| Hopcat Detroit | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |
| EL Brewpub LLC | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |
| Hopcat Grand Rapids | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |
| Hopcat Kalamazoo | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |
| Hopcat Lincoln | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |
| 50 Amp Fuse, LLC | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 |
| Barfly Ventures, LLC | Red Bull North America, Inc. | energy drink distribution and exclusivity | $0.00 |
| Hopcat Detroit | Republic Services | trash and recycling services | $0.00 |
| Barfly Ventures, LLC | Round It Up America, Inc. | charitable donation collections | $0.00 |
| GRBC Holdings | Swept Away | Janitorial | $0.00 |
| Grand Rapids | Swept Away | Janitorial | $0.00 |
| Stellas | Swept Away | Janitorial | $0.00 |
| Hopcat Beltline | Swept Away | Janitorial | $0.00 |
| Barfly Ventures, LLC | TBX | menu design | $0.00 |
| Barfly Ventures, LLC | Untappd | marketing services | $0.00 |
| EL Brewpub LLC | Waste Management of Michigan | Trash and recycling services | $0.00 |
| Barfly Ventures, LLC | Yelp Inc | advertising services | $8.22 |
| Barfly Ventures, LLC | Travelers | General Liability Insurance | $0.00 |
| Barfly Ventures, LLC | Travelers | Automobile Insurance | $0.00 |

**\*As noted in the Sale Order, Debtor reserves the right to still reject any executory contract up until the Closing Date**

## ADDITIONAL EXECUTORY CONTRACTS

| Debtor | Counter Party | Contract Description | Cure Amount |
|---|---|---|---|
| BarFly Ventures | 58 Ionia Holdings, LLC | Equipment Lease for equipment located in Detroit restaurant | $4,165.00 |
| BarFly Ventures | Compeat | Back office software provider | $0.00 |
| BarFly Ventures | Wisely | Reservation / Table Mgmt. Software | $0.00 |

## UNEXPIRED REAL PROPERTY LEASES*

| Debtor | Counter Party | Property Address | Cure Amount in Sale Order | Amendment to Lease |
|---|---|---|---|---|
| GRBC Holdings*** | Ionia Ventures, LLC | 1 Ionia Ave SW, Grand Rapids, MI 49503 | $86,420.96 | Yes |
| Hopcat-Detroit*** | 4265 Woodward Ventures LLC | 4265 Woodward Ave, Detroit, MI 48201 | $23,515.64 | Yes |
| Hopcat-Grand Rapids | Lee Shore-Lemon Wheeler Building | 25 Ionia Ave., Grand Rapids, MI 49503 | $48,764.37 | No |
| Hop Cat-Ann Arbor*** | Liberty Maynard LLC | 311 Maynard, Ann Arbor, MI 48104 | $50,986.80 | Yes |
| Hopcat-E. Lansing/EL Brewpub*** | A&G Partnership | 300 Grove, East Lansing, MI 48823 | $58,301.54 | Yes |
| Hopcat-E. Beltine** | JK East Beltline Real Estate | 2183 E Beltline Ave NE, Grand Rapids MI, 49525 | $61,451.39 | Yes |
| Hopcat-Holland** | Greenen Dekock Properties, LLC | 80 West 8th Street, Holland MI | $23,320.13 | Yes |
| Hopcat-Indianapolis** | 6280 LLC | 6280 N. College Ave. Indianapolis, IN 46220 | $102,312.12 | Yes |
| Hopcat-Kalamazoo | GTW Depot, LLC | 300 E. Water St., Kalamazoo, Michigan, 49007 | $54,894.59 | No |
| Hopcat-Lincoln** | Project Oscar, LLC | 601 P. Street, Lincoln, NE 68508 | $50,733.66 | Yes |
| Stellas's/50 Amp Fuse LLC*** | 50 Commerce Building, LLC | 53 Commerce Ave, SW, Grand Rapids, MI 49503 | $20,000.00 | Yes |

**\*As noted in the Sale Order, Debtor reserves the right to still reject any Lease up until the Closing Date**
**\*\*Lease Amendment Signed**
**\*\*\*Remains Subject to Execution of Lease Amendment**

## NEW REAL PROPERTY LEASE

| Debtor | Counter Party | Property Address | Agreed Upon Cure for Sale Order |
|---|---|---|---|
| BarFly Ventures (Temporary Corporate Office) | 280 Ann LLC | 280 Ann Street NW, Suite 110, Grand Rapids, Michigan 49504 | N/A |
|  |  |  |  |

# EXHIBIT B

## Asset Purchase Agreement

**[Intentionally Omitted]**

# EXHIBIT C

**Purchased Actions**

## Ongoing Trade Vendors / Service Providers

A & L Janitorial Inc.
ADP CLIENT TRUST
Airgas USA LLC - Rental
Allegra
Alliance Beverage Distributing LLC
Ameren Missouri
Armock Mechanical
Arrowaste Inc.
ASCAP
Becker & Poliakoff, PA
Beer City Glass
BHD0001--BHD, LLC
Borgetto Investments, LLC
Boston Square
Brewers Supply Group
Capitol Beverage Sales
CAVALI1--Cavalier Distributing Inc
Cavalier Distributing Inc
Centerpoint Energy
Certified Refrigeration & Mechanical, LLC
Citizens Energy Group
Comcast
ComEd
Comfort Systems USA Indiana
Consumer_s Energy
Corrigan Logistics
Corrine Johnson
Cozzini Bros Inc
Cross Roads Brewing Co
Dan Henry
Daniel L Jacob & Co. Inc
Dawson Rubin
Delta Dental
Dover Grease Traps, Inc.
DTE Energy
Eastown Distributors
EatGR LLC
Eclectic Imprint
ECOLAB
Ecolab Pest Elim Div
Enroll123, LLC
Enviro-Master of West Michigan
Eventbrite, Inc.

### Ongoing Trade Vendors / Service Providers

Evergy
Evil Czeck Brewery & Public House
Fabiano Brothers
FedEx
Ferris Coffee & Nut Company, Inc
Field Fire Protection Inc
Final Clean Pro LLC
fintech
First Insurance Funding
Fish Window Cleaning
Glazers Wholesale Company
Gordon Food Service
Grand Rapids Graphix
Great America Financial Services
Great Lakes Beverage Co
Great Lakes West
GREATL1--Great Lakes Wine _ Spirits
Green For Life
GTT Communications
HC Woodward LLC
Henry A. Fox Sales Co.
HNI Risk Advisors
Hoekstra Electrical Services
Holland Board of Public Works
Holland Stitchcraft
Holston Gases
Humidity Controls LLC
Ice Town
ID Watchdog, Inc.
IHS Distributing
Imperial Beverage
INDIAN3--Indiana City Brewing
Infinisource Benefit Services
Insite Business Solutions
James Ferrari and Sons Inc
Jeff Meyer
Johnson Brothers
K&Z Distributing Co.
KegWorks
KM Prost LLC
Knight Investment Group
Lansing Board of Water and Light
Lee Shore Enterprises

### Ongoing Trade Vendors / Service Providers

Lexington-Fayette Urban County Government
LG&E
Lincoln Electric Systems
Lincoln National Life Insurance Company
M4 C.I.C. LLC
Mervenne Beverage, Inc.
Michigan Dept of Treasury
Monarch Beverage
Mr Handyman Detroit
Mutual of Omaha
My Green Michigan LLC
My Handyman of Ann Arbor
Nantucket Baking Company
National Wine _ Spirits
Nick's Gyro's LLC
NRL Consulting
NuCO2
O & W, Inc
Oath Distributing
OLO
Omega :Yeast Labs
One Way Products
Open Table
Organix Recycling
Patty Matters
Pax Verum Brewing Co.
Phoebe Duvall
Plante & Moran, PLLC
Plaza Storage, LLC
Power Distributing
Premier Beverage CO
Premier-Midwest Beverage Co.
Produce Alliance
Professional Maintenance of Michigan, Inc.
Project 35 LLC
Quail Distributing, Inc.
Quality Brands of Lincoln LLC
R. L. Schrieber
R.E. Golden Produce Co
Rave Associates
Red Tap Solutions
Republic National Dist
Restaurant Technologies, Inc

**Ongoing Trade Vendors / Service Providers**

RLM Services LLC
Rotella's Italian Bakery, Inc.
Round It Up America, Inc.
Ryan Leibinger
Saladino Smoke LLC
Scott Cooley
South Broad Ripple Brewing Co
Southern Glaziers of MO
Southern Wine & Spirits
Sparkling Windows Corp.
Spire
Standard Sales Company
Star 2 Star Communications LLC
State Distributing
Sterling/Glaziers Distributing
Susan Kalee
TDS
The Guardian Brewing Co.
Time Warner Cable
Todd Kronebusch
Town Center Inc.
Tri-County Beverage Company
Unemployment Services, Inc.
Unifirst Corporation - Michigan
United Beverage
Valley City Linen
Verdolino & Lowey, P.C.
Verizon Wireless
Vicinity Energy Grand Rapids LLC
VSP Insurance Co.
Waste Management of Michigan
Welders Supply Company
West Side Beer Distributing
WestRock CP LLC
Wirtz Beverage Wisconsin
XCEL Energy
Zink Distributing

# EXHIBIT B

**Comparison to Original Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| | x | |
| In re | : | Chapter 11 |
| | : | |
| BARFLY VENTURES, LLC, *et al.*,[1] | : | Case No. 20-01947-jwb |
| | : | |
| Debtors. | : | Jointly Administered |
| | x | |

**ORDER (I) AUTHORIZING THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS, (II) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 127] (the "Motion") of BarFly Ventures, LLC and

its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order

(this "Order") pursuant to sections 105(a), 363, and 365 of Title 11 of the United States Code

(the "Bankruptcy Code") and rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") (i) approving the sale of the Debtors' assets free and clear of

liens, claims, interests and encumbrances, (ii) authorizing assumption and assignment of certain

executory contracts and unexpired leases; and (iii) granting related relief; and the Court having

entered a prior order, dated July 22, 2020 [Docket No. 184] (the "Bid Procedures Order"),

approving bidding procedures for the Debtors' assets (the "Bid Procedures") and granting certain

---

[1]    The Debtors and the last four digits of their federal employment identification number are: Barfly Ventures, LLC (8379); 9 Volt, LLC (d/b/a HopCat) (1129); 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684); GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130); E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334); HopCat-Ann Arbor, LLC (5229); HopCat-Chicago, LLC (7552); HopCat-Concessions, LLC (2597); HopCat-Detroit, LLC (8519); HopCat-GR Beltline, LLC (9149); HopCat-Holland, LLC (7132); HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970); HopCat-Kalamazoo, LLC (8992); HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242); HopCat-Lexington, LLC (6748); HopCat-Lincoln, LLC (2999); HopCat-Louisville, LLC (0252); HopCat-Madison, LLC (9108); HopCat-Minneapolis, LLC (8622); HopCat-Port St. Lucie, LLC (0616); HopCat-Royal Oak, LLC (1935); HopCat-St. Louis, LLC (6994); Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).

related relief; and Project BarFly LLC (together with its permitted successors, designees, and assigns, "Buyer") having submitted a bid, which bid was the Successful Bid for substantially all of the Debtors' assets; and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and venue of these chapter 11 cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and any objections (if any) to the Motion having been withdrawn or overruled on the merits; and a hearing on the Motion (the "Sale Hearing") having been held to consider the relief requested in the Motion and to review and consider (i) the Motion and the exhibits thereto, (ii) the Asset Purchase Agreement, dated as of July 9, 2020, by and among the Debtors and Buyer, a copy of which is attached hereto as **Exhibit B** (together with any schedules and exhibits thereto, and as amended, restated, supplemented, or otherwise modified from time to time, the "Purchase Agreement")[2] whereby the Debtors have agreed, among other things, to sell the Purchased Assets (as defined below in the Asset Purchase Agreement as modified herein) to Buyer on the terms and conditions set forth in the Purchase Agreement (collectively, the "Sale Transaction"), (iii) the *Response of CIP Administrative, LLC, In Its Capacity as Administrative Agent for the Prepetition Lenders, to Objections to Sale Motion* [Docket No. 333], and (iv) the declarations of Robert S. Hersch and Ned Lidvall in support of the Motion, and upon the record of the Sale Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates,

---

[2]  Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Purchase Agreement or, if not defined in the Purchase Agreement, the meanings ascribed to them in the Motion.

their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the full record of the Sale Hearing and other pleadings and proceedings in these chapter 11 cases, including the Motion; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS, DETERMINES, AND CONCLUDES THAT:**

A.    <u>Fed. R. Bankr. P. 7052</u>.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to rule 9014 of the Bankruptcy Rules, and shall take immediate effect upon execution hereof.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by this Court during or at the conclusion of the Sale Hearing.

B.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction to consider and decide the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Final Order</u>.  This Order constitutes a final and appealable order as set forth in 28 U.S.C. § 158(a).  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Purchase Agreement.  In the absence of a stay pending appeal, Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code and entitled to its protections, may close the sale contemplated by the Purchase Agreement at any time after the entry of this Order and shall not be subject to the stay provided by rules 6004(h) or 6006(d) of the Bankruptcy Rules.

- 3 -

D.    <u>Statutory and Rule Predicates</u>.  The statutory and other legal predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and rules 2002, 6004, and 6006 of the Bankruptcy Rules.

E.    <u>Opportunity to Object</u>.  A fair and reasonable opportunity to object or be heard regarding the relief granted by this Order, including but not limited to, the assumption and assignment of the Assumed Contracts and the Cure Costs (each as defined below), has been afforded to all interested persons and entities, including, but not limited to, the Notice Parties (as defined in the Motion).

F.    <u>Sound Business Purpose</u>.  The Debtors have demonstrated that their entry into the Purchase Agreement and related or ancillary agreements thereto or contemplated thereby (collectively, the "<u>Ancillary Agreements</u>") is supported by good, sufficient, and sound business reasons.  A sale of the Purchased Assets and assumption of the Assumed Liabilities will maximize the value of the Debtors' estates, ~~if~~is fair and equitable, and represents a reasonable exercise of the Debtors' sound business judgment.  The Debtors determined that the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets and pursuant to the terms and conditions of the Purchase Agreement, the Debtors have agreed to transfer to Buyer all of the Debtors' right, title, and interest in and to, and Buyer has agreed to assume certain specified Assumed Liabilities that are not Excluded Liabilities related to, the Purchased Assets free and clear of all Liens (as defined below) and, if and to the extent requested by Buyer, to assume and assign the Assumed Contracts (collectively, the "<u>Assumed Contracts</u>") to Buyer subject to the terms and conditions of the Purchase Agreement and this Order, and such determination is a valid and sound exercise of the Debtors' business judgment.

- 4 -

G.    <u>Compliance with Bid Procedures</u>.  The Bid Procedures (as approved by the Bid Procedures Order) were substantively and procedurally fair to all parties, were the result of arm's length negotiations, and provided a full, fair, and reasonable opportunity for any party to make an offer to purchase the Purchased Assets.  The Debtors, Buyer, and their respective counsel and other advisors have complied with the Bid Procedures Order and the Bid Procedures in all respects except as properly waived by the Debtors in the exercise of their fiduciary duties in accordance with the Bid Procedures.  Buyer submitted a Qualified Bid pursuant to the Bid Procedures approved by the Court and was the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures Order and the Bid Procedures.

H.    <u>Marketing Process</u>.  The Debtors and their advisors thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in a fair and open manner, soliciting offers to acquire the Purchased Assets from a wide variety of parties. The sale process and the Bid Procedures were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any person or entity that expressed an interest in acquiring the Purchased Assets, or who the Debtors believed may have an interest in acquiring, and be permitted and able to acquire, the Purchased Assets, to conduct due diligence, make an offer to purchase the Debtors' assets, including, without limitation, the Purchased Assets, and submit higher and otherwise better offers for the Purchased Assets than Buyer's Successful Bid. The Debtors and Buyer have negotiated and undertaken their roles leading to the Sale Transaction and entry into the Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner.  The sale process conducted by the Debtors pursuant to the Bid Procedures Order and the Bid Procedures resulted in the highest or otherwise best offer for the Purchased Assets for the Debtors and their estates, was in the best interests of the Debtors, their

- 5 -

creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result. There is no legal or equitable reason to delay consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction.

I.     <u>No Other Qualified Bids/Cancellation of Auction</u>.  The Debtors did not receive any other Qualified Bids pursuant to the Bid Procedures and, consequently, in accordance with Article III.F of the Bid Procedures, no Auction was held and the Buyer was named the Successful Bidder upon the expiration of the Bid Deadline.

J.     <u>Good Faith</u>.  Buyer is not an "insider" or "affiliate" of any of the Debtors as those terms are defined in section 101 of the Bankruptcy Code.  The Purchase Agreement and the Ancillary Agreements, and each of the transactions contemplated therein, were negotiated, proposed, and entered into by the Debtors and Buyer without collusion or fraud, in good faith, and from arm's-length bargaining positions and are substantively and procedurally fair to all parties.  Neither the Debtors nor Buyer has engaged in any conduct that would cause or permit any part of the Purchase Agreement or the Ancillary Agreements to be avoidable under section 363(n) of the Bankruptcy Code.  Buyer is purchasing the Purchased Assets, in accordance with the Purchase Agreement, in good faith and is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  In particular, (i) Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) Buyer in no way induced or caused the chapter 11 filing by the Debtors; (iii) Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, managers, officers, or controlling stockholders exists between Buyer, on the one hand, and any of the Debtors, on the other hand; (v) Buyer complied with the Bid Procedures and all provisions of the Bid Procedures Order; and (vi) all

payments to be made, and all other material agreements or arrangements entered into or to be entered into by Buyer in connection with the Sale Transaction, including the Ancillary Agreements, have been disclosed.  The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, or possession, or the District of Columbia.

        K.    <u>Fair Consideration/Reasonably Equivalent Value</u>.  The aggregate consideration from Buyer for the Purchased Assets as set forth in the Purchase Agreement: (i) as such consideration relates to the Purchased Assets, constitutes fair consideration and fair value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and other similar laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction; (ii) is the highest or otherwise best value obtainable for the Purchased Assets; (iii) will provide a greater recovery to creditors than would be provided by any other available alternative; and (iv) as such consideration relates to the Purchased Assets, constitutes reasonably equivalent value (as that term is defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transaction Act, and section 548 of the Bankruptcy Code).  Neither the Debtors nor Buyer entered into or has agreed to enter into the Purchase Agreement or the Ancillary Agreements with any fraudulent or otherwise improper purpose, including, without limitation, the purpose of hindering, delaying, or defrauding any creditors of the Debtors.

        L.    <u>No Successor or Other Derivative Liability</u>.  Except as otherwise set forth herein or in the Purchase Agreement, upon Closing, and to the greatest extent permitted by applicable law, Buyer shall not have any liability (including, but not limited to, any successor liability) or other obligation of any of the Debtors arising under or related to the sale and transfer

of the Purchased Assets to Buyer or with respect to the Excluded Liabilities, provided that, upon Closing, Buyer shall remain liable for the Assumed Liabilities.  Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Purchase Agreement, Buyer shall not be liable for any claims against the Debtors or any of their predecessors, affiliates employees, agents, or advisors, and Buyer shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transfer liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of Closing, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, environmental liabilities, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing.  For the avoidance of doubt, the Debtors are deemed to release and forever discharge Buyer and any of its affiliates, successors, and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs, and expenses of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, relating to the Sale Transaction or operation of the Purchased Assets prior to Closing, except for the Assumed Liabilities.  Buyer is not, and the consummation of the Sale Transaction will not render Buyer, a mere continuation, and Buyer is not holding itself out as a mere continuation, of any of the Debtors or their respective estates, enterprise, or operations, and there is no continuity or common identity between Buyer and the Debtors. Accordingly, the Sale Transaction does not amount to a consolidation, merger, or de facto merger of Buyer with or into any of the Debtors or their estates and Buyer is not, and shall not be

- 8 -

deemed to be, a successor to any of the Debtors or their estates as a result of the consummation of the Sale Transaction. Buyer would not have entered into the Purchase Agreement if the transfer of the Purchased Assets were not made free and clear of any successor liability to Buyer.

M.    <u>Sale Notice</u>. As shown by the certificates of service filed with the Court and the representations or proffers made on the record at the Sale Hearing, (i) the Debtors have provided proper, timely, adequate, and sufficient notice of and sufficient opportunity to object to the Motion and the relief requested therein (including the Debtors' requested findings with respect to successor liability), the bidding process (including, without limitation, the deadline for submitting Qualified Bids), the Sale Hearing, the Sale Transaction, and the proposed entry of this Order in compliance with all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, (ii) such notice was adequate and sufficient under the circumstances of these chapter 11 cases and complied with the Bid Procedures Order and other orders of the Court, and (iii) no other or further notice is required.

N.    <u>Title to Assets</u>. The Purchased Assets constitute property of the Debtors' estates and title or rights thereto is currently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

O.    <u>Satisfaction of Section 363(f) Standards</u>. The conditions of section 363(f) of the Bankruptcy Code, including 363(f)(2), have been satisfied in full. Upon entry of this Order, the Debtors are authorized to transfer all of their right, title, and interest in and to the Purchased Assets free and clear of any and all claims (as such term is defined by section 101(5) of the Bankruptcy Code), liabilities (including any liability that results from, relates to, or arises out of tort or any other product liability claim), interests, and matters of any kind and nature whatsoever, including, without limitation, hypothecations, mortgages, security deeds, deeds of

- 9 -

trust, debts, levies, indentures, restrictions (whether on voting, sale, transfer, disposition, or otherwise), leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts and other title retention agreements and other similar impositions, options, judgments, offsets, rights of recovery, rights of preemption, rights of setoff, profit sharing interest, other third party rights, other impositions, or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, substantial continuation claims, withdrawal liability claims, environmental claims, claims under or relating to any employee benefit plan, ERISA affiliate plan, or ERISA (including any pension or retirement plan) or any claims under state or other laws of similar effect, tax claims (including claims for any and all foreign, federal, state, and local taxes, including, but not limited to, sales, income, use, or any other type of tax), escheatment claims, reclamation claims, obligations, liabilities, demands, and guaranties, and other encumbrances relating to, accruing, or arising any time prior to the Closing Date, duties, responsibilities, obligations, demands, commitments, assessments, costs, expense, losses, expenditures, charges, fees, penalties, fines, contributions, premiums, encumbrances, guaranties, pledges, consensual or nonconsensual liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code), statutory liens, real or personal property liens, mechanics' liens, materialman's liens, warehouseman's liens, tax liens, security interests, charges, options (including in favor of third parties), rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, rights of first refusal, rights and restrictions of any kind or nature whatsoever against the Debtors or the Purchased Assets, including, without limitation, any debts arising

- 10 -

under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims, or claims for taxes of or against the Debtors, and any derivative, vicarious, transferee, or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule, or regulation of the United States, any state, territory, or possession, or the District of Columbia), whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability, or substantial continuation liability, including, without limitation, that the Buyer is in any way a successor, successor-in-interest, continuation, or substantial continuation of the Debtors or their business, arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Purchased Assets, the operation of the Debtors' respective businesses at or before the effective time of the Closing pursuant to the Purchase Agreement, or the transfer of the Debtors' interests in the Purchased Assets to Buyer, and all Excluded Liabilities (collectively, excluding any Assumed Liabilities and Permitted Liens, "Liens"), as provided for in the Purchase Agreement because in each case one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Except as otherwise expressly provided in the Purchase Agreement or this Order, such Liens

shall attach to the proceeds allocated to the Debtors in the order of their priority, with the same validity, force and effect which they have against the Purchased Assets immediately prior to the Closing, subject to any claims and defenses the Debtors may possess with respect to such Liens. Those holders of Liens against the Purchased Assets who did not object or who withdrew their objections to the Purchase Agreement or the Motion are deemed to be bound by the terms of this Order as the transactions contemplated by the Purchase Agreement pursuant to section 363(f)(2). In addition, one or more of the other subsections of sections 363(f) of the Bankruptcy Code apply and, therefore, holders of Liens with an interest in the Purchased Assets owned by the Debtors are found to be adequately protected by having their Liens that constitute interests in such Purchased Assets attach solely to the proceeds of the Sale Transaction in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale Transaction and by providing for the distributions provided for herein.  All persons having Liens of any kind or nature whatsoever against the Debtors or the Purchased Assets owned by the Debtors shall be forever barred from pursuing or asserting such Liens against Buyer or any of their respective assets, property, affiliates, successors, assigns, or the Purchased Assets.

P.    Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and creditors, if (i) the transfer of the Purchased Assets was not free and clear of all Liens and other interests, including, without limitation, any rights or Liens based on any successor or transferee liability, as set forth in the Purchase Agreement and this Order, or (ii) the Buyer would, or in the future could, be liable for any such Liens, including, without limitation, any rights or Liens based on any successor or transferee liability.  Buyer will not consummate the Sale Transaction unless this Court expressly orders that none of Buyer, its affiliates, their present

or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens and other interests, including rights or claims based on any successor or transferee liability, other than expressly provided herein or in the Purchase Agreement. The total consideration to be provided under the Purchase Agreement reflects Buyer's reliance on this Order to provide, pursuant to sections 105(a) and 363(f) and (m) of the Bankruptcy Code, that, upon the Closing, Buyer has title to, interest in, and possession of the Purchased Assets free and clear of all Liens. A sale of the Purchased Assets, other than one free and clear of all Liens, would yield substantially less value for the Debtors' estates.

Q.    <u>Assumption and Assignment of the Assumed Contracts</u>. The assumption and assignment of the Assumed Contracts are integral to the Purchase Agreement, are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtors' sound business judgment. Specifically, the assumption and assignment of the Assumed Contracts (i) are necessary to sell the Purchased Assets to Buyer, (ii) allow the Debtors to sell their business to Buyer as a going concern, (iii) allow the Debtors to maximize the value of the Purchased Assets, including the Assumed Contracts, (iv) limit the losses suffered by the counterparties to the Assumed Contracts, and (v) maximize the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assumed Contracts.

R.    With respect to each of the Assumed Contracts, the Debtors and Buyer have met all requirements of section 365(b) of the Bankruptcy Code. Further, in compliance with the requirements of sections 365(b) and 365(f) of the Bankruptcy Code, Buyer has provided

adequate assurance of future performance under the Assumed Contracts to the extent that any such assurance is required and not waived by the counterparties to such Assumed Contracts. Accordingly, the Assumed Contracts may be assumed by the Debtors and assigned to Buyer as provided for in the Purchase Agreement and this Order.

S.      The authority hereunder for the Debtors to assume and assign any Assumed Contract to Buyer includes the authority to assume and assign an Assumed Contract, as amended (including amendments entered into by the Debtors in accordance with paragraph 25 of this Order).

T.      The assignments by the applicable Debtors of each of the Assumed Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

U.      Cure Notice; Adequate Assurance of Future Performance.  As shown by the certificates of service filed with the Court, the Debtors have served upon each non-Debtor counterparty to certain executory contracts and unexpired leases (each, a "Counterparty"), prior to the Sale Hearing, a notice, dated July 24, 2020 [Docket No. 198] (the "Notice of Potential Assignment"), (i) that Debtors may wish to assume and assign the contracts or leases identified on the Notice of Potential Assignment (the "Contracts and Leases") to the Buyer pursuant to section 365 of the Bankruptcy Code and (ii) of the related proposed cure costs due under section 365(b) of the Bankruptcy Code (the "Cure Costs") with respect to the Contracts and Leases.  In accordance with the Bidding Procedures Order, if the Debtors or Buyer identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Buyer or that were not set forth in the original Notice of Assumption and Assignment, the Debtors will promptly file with the Court and send a Supplemental Notice of Assumption and Assignment to the applicable Counterparties to such additional executory contracts and

- 14 -

unexpired leases.  The service of the Notice of Potential Assignment was good, sufficient, and appropriate under the circumstances of these chapter 11 cases and complied with the Bid Procedures Order and other orders of the Court, and no other or further notice is required with respect to the Cure Costs for the assumption and assignment of the Contracts and Leases, including without limitation Buyer's provision of adequate assurance of future performance.  All Counterparties to the Contracts and Leases have had a reasonable opportunity to object to the Cure Costs listed on the Notice of Potential Assignment in accordance with the Bid Procedures Order and to the assumption and assignment of such Assumed Contract to Buyer in accordance with the Bid Procedures Order.  Accordingly, all Counterparties to Contracts and Leases who did not object or who withdrew their objections to the Cure Costs listed on the Notice of Potential Assignment prior to the Sale Hearing are deemed to have consented to such Cure Costs, and all Counterparties to Assumed Contracts who did not file an objection to the assumption by the Debtors of such Assumed Contracts and the assignment thereof to Buyer prior to the Sale Hearing are deemed to have consented to the assumption of such Assumed Contract and the assignment thereof to Buyer.

V.    All Counterparties to the Assumed Contracts have had a reasonable opportunity to object to Buyer's ability to provide adequate assurance of future performance as contemplated under sections 365(b)(l)(C) and 365(f)(1) of the Bankruptcy Code, in accordance with the Bid Procedures Order.  Accordingly, all Counterparties to Assumed Contracts who did not object or who withdrew their objections to Buyer's ability to provide adequate assurance of future performance under the Assumed Contracts are bound by the terms of this Order as to the assumption of such Assumed Contract and the assignment thereof to Buyer.  The filed objections

- 15 -

at [Docket Nos. 216, 217, 220, 223, 225, 227, 228, 259, 268, 288, 290, and 300] relating to the Assumed Contracts were adjourned or resolved as set forth on the record at the Sale Hearing.

W.    <u>Liquor Licenses</u>.  Alcohol sales are currently conducted in connection with the Purchased Assets pursuant to the Liquor Licenses.  The sale of alcohol is an important component of the Debtors' business and the continued sale of alcohol in connection with the Purchased Assets is essential to the Buyer's consummation of the Sale Transaction.  It is in the best interests of the estates and all other parties in interest for such alcohol sales to continue uninterrupted during the transition of ownership from the Debtors to the Buyer after the Closing.

X.    <u>Record Retention</u>.  Pursuant to the terms of and subject to the limitations and conditions in the Purchase Agreement, following the Closing the Debtors, their successors and assigns, and any trustee in bankruptcy will have reasonable access to the Debtors' books and records for any reasonable business purpose or compliance with any obligation, including administration of these chapter 11 cases.  To the extent that the Debtors maintain books and records electronically, an electronic copy of such books and records shall remain with the Debtors after the Closing.

Y.    <u>Corporate Power and Authority</u>.  The Debtors and their applicable affiliates have (i) full corporate or similar power and authority to execute and deliver the Purchase Agreement, the Ancillary Agreements, and all other documents contemplated thereby, (ii) all corporate or similar authority necessary to consummate the transactions contemplated by the Purchase Agreement and the Ancillary Agreements, and (iii) taken all corporate actions necessary to authorize and approve the Purchase Agreement, the Ancillary Agreements, and the consummation of the transactions contemplated thereby.  No consents or approvals, other than

- 16 -

those expressly provided for in the Purchase Agreement, are required for the Debtors to execute the Purchase Agreement or consummate the transactions contemplated thereby.

Z.    <u>Valid and Binding Contract; Validity of Transfer</u>.    The Purchase Agreement is a valid and binding contract between the Debtors and Buyer and shall be enforceable pursuant to its terms.  The Purchase Agreement, the Ancillary Agreements, and the Sale Transaction itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 11 trustee appointed in these chapter 11 cases, or in the event these chapter 11 cases are converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.   The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

AA.    <u>No *Sub Rosa* Plan</u>.  The Sale Transaction, the Purchase Agreement, and the other transactions contemplated thereby do not constitute a *sub rosa* chapter 11 plan.  The Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating chapter 11 plan for the Debtors.

BB.    <u>Waiver of Bankruptcy Rules 6004(h) and 6006(d)</u>.  The Debtors have demonstrated (i) good, sufficient, and sound business purposes and justifications for approving the Purchase Agreement and the Sale Transaction and (ii) compelling circumstances for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement and all other Ancillary Agreements for the Sale Transaction outside of (a) the

- 17 -

ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, and (b) a chapter 11 plan, in that, among other things, the immediate consummation of the Sale Transaction to the Buyer and all transactions contemplated thereby are necessary and appropriate to maximize the value of the Debtors' estates.  Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transactions contemplated by this Order.  To maximize the value of the Purchased Assets and preserve the viability of the Business, it is essential that the Sale Transaction occur within the time constraints set forth in the Purchase Agreement.  Time is of the essence in consummating the Sale Transaction.  Given all of the circumstances of the chapter 11 cases and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale Transaction constitutes a reasonable and sound exercise of the Debtors' business judgment that should be, and hereby is, approved.

CC.    <u>Personally Identifiable Information</u>.    The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Motion.

DD.    <u>Legal and Factual Bases</u>.    The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.    Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest.

**IT IS HEREBY ORDERED THAT:**

1.    To the extent not already approved pursuant to the Bid Procedures Order, the Motion is GRANTED as set forth herein.

2.    <u>Objections</u>.    All objections, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the Purchase Agreement, all other Ancillary Agreements, the Sale Transaction, the entry of this Order, or the relief granted herein,

- 18 -

including, without limitation, any objections to Cure Costs or relating to the cure of any defaults under any of the Assumed Contracts or the assumption and assignment of any of the Assumed Contracts to the Buyer by the Debtors, including with respect to Buyer's ability to provide adequate assurance of future performance under the Assumed Contracts, solely as it relates to the relief granted by this Order that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits with prejudice, except as otherwise set forth herein. All persons and entities that failed to object timely to the Motion are deemed to have consented to the relief granted herein for all purposes.

3.    <u>Notice</u>.  Notice of the Motion, the Sale Hearing, the Purchase Agreement, the assumption and assignment of the Assumed Contracts, and the relief granted in this Order was fair, sufficient, proper, and equitable under the circumstances, and complied in all respects with sections 102(1), 363, and 365 of the Bankruptcy Code, rules 2002, 6004, and 6006 of the Bankruptcy Rules, the Bid Procedures Order, and other orders of the Court.

4.    <u>Fair Purchase Price</u>.  The consideration to be provided by Buyer under the Purchase Agreement is fair and reasonable and constitutes (a) reasonably equivalent value under the Bankruptcy Code, the Uniform Voidable Transactions Act, and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, and (d) valid and valuable consideration for the release of any potential Liens pursuant to this Order, which release shall be deemed to have been given in favor of Buyer by all holders of Liens of any kind whatsoever against all of the Debtors and all of the Purchased Assets, other than as otherwise expressly set forth in this Order.

- 19 -

5.      <u>Approval of the Purchase Agreement</u>.  The Purchase Agreement and the Sale Transaction, including, without limitation, all transactions contemplated therein or in connection therewith (including the Ancillary Agreements) and all of the terms and conditions thereof, are hereby approved in their entirety, subject to the terms and conditions of this Order. The failure specifically to include or make reference to any particular provisions of the Purchase Agreement in this Order shall not impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement, the Sale Transaction, and the transactions contemplated therein or in connection therewith (including the Ancillary Agreements) are authorized and approved in their entirety.

6.      <u>Consummation of Sale Transaction</u>.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under and comply with the terms of the Purchase Agreement and the Ancillary Agreements, pursuant to and in accordance with the terms and conditions of the Purchase Agreement, the Ancillary Agreements, and this Order.   The Debtors, as well as their affiliates, officers, employees, and agents, are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, the Ancillary Agreements, and the Sale Transaction, including the Ancillary Agreements, and to take all further actions and execute such other documents as may be (a) necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement, including, without limitation, making any regulatory filings necessary or advisable in connection with such transfer, and (b) as may be requested by Buyer to implement the Purchase Agreement and the Sale Transaction, in accordance with the terms thereof, without further order

- 20 -

of the Court.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Agreement, Ancillary Agreements, or any other Sale Transaction-related document.    The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order; provided, however, that the Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

7.    Direction to Government Agencies.    To the greatest extent allowable under applicable Law, each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other Governmental Entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction and the other transactions contemplated by the Purchase Agreement and the Ancillary Agreements and approved by this Order.

8.    Transfer of Assets Free and Clear and Injunction.    Upon the Closing, pursuant to sections 105(a), 363(b), 365(b), and 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets to Buyer shall (a) constitute a legal, valid, and effective transfer of all of Debtors' right, title, and interest in and to such Purchased Assets subject to and in accordance with the Purchase Agreement, (b) vest Buyer with all of the Debtors' right, title, and interest in and to such Purchased Assets, and (c) be free and clear of all Liens against the Debtors and the Purchased Assets (including Liens of any Governmental Entity), with such Liens attaching to the proceeds allocated to the Debtors in the order of their priority, with the same validity, force, and effect that they had against such Purchased Assets immediately prior to the Closing.  All persons

- 21 -

or entities that are presently, or on or after the Closing may be, in possession of some or all of the Purchased Assets, are hereby directed to surrender possession of the Purchased Assets to Buyer or its respective designees on the Closing Date or at such time thereafter as Buyer may request.

9.    Notwithstanding anything contained herein or in any other document, in accordance with the Purchase Agreement, all fee interests, rights-of-way, easements, real property interests, real rights, licenses, servitudes, permits, privileges, and leases (surface and subsurface) owned or held by the Debtors, or hereinafter acquired by the Debtors prior to the Closing, in each case, in connection with the Purchased Assets, constitute real property or a real property interest, and together with the rights, tenements, appurtenant rights and privileges related thereto (collectively, the "Real Property Interests"), shall, in accordance with the Purchase Agreement, be transferred to Buyer, directly or indirectly, at the Closing notwithstanding any consent rights, anti-assignment provisions, or any other provisions purporting to prohibit or condition the transfer or assignment of such Real Property Interests contained in such Real Property Interests, or in any other document, and all such rights, provisions, prohibitions, and conditions shall be void and of no force and effect with respect to the Sale Transaction.

10.    To the extent provided for in the Purchase Agreement, any and all of the Debtors' security deposits, or other security held by landlords, lessors, and other counterparties to the Assumed Contracts are being transferred and assigned to, and shall be the property of, the Buyer from and after the Closing, which transfer and assignment of security deposits, other deposits, or security shall satisfy in full the requirements of section 365(l) of the Bankruptcy Code for all contracts, leases, and licenses assumed and assigned pursuant to this Order or the Purchase Agreement.

11.     Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Purchased Assets to Buyer in accordance with the terms of the Purchase Agreement, the Ancillary Agreements, and this Order and (b) with the ability of the Buyer to acquire, take possession of, use, and operate the Purchased Assets in accordance with the terms of the Purchase Agreement, the Ancillary Agreements, and this Order.   Notwithstanding the foregoing, nothing in this Order or the Purchase Agreement shall prohibit any party from seeking to enforce or collect any of the Assumed Liabilities against the Buyer.

12.     Except as otherwise provided in the Purchase Agreement or herein, all Persons (and their respective successors and assigns) including, without limitation, the Debtors, the Debtors' estates, all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Liens (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated) against the Debtors or the Purchased Assets owned by the Debtors arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Purchased Assets by the Debtors prior to the Closing, or the Sale Transaction, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such Liens against Buyer, its affiliates, successors, assigns, its property, or the Purchased Assets, including, without limitation, taking any of the following actions with respect to any Liens: (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding,

- 23 -

against Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer, its affiliates, successors, assigns, assets (including the Purchased Assets), or properties; (c) creating, perfecting, or enforcing any Lien against Buyer, its affiliates, any of their respective successors, assigns, assets (including the Purchased Assets), or properties; (d) asserting a Lien as a setoff, right of subrogation, or recoupment of any kind against any obligation due against Buyer, its affiliates, or any of their respective successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof.   No such Person shall assert or pursue against Buyer or its affiliates, successors, or assigns any such Lien.

13.    <u>Licenses and Permits; Liquor Licenses</u>.  To the greatest extent allowable ~~available~~ under applicable Law, (a) the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, approval, grant, certificate of occupancy, state food service license, local occupational license, certificate of need, authorization, accreditation, operating permit, health inspection permit, registration, plan, or any similar governmental authorization or approval of the Debtors with respect to the Purchased Assets, including the Liquor Licenses (collectively, the "<u>Permits</u>"), (b) all such Permits are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date, and (c) each Governmental Entity that has issued or granted a Permit to, or for the benefit of, the Sellers shall be deemed to have consented to the transfer of such Permit to the Buyer as of the Closing Date.  To the maximum extent provided by section 525 of the Bankruptcy Code, no Governmental Entity may revoke or suspend any Permit sold, transferred, assigned, or conveyed, or deemed to be sold, transferred,

- 24 -

assigned, or conveyed, to the Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction. Notwithstanding the foregoing or anything to the contrary contained in this Order, the Purchase Agreement, or the Ancillary Agreements, the Debtors and Buyer are not entering into a transition agreement with respect to the Liquor Licenses (or otherwise) and as of the Closing Date the purchase and sale of alcohol shall be undertaken solely by the Buyer who will be solely responsible for the purchase and sale of alcohol related to the Continuing Restaurants.

14.     To the extent any Permit necessary for the operation of the Business at the Continuing Restaurants is not an assumable and assignable executory contract, the Buyer shall make reasonable efforts to apply for and obtain any such Permit promptly after the Closing Date. AllTo the greatest extent allowable under applicable law, all existing Permits applicable to the Continuing Restaurants, including but not limited to the Liquor Licenses, shall remain in place for the Buyer's benefit until either new Permits are obtained or existing Permits are transferred in accordance with applicable administrative procedures and to the extent any of the Continuing Restaurants are operated under any such Permits after the Closing Date, the Buyer shall fully indemnify the Debtors, or any successor in interest to the Debtors, including a chapter 11 trustee or chapter 7 trustee, for any and all costs and liabilities arising thereunder without limitation.

15.     With regard to the sale of alcohol at the Continuing Restaurants, pursuant to the Purchase Agreement, the Debtors and all other parties in interest shall cooperate fully with and support the Buyer in executing such applications and furnishing such documents as are necessary for the Buyer to obtain Liquor License Approvals at the Buyer's sole expense. For the avoidance of doubt, the Debtors shall have no post-Closing Date obligations to purchase or sell alcohol under the Liquor Licenses and all such sales shall be conducted by the Buyer, under

- 25 -

existing Liquor Licenses to the greatest extent allowable under applicable law.  Moreover, except for violations of Law unrelated to the transfer of ownership of the Purchased Assets occurring pursuant to the Purchase Agreement and this Sale Order, and to the greatest extent allowable under applicable law, including, but not limited to, section 525 of the Bankruptcy Code, all law enforcement and regulatory agencies shall not interrupt the Business conducted at the Continuing Restaurants, including the sale of alcohol by the Buyer either on its own behalf, or on behalf of one or more of the Debtors, without first obtaining relief from this Court.  TheTo the greatest extent allowable under applicable law, the Buyer may continue to operate at the Continuing Restaurants under existing Liquor Licenses and other Permits needed to operate at the Continuing Restaurants, with no interruption of the business conducted at the premises, until the Liquor License Approvals have been obtained and other Permits have been transferred or issued to the Buyer; provided, however, to the extent such operation by the Buyer under the existing Liquor Licenses gives rise to any liability against the Debtors the Buyer shall fully indemnify the Debtors, or any successor in interest to the Debtors, including a chapter 11 trustee or chapter 7 trustee, for any and all costs and liabilities arising therefrom.

16.      Possession of any and all alcohol Inventory shall be surrendered to the Buyer at the earliest of (a) immediately following Closing where allowed by applicable Law; (b) receipt by the Buyer of authorization from the applicable Governmental Entity where required by applicable Law; or (c) receipt by the Buyer of the applicable Liquor License or Liquor License Approval and the Debtors shall not purchase or sell alcohol Inventory after the Closing for the Buyers or any other party; provided that, notwithstanding the foregoing, legal possession of such Inventory shall not be surrendered to the Buyer if doing so would violate applicable law in each applicable jurisdiction.

- 26 -

17.     If, and only if, the real estate lease, dated as of June 10, 2014, between Liberty Maynard, L.L.C. and HopCat Ann Arbor, LLC, is not assumed and assigned to the Buyer or its designee in accordance with the Purchase Agreement on the Closing Date, the Michigan Class C Liquor License associated with such lease shall not be a Purchased Asset under the Purchase Agreement and shall be abandoned to Liberty Maynard, L.L.C. and HopCat Ann Arbor, LLC on the Closing Date.

18.     <u>No Successor or Other Derivative Liability</u>.  Upon the Closing, all Persons are permanently and forever prohibited from asserting against Buyer or the Purchased Assets any Lien arising under any theory of successor or transferee liability, de facto merger, or continuity liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated, or unliquidated.

19.     This Order shall be effective as a determination that, upon the Closing, all Liens as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated to the fullest extent permitted by applicable Law, and that the conveyances described herein have been effected.  In connection with the Closing, a certified copy of this Order may be filed and/or recorded with the appropriate filing agents, filing officers, administrative agencies or units, governmental departments, secretaries of state, federal, state, and local officials, and all other persons, institutions, agencies, and entities who may be required by operation of law, the duties of their office, or contract evidencing the release, cancelation, and termination provided herein of any Liens of record on the Purchased Assets prior to the date of this Order.

20.     Following the Closing, no holder of any Lien shall interfere with Buyer's title to or use or enjoyment of the Purchased Assets based on or related to any Lien or based on

- 27 -

any actions or omissions by the Debtors, including any actions or omissions the Debtors may take in these chapter 11 cases.

21.    If any Person that has filed statements or other evidence of Liens in respect of the Purchased Assets shall not have delivered to the Debtors before the Closing after due demand therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of such interests that such Person has or may assert with respect to the Purchased Assets, the Debtors or Buyer are authorized to execute and file such statements, instruments, releases, and other documents on behalf of such Person with respect to such Purchased Assets without any further Order of the Court.

22.    Except as expressly set forth in the Purchase Agreement or, the Ancillary Agreements or this Order, and except with respect to the Assumed Contracts, Buyer and each of its affiliates, successors, assigns, members, partners, officers, directors, principals, and shareholders shall have no liability whatsoever for any Liens, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether liquidated or unliquidated, whether asserted derivatively or vicariously, whether asserted based on Buyer's status as a transferee, successor, or otherwise, of any kind, nature, or character whatsoever, including Liens based on, relating to, or arising under, without limitation: (a) any employment or labor agreement; (b) any pension, welfare, compensation, or other Employee Benefit Plan, agreements, practices, and programs, including, without limitation, any pension or Employee Benefit Plan of or related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former employees of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any employee,

- 28 -

workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, any claims, rights, or causes of action that might arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the Worker Adjustment and Retraining Notification Act of 1988, (vi) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (vii) the Americans with Disabilities Act of 1990, (viii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (ix) state and local discrimination laws, (x) state and local unemployment compensation laws or any other similar state and local laws, (xi) state workers' compensation laws, or (xii) any other state, local, or federal employee benefit laws, regulations, or rules or other state, local, or federal laws, regulations or rules relating to, wages, benefits, employment, or termination of employment with any or all Debtors or any of their predecessors; (f) any antitrust laws; (g) any product liability or similar laws, whether state, federal, or otherwise; (h) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (i) any bulk sales or similar laws; (j) any federal, state, or local tax statutes, rules, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (k) any common law doctrine of de facto merger, successor, transferee, or vicarious liability, substantial continuity liability, successor-in-interest liability theory, or any other theory of or related to successor liability.

23.    Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the

Purchased Assets transferring good and marketable, indefeasible title to and interest in all of the Purchased Assets to Buyer pursuant to the terms of the Purchase Agreement.

24.     <u>Assumption and Assignment of the Assumed Contracts</u>.   Subject to and conditioned upon the Closing, the Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Contracts to Buyer free and clear of all Liens, and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Buyer as provided in the Purchase Agreement.  In accordance with the Bid Procedures Order and the terms of this Order, following the Closing, Buyer shall be fully and irrevocably vested with all of the Debtors' right, title, and interest in and under the Assumed Contracts, free and clear of any Liens, and each Assumed Contract shall be fully enforceable by Buyer in accordance with its respective terms and conditions, except as limited by this Order.  For the avoidance of doubt, nothing in this paragraph affects Buyer's right to re-designate an Assumed Contract for rejection in accordance with Section 2.6(b) of the Purchase Agreement.

25.     In connection with the assumption and assignment of the Assumed Contracts to Buyer in accordance with the terms of this Order and Section 2.6 of the Purchase Agreement, the Debtors are authorized, upon the written consent of Buyer, to enter into any amendment, modification, or similar agreement with a Counterparty to an Assumed Contract to modify the terms of such Assumed Contract prior to the effective date of assignment of such Assumed Contract to Buyer.

26.     <u>Adequate Assurance of Future Performance</u>.   All of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code, including without limitation, the demonstration of adequate assurance of future performance, have been satisfied for the

assumption by the Debtors, and the assignment by the Debtors to Buyer, solely with respect to the Assumed Contracts.  Buyer has satisfied its adequate assurance of future performance requirements with respect to the Assumed Contracts and has demonstrated it is sufficiently capitalized or otherwise able to comply with the necessary obligations under the Assumed Contracts.

27.    Cure Costs.  The Cure Costs set forth on **Exhibit A** annexed hereto (the "Final Cure Schedule") are the sole amounts, if any, necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code, except as otherwise agreed to in writing by the Buyer and the applicable Counterparty with respect to such Cure Cost, to cure all defaults and pay all actual losses under the Assumed Contracts.  To the extent a Counterparty to an Assumed Contract failed to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined as of the Debtors' filing of the Notice of Potential Assignment or if the cure amount was otherwise agreed to in writing between the Debtor and the Counterparty determined as set forth on the Final Cure Schedule, and any such Counterparty shall be barred, and forever prohibited from: (i) challenging, objecting to, or denying the validity and finality of the Cure Cost as of such datesthe Closing Date, and from(ii) asserting against the Debtors, their estates, Buyer, and their respective successors and assigns, any pecuniary loss resulting from a default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Assumed Contracts arising or incurred prior to the Closing before the Closing Date.

28.    Payment of Cure Costs.  Except as otherwise specifically provided for by order of the Court, or as otherwise agreed to in writing between the Debtor and the Counterparty, all defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing

- 31 -

prior to the Closing Date or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assumed Contracts (in each case, without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be promptly cured pursuant to the terms of the Purchase Agreement and this Order by the Debtors' payment of the applicable Cure Cost in accordance with the Purchase Agreement and as set forth on the Final Cure Schedule.  The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of such Assumed Contract.

28.    With respect to objections to any Cure Costs that remain unresolved as of the Sale Hearing, consideration of unresolved Cure Objections (as defined in the Bid Procedures Order) relating to assignment of Assumed Contracts, unless otherwise ordered by the Court or with the consent of the Counterparty to any Assumed Contract that is subject to a Cure Objection relating to such assignment, shall be adjourned to a date to be determined in advance of Closing; provided, however, that any Assumed Contract that is the subject of a Cure Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection.

29.    The respective Cure Costs set forth on **Exhibit A** hereto are the sole amounts, if any, necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code, except as otherwise agreed to by the Buyer and the applicable Counterparty with respect to such Cure Cost, to cure all defaults and pay all actual losses under the Assumed Contracts.

- 32 -

29.   ~~30.~~ Buyer's Standing; Debtors' Standing.  The Buyer shall have standing to object to the allowance of claims (as such term is defined in section 101(5) of the Bankruptcy Code) asserted against the Debtors or their estates including, without limitation, any unresolved or disputed Assumed Liabilities or otherwise, that constitute obligations assumed by the Buyer pursuant to the terms of the Purchase Agreement.  Nothing in this Order shall divest the Debtors of their standing or duty as debtors-in-possession under the Bankruptcy Code from reconciling claims asserted against the Debtors or their estates and objecting to any such claims that should be reduced, reclassified, or otherwise disallowed.

30.   ~~31.~~ *Ipso Facto* Clauses Ineffective.  With respect to the Assumed Contracts, in connection with the Sale Transaction: (a) the Debtors may assume each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtors may assign each Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each Assumed Contract have been satisfied; and (d) effective upon the Closing Date or any later applicable effective date with respect to a particular Assumed Contract, the Assumed Contracts shall be transferred and assigned to, and from and following the Closing or such later applicable effective date shall remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any Assumed Contract (including those of the type

- 33 -

described in sections 365(b)(2) and (e) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assumed Contract and the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assumption by the Debtors and assignment to the Buyer, except as otherwise provided in the Purchase Agreement.  To the extent any provision in any Assumed Contract assumed and assigned pursuant to this Order (x) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment (including, without limitation, any "change of control" provision), or (y) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (i) the commencement of the chapter 11 cases, (ii) the insolvency or financial condition of any of the Debtors at any time before the closing of the chapter 11 cases, (iii) the Debtors' assumption and assignment of such Assumed Contract, (iv) a change of control or similar occurrence; or (v) the consummation of the Sale Transaction, then such provision shall be deemed modified in connection with the Sale Transaction so as not to entitle the Counterparty to prohibit, restrict, or condition such assumption and assignment, to modify, terminate, or declare a breach or default under such Assumed Contract, or to exercise any other default-related rights or remedies with respect thereto, including without limitation, any such provision that purports to allow the Counterparty to terminate or recapture such Assumed Contract, impose any penalty, additional payments, damages, or other financial accommodations in favor of the Counterparty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.  All such provisions

- 34 -

constitute unenforceable anti-assignment provisions that are void and of no force and effect in connection with the Sale pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

32.    Buyer Backstop Amount.   In the event that, as of the Closing Date, the Buyer has not reached an agreement with (a) Gordon Food Service, Inc. ("GFS") to resolve the *Objection to Adequate Assurance of Future Performance Provided by Stalking Horse Bidder* [Docket No. 288] and the *Limited Objection to Notice of Assumption and Assignment of Executory Contract and Unexpired Leases* [Docket No. 228] or (b) an alternative foodservice distributor to materially fulfill the services and provision of goods that are currently fulfilled by GFS to the Debtors, the Debtors shall have the right to increase the Backstop Amount and the Excluded Cash Deficiency Amount to account for GFS's full cure amount.

31.    33. Use of PPP Cash.  From the date hereof through and including the Closing Date, the Sellers shall use the PPP Cash to (a) pay the Cure Amounts related to any Assumed Contract for Leased Real Property, and, to the extent there is any PPP Cash remaining, (b) use the remaining PPP Cash to pay the payroll (and any Taxes related thereto) of the Transferred Employees until no PPP Cash remains; provided, however, if (x) the Closing Date is after 12:01 a.m. (Eastern Time) on October 19, 2020 and (y) no PPP Cash remains, then the Buyer shall reimburse the Debtors' estates for each dollar of non-PPP Cash used for authorized PPP expenses (*e.g.*, rent, payroll, utilities, etc.) after 12:01 a.m. (Eastern Time) on October 19, 2020.  Notwithstanding anything in the Purchase Agreement or this Order to the contrary, and for the avoidance of doubt, to the extent this paragraph 33 31 conflicts with any other terms of the Purchase Agreement (including but not limited to Sections 2.1(a) 2.3(a), 2.3(d), and 5.9), the terms of this paragraph 33 31 shall prevail.

- 35 -

32.    The Debtors shall use commercially reasonable efforts to provide the Committee and any liquidating or chapter 7 trustee, as applicable, with all documentation necessary to seek forgiveness of any amounts outstanding under any loan received by the Debtors under the Coronavirus Aid, Relief and Economic Security Act's Paycheck Protection Program. The Debtors shall reasonably cooperate with the Committee and any liquidating or chapter 7 trustee, as applicable, in pursuing any application requirements for such forgiveness.

33.    34.  Wind-Down Budget.[3]    Upon the entry of an order closing(a) dismissing these chapter 11 cases, or (b) converting these chapter 11 cases to cases under chapter 7, to the extent there are any funds remaining in the Wind-Down Budget, such remaining funds shall be turned over to the Prepetition LendersSecured Lenders.  The Wind-Down Budget shall account for the aggregate allowed fees and expenses payable and/or reimbursable by the Debtors to the Committee's professionals, Sugar Felsenthal Grais & Helsinger, LLP, Jaffe Raitt Heuer & Weiss, P.C., and Amherst Partners, in an amount not greater than $299,297.00.  The aggregate allowed fees payable and expenses reimbursable by the Debtors to their retained professionals Pachulski Stang Ziehl & Jones LLP, Warner Norcross + Judd LLP, and Rock Creek Advisors, LLC, shall not be greater than 107.5 percent of the sum of total amounts budgeted to such professionals as set forth in the Wind-Down Budget.[4]  Additionally, Buyer shall assume all liabilities related to: (a) any Cure Costs associated with the assumption of the lease agreement between Ionia Ventures, LLC and debtor GRBC Holdings, LLC and (b) any credit card

---

[3]    For the avoidance of doubt, the Wind-Down Budget is predicated on the closing of the Sale Transaction occurring on or before October 19, 2020.  The Debtors, the Buyer and the Committee shall work in good faith to prepare a revised Wind-Down Budget in the event that the Sale Transaction fails to close on or before October 19, 2020.

[4]    For the avoidance of doubt, the fees payable and expenses reimbursable by the Debtors to Mastodon Ventures, Inc., shall not be subject to such permitted variance but shall, instead, be subject to the amounts approved by the *Order (I) Authorizing the Retention and Employment of Mastodon Ventures, Inc. as Investment Banker to the Debtors, Nunc Pro Tunc to the Petition Date, (II) Waiving the Information Requirements of Local Rule 2016-2(d), and (III) Granting Related Relief* [Docket No. 274], as reflected in the Wind-Down Budget.

DOCS_SF:104202.11

interchange fees and real estate property taxes in excess of the amounts set forth in the Wind-Down Budget.

34.    35.  Good Faith; Statutory Mootness.  Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.   The Sale Transaction contemplated by the Purchase Agreement and the Ancillary Agreements is undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein shall neither affect the validity of the Sale Transaction (including the assumption and assignment of the Assumed Contracts) nor the transfer of the Purchased Assets to Buyer, free and clear of all Liens pursuant to the Purchase Agreement.  The Debtors and Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Order.

35.    36.  No Avoidance of Purchase Agreement.  Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Purchase Agreement and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement or the Sale Transaction.

36.    37.  Modification of Purchase Agreement.  Subject to the terms of the Purchase Agreement and the Ancillary Agreements, as applicable, the Purchase Agreement, the Ancillary Agreements, and any related agreements, documents, or other instruments may be

- 37 -

modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof and this Order without further order of the Court; provided that; (a) notwithstanding any such modification, amendment, or supplement, the sale of the Purchased Assets to Buyer will still comply with the requirements of section 363 of the Bankruptcy Code; and (b) such modifications, amendment, or supplement is not inconsistent with this Order.

37.    38.  Record Retention.    Following the Closing, the Debtors, their successors and assigns, and any trustee in bankruptcy will have access to the Debtors' books and records for the specified purposes set forth in, and subject to the terms and limitations contained in, the Purchase Agreement. To the extent that the Debtors maintain books and records electronically, an electronic copy of such books and records shall remain with the Debtors after the Closing.

38.    39. Standing.  The Purchase Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

39.    40. Bulk Sales; Taxes.  No bulk sales law, bulk transfer law, or any similar law of any state or other jurisdiction shall apply to the Debtors' conveyance of the Purchased Assets or this Order.

40.    41. Reservation of Rights.   Nothing in this Order shall be deemed to waive, release, extinguish, or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including any right of recoupment), claim, cause of action, defense, offset, or counterclaim in respect of any asset that is not a Purchased Asset.  All of the provisions of this Order are non-severable and mutually dependent.   To the extent that this Order is inconsistent

- 38 -

with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall control.

41.   42.  Conflicts.   In the event there is a conflict between this Order and the Purchase Agreement (including any Ancillary Agreements executed in connection therewith), this Order shall control and govern.

42.   43.  Waiver of Bankruptcy Rules 6004(h) and 6006(d).   Notwithstanding the provisions of rules 6004(h) and 6006(d) of the Bankruptcy Rules or any applicable provisions of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Western District of Michigan, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen-day stay provided in rules 6004(h) and 6006(d) of the Bankruptcy Rules is hereby expressly waived and shall not apply, and the Debtors and Buyer are authorized and empowered to close the Sale Transaction immediately upon entry of this Order.

43.   44.  Personally Identifiable Information.   After giving due consideration to the facts, circumstances, and conditions of the Purchase Agreement, the Sale Transaction is consistent with the Debtors' privacy policies concerning personally identifiable information and no showing was made that the sale of any personally identifiable information contemplated in the Purchase Agreement, subject to the terms of this Order, would violate applicable non bankruptcy law.

44.   45.  Binding Effect of this Order.   This Order and the Purchase Agreement shall be binding in all respects upon, and shall inure to the benefit of, Buyer, the Debtors' estates, the Debtors, their affiliates, any trustee appointed in the Debtors' chapter 11 cases, all creditors (whether known or unknown) of any Debtor, all holders of interests in the Purchased Assets, all

- 39 -

interested parties, and their successors and assigns.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized to (a) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Purchase Agreement and the Ancillary Agreements and (b) perform under the Purchase Agreement and the Ancillary Agreements without the need for further order of this Court.

45.    46. Subsequent Plan Provisions.  Nothing contained in any chapter 11 plan confirmed in the Debtors' chapter 11 cases, any order confirming any such plan, or in any other order in these chapter 11 cases (including any order entered after any conversion of any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order shall alter, conflict with, or derogate from the provisions of the Purchase Agreement or this Order.

46.    47. Retention of Jurisdiction.   This Court retains exclusive jurisdiction with respect to all matters arising from or related to the Purchase Agreement (and such other related agreements, documents, or other instruments) and to interpret, implement, and enforce the terms of this Order.

47.    Prepetition Secured Lenders' Deficiency Claim.   Notwithstanding anything to the contrary contained in this Order or the Purchase Agreement, effective as of the Closing (but only if the Closing actually occurs), the Prepetition Lenders shall waive, and receive no distribution on account of, any and all unsecured deficiency claims with respect to the Prepetition Obligations.

48.    Additional Cash Consideration for Purchased Assets.   Notwithstanding anything to the contrary contained in this Order or the Purchase Agreement, as additional

- 40 -

consideration for the sale and transfer of the Purchased Assets, the Purchase Price shall include $225,000 in cash, payable by the Buyer to the Debtors on the Closing Date (but only if the Closing actually occurs), to be held in escrow until confirmation of a chapter 11 plan or conversion of these cases, and to be used exclusively by any chapter 11 trustee or chapter 7 trustee, acting on behalf of the Debtors' estates, as applicable, at his or her discretion, with any remainder to be distributed to creditors pursuant to the Bankruptcy Code.

49.     Debtors' Claims and Causes of Action.  Notwithstanding anything to the contrary contained in this Order or the Purchase Agreement, all Purchased Actions shall comprise Excluded Assets and shall not comprise Purchased Assets, except for any claims or causes of action against a trade vendor and/or service provider that the Buyer reasonably expects to provide goods and/or services to the Buyer upon and/or after the Closing Date, identified on **Exhibit C** attached hereto (each entity identified therein, an "Ongoing Business Party"), which claims and causes of action shall remain Purchased Assets under the Purchase Agreement; *provided* that Excluded Assets shall further include any claims and causes of action against a non-Debtor transferee of assets, including but not limited to any Ongoing Business Party, that received such assets from or at the direction of any director or officer (including, but not limited to, Mark Sellers) for the primary benefit of such director or officer individually.

50.     Releases.  Effective as of the Closing Date (but only if the Closing actually occurs), the Prepetition Secured Lenders, Administrative Agent, Buyer, Debtors, Committee, and members of the Committee (solely in their roles as Committee members and not as individual creditors) and their respective professionals (collectively, the "Release Parties") will be deemed released and discharged by each and all of the other Release Parties and the Debtors' estates from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities

- 41 -

whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Release Parties or the Debtors' estates, as applicable, whether known or unknown, foreseen or unforeseen, existing in law, equity, or otherwise, that the Release Parties or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Debtors or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors' bankruptcy cases, the Debtors' sale of assets to the Buyer in accordance with this Order and the Purchase Agreement, the Bid Procedures, Credit Bid, or any Sale Transaction or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Purchase Agreement, Ancillary Agreements, or this Order, including but not limited to any claims under section 506(c) of the Bankruptcy Code; *provided* that any right to enforce this Order and any right of estate professionals to seek allowance and payment of professional fees is not so released by this paragraph.

51.     Insurance Claims.  Nothing in the Purchase Agreement or this Order shall be construed to waive, release or otherwise impact any claims that the Buyer may have to pursue or receive the proceeds from claims under the Insurance Policies pursuant to Section 6.7 of the Purchase Agreement (excluding any directors' and officers' liability Insurance Policies). Nothing in the Purchase Agreement or this Order shall be construed to waive, release or otherwise impact any claims that a chapter 11 or chapter 7 trustee may pursue on behalf of the Debtors' estates with respect to the Debtors' directors and officers or their directors and officers Insurance Policies.

52.     U.S. Trustee Fees.  The U.S. Trustee shall not assess, claim, or seek to charge any of the Debtors, their estates, the Buyer, the Administrative Agent, or the Prepetition

- 42 -

Secured Lenders for any fees or charges related to or arising from any Sale Transaction approved by this Order.

Dated: _____, 2020
       Grand Rapids, Michigan

_____
The Honorable James W. Boyd
United States Bankruptcy Judge

- 43 -

# **<u>EXHIBIT C</u>**

**Comparison of Cure Amounts**

## EXECUTORY CONTRACTS

| Debtor | Counter Party | Contract Description | Cure Amount in Assumption Notice | Agreed Upon Cure for Sale Order |
|---|---|---|---|---|
| Barfly Ventures, LLC | Accident Fund Insurance Company of Am | Workers Compensation Insurance | $0.00 | $0.00 |
| Barfly Ventures, LLC | Admiral Insurance Company | Excessive Liability Insurance | $0.00 | $0.00 |
| Hopcat Beltline | ArrowWaste Inc. | Trash and recycling services | $0.00 | $0.00 |
| GRBC Holdings, LLC | ArrowWaste Inc. | Trash and recycling services | $0.00 | $0.00 |
| 50 Amp Fuse, LLC | ArrowWaste Inc. | Trash and recycling services | $0.00 | $0.00 |
| Hopcat Grand Rapids | ArrowWaste Inc. | Trash and recycling services | $0.00 | $0.00 |
| Barfly Ventures, LLC | AvidXchange Inc. | Payment network services | $4,979.55 | $0.00 |
| Barfly Ventures, LLC | Blackhawk Network | Gift cards | $0.00 | $0.00 |
| Hopcat Holland | Coverall of Western Michigan | Janitorial services | $1,029.75 | $0.00 |
| Barfly Ventures, LLC | DoorDash, Inc. | delivery services | $0.00 | $0.00 |
| Hopcat Broad Ripple | DVCLEANINDY, LLC | Cleaning services | $8,822.29 | $0.00 |
| Barfly Ventures, LLC | ECOLAB | warehousing, housekeeping, laundry, and other cleaning and santizing chemical products | $16,929.29 | $16,929.29 |
| Barfly Ventures, LLC | eFileCabinet | document management software services | $0.00 | $0.00 |
| Barfly Ventures, LLC | Egencia LLC | Travel services/assisted booking | $0.00 | $0.00 |
| EL Brewpub | Enviro - Master of West Michigan | Janitorial | $422.69 | $0.00 |
| Hopcat Beltline | Enviro - Master of West Michigan | Janitorial | $422.69 | $0.00 |
| Hopcat Kalamazoo | Enviro - Master of West Michigan | Janitorial | $422.69 | $0.00 |
| GRBC Holdings | Enviro - Master of West Michigan | Janitorial | $422.69 | $0.00 |
| Hopcat Grand Rapids | Enviro - Master of West Michigan | Janitorial | $422.69 | $0.00 |
| Stellas | Enviro - Master of West Michigan | Janitorial | $422.69 | $0.00 |

| | | | | |
|---|---|---|---|---|
| Barfly Ventures, LLC<br>50 Amp Fuse, LLC<br>GRBC Holdings, LLC<br>9 Volt, LLC<br>Hopcat Ann Arbor, LLC<br>Hopcat Detroit, LLC<br>EL Brewpub, LLC<br>Hopcat Lexington, LLC<br>Hopcat Indianapolis<br>Hopcat Kansas City<br>Hopcat Lincoln<br>Hopcat Madison | Gordon Food Service | Food distribution | $1,723,235.78 | $750,000 ($250,000 at Closing to be paid by Debtor and $500,000 promissory note to be paid by the Buyer and subject to final documentation) |
| Barfly Ventures, LLC | HotSchedules.com, Inc | scheduling software | $8,046.40 | $16,968.00 |
| Hopcat Lincoln | Huskers IMG Sports Marketing | marketing and sponsorship | $0.00 | $0.00 |
| Barfly Ventures, LLC | Indian Harbor Insurance Company | Umbrella Insurance | $0.00 | $0.00 |
| EL Brewpub LLC | My Green Michigan LLC | Composting services | $14,823.00 | $0.00 |
| Barfly Ventures, LLC | NCR Corporation | IT software | $6,014.64 | $0.00 |
| Barfly Ventures, LLC | NCR Corporation | cloud applications | $6,014.64 | $0.00 |
| Barfly Ventures, LLC | NCR Corporation | CMC software | $6,014.64 | $0.00 |
| Barfly Ventures, LLC | NCR Corporation | remove loyalty | $6,014.64 | $0.00 |
| Barfly Ventures, LLC | Nexonia Technologies Inc. | expense management software | $0.00 | $0.00 |
| Barfly Ventures, LLC | OLO | delivery application | $4,930.14 | $0.00 |
| Barfly Ventures, LLC | Paytronix Systems, Inc. | IT software services | $17,535.93 | $17,535.93 |
| Barfly Ventures, LLC | Pepsi Beverages Company | Pepsi beverages exclusively | $0.00 | $0.00 |
| GRBC Holdings, LLC | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |
| Hopcat Ann Arbor | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |

| | | | | |
|---|---|---|---|---|
| Hopcat Beltline | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |
| Hopcat Broad Ripple | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |
| Hopcat Detroit | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |
| EL Brewpub LLC | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |
| Hopcat Grand Rapids | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |
| Hopcat Kalamazoo | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |
| Hopcat Lincoln | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |
| 50 Amp Fuse, LLC | POSitive Solutions Group | phone support and POS hardware maintenance | $5.00 | $5.00 |
| Barfly Ventures, LLC | Red Bull North America, Inc. | energy drink distribution and exclusivity | $0.00 | $0.00 |
| Hopcat Detroit | Republic Services | trash and recycling services | $0.00 | $0.00 |
| Barfly Ventures, LLC | Round It Up America, Inc. | charitable donation collections | $0.00 | $0.00 |
| GRBC Holdings | Swept Away | Janitorial | $1,635.00 | $0.00 |
| Grand Rapids | Swept Away | Janitorial | $1,635.00 | $0.00 |
| Stellas | Swept Away | Janitorial | $1,635.00 | $0.00 |
| Hopcat Beltline | Swept Away | Janitorial | $1,635.00 | $0.00 |
| Barfly Ventures, LLC | TBX | menu design | $0.00 | $0.00 |
| Barfly Ventures, LLC | Untappd | marketing services | $4,432.75 | $0.00 |
| EL Brewpub LLC | Waste Management of Michigan | Trash and recycling services | $1,922.62 | $0.00 |
| Barfly Ventures, LLC | Yelp Inc | advertising services | $8.22 | $8.22 |
| Barfly Ventures, LLC | Travelers | General Liability Insurance | $0.00 | $0.00 |
| Barfly Ventures, LLC | Travelers | Automobile Insurance | $0.00 | $0.00 |

## ADDITIONAL EXECUTORY CONTRACTS

| Debtor | Counter Party | Contract Description | Cure Amount |
|---|---|---|---|
| BarFly Ventures | 58 Ionia Holdings, LLC | Equipment Lease for equipment located in Detroit restaurant | $4,165.00 |
| BarFly Ventures | Compeat | Back office software provider | $0.00 |
| BarFly Ventures | Wisely | Reservation / Table Mgmt. Software | $0.00 |

## UNEXPIRED REAL PROPERTY LEASES

| Debtor | Counter Party | Cure Amount in Assumption Notice | Filed Objection | Cure Amount in Sale Order |
|---|---|---|---|---|
| GRBC Holdings | Ionia Ventures, LLC | $54,004.08 | Yes, Dkt. 259 | $86,420.96 |
| Hopcat-Detroit | 4265 Woodward Ventures LLC | $23,515.64 | No | $23,515.64 |
| Hopcat-Grand Rapids | Lee Shore-Lemon Wheeler Building | $48,764.37 | No | $48,764.37 |
| Hop Cat-Ann Arbor | Liberty Maynard LLC | $89,251.75 | Yes, Dkt. 220 | $50,986.80 |
| Hopcat-E. Lansing/EL Brewpub | A&G Partnership | $52,323.21 | Yes, Dkt. 216 | $58,301.54 |
| Hopcat-E. Beltine | JK East Beltline Real Estate | $55,030.38 | Yes, Dkt. 223 | $61,451.39 |
| Hopcat-Holland | Greenen Dekock Properties, LLC | $46,640.25 | No | $23,320.13 |
| Hopcat-Indianapolis | 6280 LLC | $100,932.65 | No | $102,312.12 |
| Hopcat-Kalamazoo | GTW Depot, LLC | $54,894.59 | No | $54,894.59 |
| Hopcat-Lincoln | Project Oscar, LLC | $51,139.17 | Yes, Dkt. 217 | $50,733.66 |
| Stellas's/50 Amp Fuse LLC | 50 Commerce Building, LLC | $28,211.60 | No | $20,000.00 |