## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re:<br><br>BARFLY VENTURES, LLC, *et al*,[1]<br><br>                 Debtors. | Chapter 11<br><br>Case No. 20-01947-jwb<br><br>*Jointly Administered* |

**JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE ENTRY OF AN ORDER (I) SUBSTANTIVELY CONSOLIDATING THE DEBTORS' ESTATES; (II) AUTHORIZING THE WIND DOWN OF THE ESTATES; (III) AUTHORIZING THE REJECTION OF CONTRACTS AND LEASES; AND (IV) AUTHORIZING THE DEBTORS TO CERTIFY THAT THE ESTATES MAY BE CONVERTED TO CHAPTER 7**

> **IF YOU HAVE RECEIVED THIS MOTION AND ARE A COUNTERPARTY TO AN AGREEMENT WITH BARFLY VENTURES, LLC OR ANY OF ITS DEBTOR AFFILIATES LISTED BELOW, PLEASE REVIEW THIS MOTION IN ITS ENTIRETY TO DETERMINE IF THIS MOTION AFFECTS YOUR AGREEMENT AND YOUR RIGHTS THEREUNDER**

The debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee," and, together with the Debtors, the "Movants") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") respectfully request the entry of an order, substantially in the form attached hereto as Exhibit A (the "Initial Order"): (a) substantively consolidating the Debtors' estates; and (b) authorizing the Debtors to

---

[1] The Debtors are: Barfly Ventures, LLC (8379), Barfly Management, LLC (6274), 9 Volt, LLC (d/b/a HopCat) (1129), 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684), GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130), E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334), HopCat-Ann Arbor, LLC (5229), HopCat-Chicago, LLC (7552), HopCat-Concessions, LLC (2597), HopCat-Detroit, LLC (8519), HopCat-GR Beltline, LLC (9149), HopCat-Holland, LLC (7132), HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970), HopCat-Kalamazoo, LLC (8992), HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242), HopCat-Lexington, LLC (6748), HopCat-Lincoln, LLC (2999), HopCat- Louisville, LLC (0252), HopCat-Madison, LLC (9108), HopCat-Minneapolis, LLC (8622), HopCat-Port St. Lucie, LLC (0616), HopCat-Royal Oak, LLC (1935), HopCat-St. Louis, LLC (6994), Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).

wind down their affairs in accordance with the Wind-Down Budget (defined below); and (c) authorizing, after certification of counsel that the milestones described herein have been fully satisfied, the entry of an order, substantially in the form attached hereto as Exhibit B (the "Conversion Order"), authorizing the rejection of any unexpired leases or executory contracts to the extent not assumed and assigned or rejected by prior order of the Court and converting the Chapter 11 Cases to chapter 7.

Following the successful sale of substantially all of the Debtors' assets, the Movants submit that substantive consolidation and the wind-down of the Debtors' estates, followed by conversion to chapter 7, is the most practical and cost-effective means to bring closure to the administration of the estates. Therefore, in support of this motion (the "Motion"), the Movants respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested herein are sections 105(a), 365(a), and 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code").

**BACKGROUND**

**A.    Case Background**

3.      On June 3, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

4.     On June 23, 2020, the Office of the United States Trustee for Region 3 and Region 9, pursuant to section 1102(a)(1) of the Bankruptcy Code, appointed the Committee.

B.     **Company Background**

5.     The Debtors' business was founded in 2008 with the opening of HopCat in Grand Rapids, Michigan, a specialty casual food and bar concept with craft beer and made-from-scratch kitchen cooking. As of the Petition Date, the Debtors had seventeen (17) HopCat locations across eight states (including Michigan, Minnesota, Wisconsin, Nebraska, Indiana, and Kentucky) as well as Grand Rapids Brewing Co. and Stella's Lounge, both located in downtown Grand Rapids.

6.     The factual background regarding the Debtors, including their historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Mark Sellers in Support of First Day Pleadings* [Docket No. 4] and incorporated herein by reference.

C.     **The Sale Process**

7.     As noted in the First Day Declaration, the Debtors commenced these Chapter 11 Cases with the goal of pursuing a going concern sale to maximize the value of their assets for the benefit of creditors. On July 09, 2020, the Debtors filed a motion [Docket No. 127] seeking the entry of an order establishing sale procedures and the approval of a sale of substantially all of their assets to the highest and best bidder. On July 22, 2020, the court entered an order [Docket No. 184] (the "Bidding Procedures Order") establishing procedures regarding the sale of the Debtors' assets.

8.     On September 16, 2020, the Debtors filed a *Notice of (I) Cancellation of Auction, (II) Selection of Successful Bidder, and (III) Rescheduled Sale Hearing* [Docket No. 314],

informing parties in interest that Project BarFly LLC (the "Purchaser"), an affiliate of the Debtors' prepetition secured lender (the "Lender"), was the only party to submit a qualified bid and that the previously scheduled auction would be cancelled.

9.      On September 23, 2020, the United States Trustee and the Committee filed objections to the proposed sale of the Debtors' assets to the Purchaser.  After a contested hearing on September 25, 2020, the Debtors, the Committee, the Purchaser, the Lender, and the United States Trustee participated in a mediation process which culminated in a global settlement (described more fully below) among the parties.

10.      On October 15, 2020, the Court entered its *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (I) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 363] (as amended at Docket No. 376, the "Sale Order"). Pursuant to the Sale Order, the Court approved the sale (the "Sale") of substantially all of the Debtors' assets to Project BarFly LLC (the "Purchaser") on the terms set forth in that certain *Asset Purchase Agreement* dated July 9, 2020 [Docket No. 376, Ex. B] (as amended, the "APA").

11.      The Sale closed on October 26, 2020 at 12:01 a.m. (Eastern Time). As a result, the Debtors are no longer operating their businesses and have transferred substantially all of their assets to the Purchaser; provided, however, pursuant to the APA, Michigan Management Agreement (the "Management Agreement"), and Transition Services Agreement (the "Transition Agreement" and together with the Management Agreement, the "Transition Services Agreements"), the Debtors are required to provide certain transition services to the Purchaser,

including, among other things, the purchase and sale of alcohol inventory at certain restaurant locations until appropriate liquor licenses can be obtained by the Purchaser.

**D.    The Global Settlement and Wind-Down Budget**

12.    As discussed above, the Debtors, the Committee, the Purchaser, the Lender, and the United States Trustee engaged in extensive arm's length negotiations regarding the Sale. These negotiations resulted in a global settlement, which was read into the record at a status conference before the Court on October 9, 2020 and whose terms were incorporated into the Sale Order (the "Global Settlement").   In pertinent part, the Global Settlement provides for (a) the retention by the estates of chapter 5 causes of action against parties the Purchaser will not be doing business with on a going forward basis, (b) the retention by the estates of causes of actions against the Debtors' insiders, including causes of actions against the Debtors' directors and officers, (c) a waiver of the Lender's approximate $13 million deficiency claim, (d) a chapter 7 expense fund of $225,000.00, (e) mutual releases among the Debtors, Committee, Lender, and the Purchaser, and (f) a wind-down budget (the "Wind-Down Budget") sufficient to fund the projected wind down costs of the Debtors and to pay the projected chapter 11 administrative claims in full.

**E.    The Claims Against the Debtors' Estates**

13.    Both before and after the Petition Date, the Debtors interacted with creditors as a single unit. Shortly after the Petition Date, the Court authorized the Debtors to file a consolidated list of creditors and maintain a consolidated Creditor Matrix [Docket No. 61]. The majority of the claims against the Debtors' estates were scheduled against Barfly Ventures, LLC. For example, Schedule F (general unsecured claims) of the schedule of assets and liabilities for Barfly Ventures, LLC reflects general unsecured claims totaling approximately $9.4 million. *See*

Docket No. 130. These claims were augmented or superseded by creditors filing individual proofs of claim.

14.     The schedules of assets and liabilities of the other Debtors reflect that the general unsecured claims are nominal. In fact, Schedule F for each of the other Debtors reflects an average *total* general unsecured claims pool of approximately $150,000.

15.     In summary, as reflected above, approximately 75% of the amount of general unsecured claims in these jointly-administered cases was scheduled against Barfly Ventures, LLC, while 25% of the remaining amount of claims was scheduled against the other Debtors.

## F.     Rejection of Unexpired Leases and Executory Contracts

16.     Now that the Debtors have sold substantially all of their assets and no longer have any business operations, the Movants want to ensure that all of the Debtors' contractual obligations are rejected pursuant to section 365 of the Bankruptcy Code prior to the conversion of these chapter 11 cases.

## G.     Dissolution of the Debtors

17.     As noted above, the Debtors have sold substantially all of their assets and are no longer operating their businesses, except as provided pursuant to the Transition Services Agreements. As a result, it is no longer necessary for the Debtors to maintain a corporate existence, except as required under the Transition Services Agreements.   Under these circumstances, the Movants submit that dissolving the Debtors under applicable state law should be authorized to the extent permitted under the Transition Services Agreements.

## RELIEF REQUESTED

18.     By this Motion, the Movants respectfully request the entry of the Initial Order (a) substantively consolidating the Debtors' estates; (b) authorizing the Debtors' officers to wind

down their affairs in accordance with the Wind-Down Budget; and (c) authorizing, after certification of counsel that milestones described herein have been fully satisfied, entry of the Conversion Order.

## BASIS FOR RELIEF

### A.    Substantive Consolidation of the Debtors' Estates Is In Creditors' Best Interest

19.    While substantive consolidation was not codified in the Bankruptcy Code, bankruptcy courts retain the necessary authority to substantively consolidate the estates of affiliated debtors. *Spradlin v Beads & Steeds Inns, LLC (In re Howland)*, 674 F. App'x 482, 488 (6th Cir. 2017); *see also In re Bonham*, 229 F.3d 750, 763 (9th Cir. 2000) (citing *In re Reider*, 31 F3d 1102, 1107 (11th Cir. 1994). To this end, a bankruptcy court's power to invoke substantive consolidation derives from its general equity powers expressed from section 105 of the Bankruptcy Code.[2] *Bonham*, 229 F.3d at 764. The effect of substantive consolidation is to create a single fund from which claims against each debtor are satisfied, eliminating all intercompany and guarantee claims. *Howland*, 674 F. App'x at 488.

20.    When making a determination whether to substantively consolidate the estates of more than one debtor, the Sixth Circuit adopted the test articulated by the Second Circuit in *In re Augie/Restivo Baking Co*., 860 F.2d 515 (2d Cir. 1988), which looks to one of the following two factors: (1) the creditors dealt with the entities as a single unit and did not rely on their separate identity in extending credit; or (2) the affairs of the debtor are so entangled that consolidation will benefit all creditors because untangling is either impossible or so costly as to consume the assets. *Howland*, 674 F. App'x at 488.

---

[2]    Section 105(a) states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

21.     The Movants believe that the facts and circumstances of these Chapter 11 Cases support substantive consolidation. Substantive consolidation will bring all of the Debtors' assets and liabilities into one pool and one consolidated estate. Accordingly, it will avoid the possibility of over 20 separate chapter 7 estates with potentially differing interests and thereby greatly ease estate administration and the cost arising therefrom. Among other things, it will eliminate potential costly disputes over how to untangle the remaining assets among the estates. It also will ease claims administration by eliminating numerous questions and potential disputes over claims that are misfiled against the wrong estate and the enforcement of guarantees or other overlapping or duplicative claims. Simply stated, it will be more efficient (in terms of time and expense) to administer claims on a consolidated basis, rather than debtor-by-debtor.  As discussed above, the Global Settlement provides the chapter 7 trustee with a working fund of $225,000.   By substantively consolidating these Chapter 11 Cases prior to conversion, the Movants submit that administrative costs of the chapter 7 estates will be lowered, preserving critical resources for the chapter 7 trustee to prosecute the estates' causes of action.

22.     In the end, the Movants recognize that the distributions in these cases will not be substantial. Particularly in that context, the Movants believe that creditors will not be unduly prejudiced by substantive consolidation and instead will benefit because, absent consolidation, the remaining cash will be exhausted by administrative expenses (including fees arising out of disputes over asset allocation and claims administration), only to possibly be allocated among a handful of Debtors that generated the most value, even though they were operated as a consolidated enterprise.

23.     Substantive consolidation also will promote equal treatment of creditors and avoid potentially unjust results. Substantive consolidation will permit all creditors to share in any

litigation recoveries, regardless of the particular estate to which they extended credit. Substantive consolidation also will eliminate potential problems and unjust results over misfiled claims and duplicate claims.

24.     In summary, the Movants believe that substantive consolidation will be fair to the creditors as a whole and, indeed, more fair than in the absence of consolidation. It will avoid substantial cost and confusion that might be incurred over how to allocate value, which would likely exhaust the remaining cash and eliminate any possible distribution to creditors.

**B.    The Court Should Authorize the Debtors to Wind Down Their Affairs**

25.     Because the Debtors have sold substantially all of their assets and ceased operations, it is appropriate and necessary for the Court to authorize the Debtors to wind down their affairs, as contemplated by the Wind-Down Budget.

26.     Pursuant to the Sale Order, the Court authorized the establishment of the Wind-Down Budget, which contemplates, among other things, filing tax returns, dissolving the Debtors' 401(k) plan, and remitting collected sales taxes.

27.     Under the circumstances, the Movants believe it is appropriate for the Court to authorize the Debtors' to take all reasonable action necessary to wind down their affairs as soon as reasonably practicable following entry of the Initial Order and, to the extent appropriate, after completion of their services under the Transition Services Agreements.

**C.    Debtors Should be Authorized to Reject All Unexpired Leases and Contracts**

28.     Section 365(a) of the Bankruptcy Code provides that a trustee or debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992). "This provision allows a trustee to relieve the

bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Muerexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)).

29.     The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the trustee. *See NLRB v. Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *see also JRT, Inc. v. TCBY Systems, Inc.* (*In re JRT, Inc.*), 121 B.R. 314, 321 (Bankr. W.D. Mich. 1990) ("In determining whether a contract is burdensome, courts have utilized a business judgment test."). The business judgment standard mandates that a court approve a trustee's business decision unless the decision is the product of bad faith, whim or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

30.     Rejection of an executory contract or unexpired lease is appropriate when rejection of the contract would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989). The standard for rejection is satisfied when a trustee or debtor has made a business determination that rejection will benefit the estate. *See Commercial Fin. Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985) ("under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate.").

31.     If the trustee's or debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 462 U.S. at 523; *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).

32.     In applying the business judgment standard, courts show great deference to the trustee's or debtor's decisions to reject. *See e.g., NRLB V. Bildisco & Bildisco*, 462 U.S. at 523 (1984); *In re Federal Mogul Global, Inc*., 293 B.R. 124, 126 (D. Del. 2003) (court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

33.     Pursuant to section 365(a) of the Bankruptcy Code, upon conversion of these chapter 11 cases, the Movants seek to reject any and all unexpired leases and executory contracts that were not previously assumed and assigned or rejected by order of the Court.  Given that the Debtors no longer operate a business, it is crucial they avoid the possibility of incurring any additional expenses and costs. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 530 (stating that rejection relates back to the petition date).

34.     The relief requested herein is in the best interest of the Debtors' estates and creditors because the Debtors no longer require any of the unexpired leases or executory contracts that might remain, and the Debtors, in the exercise of their business judgment, do not believe that that there is any remaining net economic value in such agreements.

**D.    Conversion to Chapter 7 will Preserve Estate Resources**

35.    Finally, upon the completion of the milestones described below, conversion will best preserve the remaining cash and maximize distributions to claimants because a plan of liquidation will unnecessarily consume resources that could otherwise be used to pay claims. Pursuant to section 1112(b) of the Bankruptcy Code, a court must convert a chapter 11 case to a chapter 7 case for cause on request of a party in interest and after notice and a hearing. Section 1112(b) of the Bankruptcy Code provides in pertinent part that:

> (b) (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, **the court shall convert a case** under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b) (emphasis added).  Section 1112(b)(4) defines "cause" for purposes of conversion as existing when there is both continuing loss to, or diminution of, the estate and the absence of a reasonable likelihood of rehabilitation. *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994). Diminution of an estate exists where, for example, the debtor's business has ceased or the debtor's liabilities outstrip its assets. *Id.* at 606.

36.    A debtor lacks "a reasonable likelihood of rehabilitation" when, for example, it lacks income, operating funds, employees, or "continuing revenue-generating activity." *See id*. at 606-07, 609; *In Great American Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992) (debtor lacked operating funds). Moreover, the fact that a liquidating plan could conceivably be proffered should not result in a finding that "a reasonable likelihood of rehabilitation" exists. "Although the Bankruptcy Code contemplates liquidating plans of reorganization in certain circumstances, the Court cannot equate the determination of whether

[the debtor] possesses a reasonable likelihood of rehabilitation with [the debtor's] ability to effectuate a liquidating plan." *Citi-Toledo Partners*, 170 B.R. at 607.

37.     As detailed above, the Debtors' estates will have minimal ability to pay accruing fees, expenses, and other obligations. The assets of the Debtors' estates are diminishing, there is no additional liquidity, and there is no viable or meaningful prospect of reorganization. The pursuit and liquidation of assets in chapter 11 serves no real purpose and will likely cost more than if handled by a chapter 7 trustee.

38.     Additionally, conversion to chapter 7 is clearly in the best interests of creditors – and supported by the Committee. Not only will such conversion reduce and minimize administrative costs of these cases, but it will preserve to the Debtors' estates the statutory powers granted under the Bankruptcy Code that may enable a trustee to recover assets through avoidance actions.

### E.     The Conversion Milestones

39.     The conversion of the Chapter 11 Cases to chapter 7, and submission of the proposed Conversion Order to the Court for its consideration, should be subject to certification of the Debtors' counsel that the following milestones have been completed (the "Conversion Milestones"):

- All quarterly fees of the United States Trustee owed in connection with the Chapter 11 Cases have been paid in full and all Monthly Operating Reports have been filed.

- The professional fees incurred in the Chapter 11 Cases have been approved on a final basis (to the extent applicable) and paid in full, or as otherwise agreed to by the professionals.

- All PACA and section 503(b)(9) administrative expense claims identified on Exhibit C annexed hereto have been paid in full, or as otherwise agreed to by the claimants.

- All services of the Debtors under the Transition Services Agreements have been rendered and the Transition Services Agreements have been terminated.

- Submission of a forgiveness application with respect to the PPP Loan.

40.    As soon as reasonably practicable following the filing of a certification of counsel stating that the foregoing conditions precedent to conversion have been met (the "Certification"), the Movants request that the Court enter the Conversion Order, substantially in the form submitted herewith as Exhibit B.

41.    The Debtors will serve the Certification on the United States Trustee and all entities that have requested notice pursuant to Bankruptcy Rule 2002 but will not send the Certification to all of the Debtors' creditors and equity holders and parties in interest, as such parties will receive reasonable notice of the proposed conversion through the notice of hearing for this Motion.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court grant the relief requested herein and issue and enter the affixed Initial Order and granting such other and further relief as this Court deems just, proper, and equitable.

*[Remainder of page intentionally left blank]*

Dated: November 12, 2020

**WARNER NORCROSS + JUDD LLP**

/s/ *Elisabeth M. Von Eitzen*
Rozanne M. Giunta (P29969)
Stephen B. Grow (P39622)
Elisabeth M. Von Eitzen (P70183)
1500 Warner Building
150 Ottawa Avenue, NW
Grand Rapids, Michigan 49503
Telephone: (616) 752-2000

-and-

**PACHULSKI STANG ZIEHL & JONES LLP**

John W. Lucas
Jason Rosell
Steven W. Golden
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 263-7000

*Counsel to the Debtors*

**JAFFE RAIT HEUER & WEISS, P.C.**

By: /s/ *Paul R. Hage*
Paul R. Hage (P70460)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
phage@jaffelaw.com

-and-

**SUGAR FELSENTHAL GRAIS & HELSINGER, LLP**

Michael A. Brandess
30 N. LaSalle Street, Suite 3000
Chicago, IL 60602
(312) 704-9400
mbradness@sfgh.com

*Counsel for the Official Committee of Unsecured Creditors of Barfly Ventures, LLC et al.*

**Exhibit A**

**Proposed Initial Order**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

BARFLY VENTURES, LLC, *et al*,[1]

                  Debtors.

Chapter 11

Case No. 20-01947-jwb

*Jointly Administered*

ORDER (I) SUBSTANTIVELY CONSOLIDATING THE DEBTORS' ESTATES; (II) AUTHORIZING THE WIND DOWN OF THE ESTATES; AND (III) AUTHORIZING THE DEBTORS TO CERTIFY THAT THE ESTATES MAY BE CONVERTED TO CHAPTER 7

This matter came before the Court on the *Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for an Order (I) Substantively Consolidating the Debtors' Estates; (II) Authorizing the Wind Down of the Estates; (III) Authorizing the Rejection of Contracts and Leases; and (IV) Authorizing the Debtors to Certify that the Estates May Be Converted to Chapter 7* [Docket No. __] (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") and the Official Committee of Unsecured Creditors, and it appearing that the relief requested is in the best interest of the Debtors' estates, their creditors, and all other parties in interest; and it appearing that due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and

---

[1]    The Debtors are: Barfly Ventures, LLC (8379), Barfly Management, LLC (6274), 9 Volt, LLC (d/b/a HopCat) (1129), 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684), GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130), E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334), HopCat-Ann Arbor, LLC (5229), HopCat-Chicago, LLC (7552), HopCat-Concessions, LLC (2597), HopCat-Detroit, LLC (8519), HopCat-GR Beltline, LLC (9149), HopCat-Holland, LLC (7132), HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970), HopCat-Kalamazoo, LLC (8992), HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242), HopCat-Lexington, LLC (6748), HopCat-Lincoln, LLC (2999), HopCat- Louisville, LLC (0252), HopCat-Madison, LLC (9108), HopCat-Minneapolis, LLC (8622), HopCat-Port St. Lucie, LLC (0616), HopCat-Royal Oak, LLC (1935), HopCat-St. Louis, LLC (6994), Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).

[2]    A capitalized term used but defined herein shall have the meaning ascribed to such term in the Motion.

the Court having jurisdiction to consider the Motion and the relief requested in the Motion under 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested in the Motion being a core proceeding under to 28 U.S.C. § 157(b); and venue being proper in this District under 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted.

2.     The Debtors' estates are hereby consolidated for all purposes.

3.     If a primary claim filed against one Debtor is also filed against another Debtor pursuant to a guarantee of the primary claim, the guarantee claim is expunged so that there only remains one claim for purposes of determining allowed claims and distributions therefor.

4.     All professionals retained by the Debtors' estates shall file final fee applications pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 113] and LBR 2016-2 utilizing the notice and opportunity to object procedures.  If an objection is filed to any of the fee applications, Debtors shall coordinate with such professionals so that any final fee applications are heard by the Court at the same time.

5.     The Debtors are authorized to take any and all actions necessary to wind down their affairs as contemplated and permitted under the Wind-Down Budget.

6.     Debtors are authorized to pay the PACA and section 503(b)(9) administrative expense claims identified on Exhibit C to the Motion.

7.     As soon as reasonably practicable following the completion of the Conversion Milestones, the Debtors shall file a certification (the "Certification") of counsel requesting entry of the Conversion Order attached to the Motion as Exhibit B. Among other things, the

Certification should verify that (a) all quarterly fees of the United States Trustee owed in connection with the Chapter 11 Cases have been paid in full and all Monthly Operating Reports have been filed; (b) the professional fees incurred in the Chapter 11 Cases have been approved on a final basis (to the extent applicable) and paid in full; and (c) all PACA and section 503(b)(9) administrative expense claims identified on Exhibit C to the Motion have been paid in full.

8.      The Certification shall be served only on the United States Trustee and the parties that have requested notice in these Chapter 11 Cases and no further notice regarding the conversion of the Chapter 11 Cases shall be required. The Debtors' creditors and parties in interest have received reasonable notice of the proposed conversion through the notice of the Motion.

9.      The Debtors are authorized to take any and all actions necessary or appropriate to effectuate the relief granted pursuant to this Order.

10.      This Order shall be binding upon all parties in interest and any chapter 7 trustee or trustees appointed in the Debtors' cases.

11.      This Court shall retain jurisdiction to interpret, implement and enforce the terms and provisions of this Order.

## END OF ORDER

Order prepared and submitted by:

WARNER NORCROSS + JUDD LLP
Elisabeth M. Von Eitzen (P70183)
1500 Warner Building
150 Ottawa Avenue, NW
Telephone: (616) 752-2418
Facsimile: (616) 222-2418
evoneitzen@wnj.com
*Counsel to Debtors*

**Exhibit B**

**Conversion Order**

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In re

BARFLY VENTURES, LLC, *et al*.,[1]

Debtors.

Chapter 11

Case No. 20-01947-jwb

Jointly Administered

## ORDER CONVERTING THE DEBTORS' CHAPTER 11 CASES TO CHAPTER 7

Upon consideration of the motion (the "Motion")[2] of the Debtors for entry of an order,

pursuant to section 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code"); and

the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to

28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this district

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having

been given under the particular circumstances; and it appearing that no other or further notice is

necessary; and the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein, including that the Debtors ceased all

---

[1]   The Debtors are: Barfly Ventures, LLC (8379), Barfly Management, LLC (6274), 9 Volt, LLC (d/b/a HopCat) (1129), 50 Amp Fuse, LLC (d/b/a Stella's Lounge) (3684), GRBC Holdings, LLC (d/b/a Grand Rapids Brewing Company) (2130), E L Brewpub, LLC (d/b/a HopCat East Lansing) (5334), HopCat-Ann Arbor, LLC (5229), HopCat-Chicago, LLC (7552), HopCat-Concessions, LLC (2597), HopCat-Detroit, LLC (8519), HopCat-GR Beltline, LLC (9149), HopCat-Holland, LLC (7132), HopCat-Indianapolis, LLC (d/b/a HopCat-Broad Ripple) (7970), HopCat-Kalamazoo, LLC (8992), HopCat-Kansas City, LLC (d/b/a HopCat,-KC, LLC and Tikicat) (6242), HopCat-Lexington, LLC (6748), HopCat-Lincoln, LLC (2999), HopCat- Louisville, LLC (0252), HopCat-Madison, LLC (9108), HopCat-Minneapolis, LLC (8622), HopCat-Port St. Lucie, LLC (0616), HopCat-Royal Oak, LLC (1935), HopCat-St. Louis, LLC (6994), Luck of the Irish, LLC (d/b/a The Waldron Public House, LLC and McFadden's Restaurant Saloon) (4255).

[2]   A capitalized term used but defined herein shall have the meaning ascribed to such term in the Motion.

business operations after the closing of the Sale; and upon all the proceedings had before the Court; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      Pursuant to section 1112(b) of the Bankruptcy Code, the chapter 11 cases of the above-captioned debtors are hereby converted to chapter 7.

3.      Pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, all of the Debtors' executory contracts and unexpired leases that have not been previously assumed and assigned or rejected by order of the Court are hereby rejected effective as of the date of this Order.

4.      The Debtors are authorized to take any and all actions necessary or appropriate to effectuate the relief granted pursuant to this Order.

**END OF ORDER**

Order prepared and submitted by:

WARNER NORCROSS + JUDD LLP
Elisabeth M. Von Eitzen (P70183)
1500 Warner Building
150 Ottawa Avenue, NW
Telephone: (616) 752-2418
Facsimile: (616) 222-2418
evoneitzen@wnj.com
*Counsel to Debtors*

## EXHIBIT C

### PACA and Section 503(b)(9) Administrative Claims

| Allowed PACA Claims | | |
|---|---|---|
| **Creditor** | **Claim No./Docket No.** | **Allowed Amount** |
| Produce Alliance LLC | Claim No. 75 (BarFly Ventures, LLC) | $3,497.93 |
| Gordon Food Service | Docket Number 361 | $349,185.14 |

| Allowed 503(b)(9) Claims | | |
|---|---|---|
| **Creditor** | **Claim No./Docket No.** | **Allowed Amount** |
| Gordon Food Service | Docket Number 360 | $4,107.76 |