UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

    Barfly Ventures, LLC, et al,[1]                    Case No. BG20-01947
                                                                Chapter 11
                                                                Honorable James W. Boyd

                                                               Jointly Administered

                      Debtors./
_____

UNITED STATES TRUSTEE'S OBJECTION TO JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE ENTRY OF AN ORDER (I) SUBSTANTIVELY CONSOLIDATING THE DEBTORS' ESTATES; (II) AUTHORIZING THE WIND DOWN OF THE ESTATES; (III) AUTHORIZING THE REJECTION OF CONTRACTS AND LEASES; AND (IV) AUTHORIZING THE DEBTORS' TO CERTIFY THAT THE ESTATES MAY BE CONVERTED TO CHAPTER 7

Andrew R. Vara, United States Trustee for Regions 3 and 9 (the "United States Trustee"), pursuant to his authority under 11 U.S.C. Section 307 and 28 U.S.C. Section 586(a)(3), objects to the "Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for the entry of an Order (I) Substantively

---

[1] The Debtors are: Barfly Ventures, LLC, (8379), Barfly Management, LLC (6274), 9 Volt, LLC (d/b/a HopCat)(1129), 50 Amp Fuse, LLC (d/b/a Stella's Lounge)(3684), GRBC Holdings, LLC, (d/b/a Grand Rapids Brewing Company)(2130), E L Brewpub, LLC (d/b/a HopCat East Lansing)(5334), HopCat-Ann Arbor, LLC (5229), HopCat-Chicago LLC (7552), HopCat-Concessions, LLC (2597), HopCat-Detroit, LLC (8519), HopCat-GR Beltline, LLC (9149), HopCat-Holland, LLC (7132), HopCat Indianapolis, LLC (d/b/a HopCat-Broad Ripple)(7970), HopCat-Kalamazoo, LLC (8992), HopCat-Kansas City, LLC (d/b/a HopCat-KC, LLC and TikiCat)(6242), HopCat Lexington, LLC (6748), HopCat-Lincoln, LLC (2999), HopCat-Louisville, LLC (0252), HopCat-Madison, LLC (9108), HopCat- Minneapolis, LLC (8622), HopCat-Port St. Lucie, LLC (0616), HopCat-Royal Oak, LLC (1935), HopCat-St. Louis, LLC (6994), Luck of the Irish, LLC (d/b/a The Waldron Public House LLC and McFadden's Restaurant Saloon)(4255).

Consolidating the Debtors' Estates; (II) Authorizing the Wind Down of the Estates; (III) Authorizing the Rejection of Contracts and Leases; and (IV) Authorizing the Debtors to Certify That the Estates May be Converted to Chapter 7," (DN 388), and requests that the Court authorize the appointment of a Chapter 11 Trustee for each of these Chapter 11 cases pursuant to 11 U.S.C. Section 1104(a), or alternatively that the Court convert these cases to ones under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. Section 1112(b) for cause, for the following reasons:

1. Pursuant to 28 U.S.C. § 586, the United States Trustee is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code.[2]

2. Upon information and belief, the debtors' businesses consisted of operating 19 restaurants featuring casual dining and craft beers. (DN 4, paragraph 5.) The Chapter 11 filings were caused by a variety of factors, including but not limited to the COVID 19 pandemic, which has had a deleterious effect on the debtors' businesses. (DN 4, page 9, para. 20.)

---

[2] This duty is part of the United States Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See, United States Trustee v. Columbia Gas Sys., Inc., (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-6 (3d Cir. 1994)(noting that the United States Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc., (In re Revco D.S., Inc.),* 898 F.2d 498, 500 (6th Cir. 1990)(describing the United States Trustee as a "watchdog"). *See also,* H.R. Rep. No. 95-595, at 4, 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5966, 6049*; see also, e.g.*, *In re South Beach Secs.*, 606 F.3d 366, 370, 371 (7th Cir. 2010); *Curry v. Castillo (In re Castillo),* 297 F.3d 940, 951 (9th Cir. 2002); *In re Charges of Unprofessional Conduct 99-37 v. Stuart*, 249 F.3d 821, 824 (8th Cir. 2001); *A-1 Trash Pickup v. United States Trustee (In re A-1 Trash Pickup)*, 802 F.2d 774, 776 (4th Cir. 1986).

3. Prior to filing their Chapter 11 petitions, the debtors obtained an unsecured loan of approximately $6.6 million under the CARES Act (the "PPP loan"). The debtors' intent in obtaining this loan was to allow them to stabilize their business operations and continue to operate until the COVID-19 pandemic was over and the debtors were able to reopen their businesses. (DN 4, page 10, paragraphs 22 and 23.)

4. The debtors filed their petitions for relief under Chapter 11 on June 3, 2020.

5. On July 9, 2020, the debtors filed a motion asking for the Court's approval of a sale of substantially all the debtors' business operations and related assets [DN 127]. The debtors obtained a stalking horse credit bid from an affiliate of their pre-petition lenders to start the bidding.

6. In response to the motion, on July 17, 2020, the United States Trustee filed an objection to the sale. [DN 172].

7. Upon information and belief, no competing bids were filed, and therefore, no auction was held. The debtors proceeded with the sale to the stalking horse bidder. (DN 314.)

8. The Court held a status conference on the proposed sale on September 15, 2020.

9. The United States Trustee objected to the proposed sale for several reasons. (DN 328.)

10. The Unsecured Creditors' Committee also filed an objection to the proposed sale. (DN 329.)

11. The sale hearing was set for September 25, 2020. (DN 311.)

12. Late in the evening of September 24, 2020, the debtors filed an amended stalking horse agreement, a revised proposed sale order, and a wind down budget. (DN 334.)

13. The filing of the revised documents the evening before did not resolve the objections of the Committee and the United States Trustee.

14. After the conclusion of the opening statements, the Court referred the parties to mediation to be directed by the Honorable John T. Gregg. (DN 336.)

15. Judge Gregg filed a Report Following Mediation stating that the result of the mediation effort was that the dispute had not been settled. (DN 337.)

16. After the mediation effort concluded, the Court reconvened the hearing and adjourned the hearing to October 13, 2020 at 9:00 am Eastern time for an evidentiary hearing by Zoom. (DN 339.)

17. The Court approved the proposed sale at the hearing on October 13, 2020. This approval was set forth in an Order of the Court approving the sale entered on October 15, 2020. (DN 363.)

18. On November 12, 2020, the debtors and the Official Committee of Unsecured Creditors filed a Joint Motion for the entry of an order: 1) substantively consolidating the debtors' estates; 2) authorizing the wind down of the estates; 3)

authorizing the rejection of contracts and leases; and 4) authorizing the debtors to certify that the estates may be converted to Chapter 7. (DN 388.) Attached to this Joint Motion was a proposed Initial Order (DN 388, page 17), and a proposed order converting the Debtors' Chapter 11 cases to Chapter 7. (DN 388, page 21.) (Hereinafter, The "Joint Motion.")

19. According to the Joint Motion, the sale closed on October 26, 2020, at 12:01 a.m. (Eastern Time). (DN 388, page 4, para. 11.) The Joint Motion further states that as a result of the closing, "the Debtors are no longer operating their businesses and have transferred substantially all of their assets to the Purchaser" but that the debtors are obligated by a Management Agreement and a Transition Agreement to provide certain transition services to the Purchaser, including among other things, "the purchase and sale of alcohol inventory at certain restaurant locations until appropriate liquor licenses can be obtained by the Purchaser." DN 388, at pages 4 to 5, para. 11.) Among the other results of the sale, the Joint Motion also reports, the estates will have an expenses fund of $225,000 and a wind-down budget sufficient to fund the projected wind-down costs and to pay the projected Chapter 11 administrative claims in full. (DN 388, page 5, para. 12.)

20. The draft Order attached to the Joint Motion would authorize the following: 1) the consolidation of the estates; 2) the expungement of "duplicate claims" without defining how duplicate claims shall be determined to be duplicates; 3) the filing of final fee petitions pursuant to the order establishing fee procedures

(DN 113); 4) the authorization of the debtors to take "any and all actions necessary to wind down their affairs as contemplated and permitted under the Wind-Down Budget"; 5) the authorization for the debtors to pay the PACA and Section 503(b)(9) administrative expense claims identified on Exhibit C to the Joint Motion; and furthermore, 6) the debtors would be ordered to file a Certification of the Completion of the Conversion Milestones, "as soon as reasonably practicable." (DN 388, pages 17 to 19.)

### *Argument*

### *The Joint Motion Violates Local Bankruptcy Rule 9013(g)*

21. As noted above, the Joint Motion requests six different forms of relief.

22. Local Bankruptcy Rule 9013(g) provides as follows: "**Combined Motions Prohibited.** Except as otherwise provided in these Rules, every request for an order from the Court must be filed in a separate motion. However, requests for alternative relief may be contained in one motion."

23. The six different forms of relief requested in the Joint Motion are not alternative forms of relief. They are different requests based on different portions of the debtors' history. Therefore, in order to give adequate notice to creditors, each should be set forth in its own motion, as Local Rule 9013(g) requires.

6

***Substantive Consolidation Should Be Granted Only Through the Confirmation of A Plan of Reorganization Upon Notice to All Parties in Interest***

24. Section 1125(a)(5)(C) provides, "Notwithstanding any other applicable nonbankruptcy law, a plan shall …provide adequate means for the plan's implementation, such as- merger or consolidation of the debtor with one or more persons."

25. As such, if these cases are to be substantively consolidated, it should be pursuant to plan of reorganization confirmed only after notice to all parties in interest.

26. The Joint Motion cites *Spradlin v. Beads & Steeds Inn, LLC, (In re Howland),* 674 F. App'x 482, 488 (6th Cir., 2017) and (*In re Augie/Restivo Baking Co.,* 860 F.2d 515 (2d Cir. 1988), for the proposition that when deciding whether to substantively consolidate two or more cases, the Court should look at two factors: 1) whether the creditors dealt with the entities as a single unit and did not rely upon their separate identities in extending credit; or 2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors because untangling is either impossible or so costly as to consume the assets. (DN 388, page 7, para. 20.) The Joint Motion alleges that "Both before and after the Petition Date, the Debtors interacted with creditors as a single unit." (DN 388, page 5, , para. 13.) The Joint Motion goes on to allege that 75% of the general unsecured claims were scheduled

against *Barfly Ventures*, while 25% of the amount of the claims were scheduled against the other debtors.

27. These allegations, even if true, are not sufficient to support the request for substantive consolidation. The caselaw requires intermingling of assets, joint liability on claims, and other facts not alleged. Simply because debtors have scheduled the majority of the claims against one debtor does not suffice to justify or require substantive consolidation. The test is not what the debtors *thought or think,* but what the *creditors did.* There are no allegations or affidavits to demonstrate what the creditors thought or did.

28. The Joint Motion also alleges that substantive consolidation will create one pool of assets to pay all claims, will avoid the possibility of over 20 separate estates, treat all creditors equally, and be more efficient. (DN 388, pages 7 to 9, para. 19 to 24.)  The United States Trustee submits that this is not the test for substantive consolidation.  None of these statements prove that the affairs of these debtors are so hopelessly entangled as to make it impossible or impossibly expensive to untangle their affairs.

29. Without proof to the contrary, it is possible that some creditors dealt with one or another of these entities as a separate entity and should receive more than others, or that they deserve a greater percentage of their claims in a distribution, or a higher priority. The United States Trustee is concerned that there has not been adequate notice of substantive consolidation given by the omnibus nature of the Joint

Motion. Creditors may not be aware of the request, or may not understand it. This is especially true because the results of substantive consolidation are not explained in the Joint Motion.

30. The Committee seems quite concerned about preserving causes of action, but the Joint Motion is silent as to whether substantive consolidation would cause the loss of some of these causes of action. There is no discussion of this point. It is possible that substantive consolidation may impair the rights of some of the estates by consolidating the transferor estate and the beneficiary estate of a fraudulent conveyance into one estate, thereby eliminating the ability to recover the transfer from a third party. For example, if Estate A paid a debt owed by Estate B to a Vendor and if that transfer would have been a fraudulent conveyance as to Estate A because Estate B was the only beneficiary with no benefit to Estate A, then consolidating Estates A and B may result in the loss of the cause of action against the Vendor. There is no discussion of this possibility, or whether substantive consolidation will result in such lost causes of action.

***Claims Objections Should Be Handled Through The Ordinary Course, Not Through The Entry of The Draft Order Attached to The Joint Order***

31. The Order attached to the Joint Motion would expunge "duplicative claims", apparently without further notice or hearing, or order.

32.  The Joint Motion does not address this request at all. There is no definition of what might constitute a "duplicative claim" or how creditors will be notified that their claims are considered duplicative. How will the Court even record that a claim has been disallowed as duplicative?

33.  As a hypothetical, consider an imaginary creditor who sold $100 of olives to Debtor A and another $100 of olives to Debtor B. The hypothetical creditor then files two claims, one in each case, for the two sales of $100 worth of olives. Even though the two claims are based on two separate transactions, the two claims will look very much alike. The two claims will be identical in their descriptions of the items sold and the amounts due. Will the simple act of entering the draft order attached to the Joint Motion disallow one of these two claims just because the two claims look alike, even though they refer to separate transactions? If one of these two claims will be disallowed, which one will it be? The first filed claim or the second filed claim? How will our imaginary creditor know to defend the challenged claims and seek to avoid having one or the other expunged? How will the disallowance of whichever one of these claims is disallowed be noted on the docket or the claims register?

34.  The Bankruptcy Code and Rules have several provisions that insure that when a claim is objected to, the claimant knows that his claim has been objected to; that if he has more than one claim, which claim it is that is being objected to, and that also insure that claimants and objectors both receive notice and due process. The Joint Motion draft order has none of these. There is no identification of which

creditors and which claims will be objected to. The Joint Motion is not even styled as an objection to claims. This is inadequate notice. We do not know which creditors and which claims will be impacted. The affected creditors may not even have reason to read the entire motion because it is not even styled as an objection to claims. Perhaps this is why Local Rule 9013(g) requires separate motions for separate requests for relief: in order to insure that separate motions have captions that give adequate notice to parties in interest of the contents of the motion and the relief being sought.

***The Joint Motion Fails to Identify the Parties In Interest who will be Affected, Nor Does it set out Any Procedures for Rejecting Leases or Contracts or Provisions for Notice***

35. The Joint Motion is titled in part to ask that the Court authorize the rejection of contracts and leases. The Joint Motion is prefaced with a warning in a box that says, "If you have received this motion and are a counterparty to an agreement with Barfly Ventures, LLC or any of its debtor affiliates listed below, please review this motion in its entirety to determine if this motion affects your agreement and your rights thereunder."

36. The Joint Motion also states, "the Movants seek to reject any and all unexpired leases and executory contracts that were not previously assumed and

assigned or rejected by order of the Court." (DN 388, page 11, para. 33.) The Joint Motion does not identify who these creditors might be, nor does it give them any more information that they might use to identify themselves. This raises notice and due process concerns. A list of the unexpired leases and contracts to be rejected would be at least helpful to creditors, and may be required in order to give adequate notice.

37.  The draft order attached to the Joint Motion does not mention rejection of leases and contracts at all, not even in the title of the order.  Other than the language granting approval of the Joint Motion, the draft order is silent on the topic of the rejection of unexpired leases and executory contracts.

***The Timetable for Conversion is Not Clear, and Denies Creditors Due Notice***

38.  The Debtors and the Official Unsecured Committee have asked for the conversion of these cases to Chapter 7, but not until after the completion of certain milestones. Although the milestones in themselves are not objectionable, the completion of these tasks will take some time. The Joint Motion proponents argue that these tasks can only and must be completed in Chapter 11.

39.  The Joint Motion is set for hearing on December 10, 2020. If we wait until the milestones are achieved before converting to Chapter 7 and appointing an independent fiduciary, we may be trying to find such an independent fiduciary on

New Year's Eve, or on some other holiday. The Joint Motion sets no deadline for conversion to Chapter 7, or the filing of the certification.

40. Although the Joint Motion asks for the authority to file the Certification of completion of the milestone events, and states that cause exists for conversion, the Joint Motion is not actually a motion for conversion to Chapter 7.

41. The Joint Motion appears to contemplate that the Court will enter the conversion order with no further notice or hearing. Paragraph 41 of Joint Motion provides that the Certificate of Completion be served only on United States Trustee and all creditors that have requested notice pursuant to FRBP 2002. The Certificate of Completion will not be sent to "all of the debtors' creditors and equity holders as such parties will receive reasonable notice of the proposed conversion through the notice of hearing for this motion." (DN 388, page 14.) The proposed order granting the Joint Motion tracks this language in the service clause. (DN 388, page 19, paragraph 8.) This is not adequate notice. Perhaps a creditor does not object to conversion as a concept at this time, but a few weeks from now that creditor might contest whether all the milestones have been completed, or would argue that some new issue has arisen that should prevent conversion until the issue is resolved, or that creditor is awarded an administrative claim, or a priority. Notice of the certificate being filed only to United States Trustee and some portion of the creditor body is insufficient, as some creditor who does not receive notice may dispute whether the milestones have been completed, or completed in a satisfactory manner.

13

### *The Joint Motion fails to Explain Why the PACA Claims and Section 503(b)(9) Claims Must Be Paid Now*

42. The Joint Motion asks that the Court authorize the payment of an attached list of PACA claims and Section 503(b)(9) claims as listed on Exhibit C.

43. The Joint Motion fails to explain why Court authority is required to pay these claims, or if Court authority is necessary, why the payment of these claims cannot wait until a Chapter 11 or Chapter 7 Trustee has been appointed and can review these claims before determining whether to pay them or not.

44. The motion fails to explain why these liabilities have not been assumed by the buyer.

45. The Joint Motion fails to explain why the Court should not just let the eventual trustee distribute the assets in accordance with the priorities of the Bankruptcy Code in the ordinary course of case administration.

For all the above reasons, the United States Trustee asks that the Court deny the Joint Motion, or that the Court grant such other relief as the Court may deem just.

                Respectfully submitted,
                ANDREW R. VARA
                United States Trustee
                Regions 3 and 9

Date:_____        By:_____
               By: */s/ Michael V. Maggio*
                Michael V. Maggio
                Trial Attorney
                Office of the United States Trustee
                United States Department of Justice
                The Ledyard Building, Second Floor
                125 Ottawa Avenue NW, Suite 200R
                Grand Rapids, Michigan 49503
                Tel: (616) 456-2002, ext. 114